GEORGE E. AKWO, ESQ.  (STATE BAR #164670)
GA LAW GROUP, A PROFESSIONAL LAW CORPORATON
8500 WILSHIRE BLVD., SUITE 916
BEVERLY HILLS, CA 90211
800-606-1508 (phone); 888-505-1619 (fax)

Attorneys For Debtor and Complainant

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ) | Chapter 7 |
| ) | |
| **KIMBERLY BUI** ) | **Case No.: 2:17-bk-20994 BR** |
| ) | |
| Debtor . ) | **Adversary Proceeding No.** |
| _____ ) | |
| ) | |
| **KIMBERLY BUI, an individual,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| **THOMAS LEI, an individual;** ) | |
| **KATHERINE W. LU, an individual** ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**COMPLAINT TO DETERMINE VALIDITY AND EXTENT OF A
LIEN OR INTEREST IN PROPERTY, TO RECOVER PROPERTY, AND
FOR DECLARATORY JUDGMENT PURSUANT TO FEDERAL RULES
OF BANKRUPTCY PROCEDURE ("FRBP") 7001(1), 7001(2) AND 7001(9)
AND FEDERAL RULE OF CIVIL PROCEDURE ("FRCP") 60(B)(4)
THROUGH 60(B)(6), AND FRCP 60(D)**

Plaintiff-Debtor Kimberly Bui ("Bui"), as and for her Complaint against

Defendants Thomas Lei and Katherine W. Lu (collectively "Lei"), respectfully

alleges:

## I.    **JURISDICTION**

1.      On September 7, 2017, Bui filed a voluntary petition (the "Petition") for relief under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code") in this Court.

2.      As of the date of this Complaint Bui has not been granted a discharge.

3.      This Complaint is timely because there has been no determination of what is in the Bankruptcy estate.

4.      This is an adversary proceeding because Lei has alleged and sought to be transferred to them real estate owned by Bui which should and would be part of her Bankruptcy Estate. Lei make such a claim as a result of a default judgment they obtained in Los Angeles Superior Court allegedly and erroneously authorizing transfer of title from Bui to Lei. As such Bui is seeking a determination that this real estate is and should remain part of the Bankruptcy Estate within meaning of Section 541 of the Bankruptcy Code.

5.      This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. Section 1334, Bankruptcy Code Section 541, the FRBP and FRCP.

6.      This case is a core proceeding pursuant to 28 U.S.C. Section 157(b)(2)(h), 157(b)(2)(k) and 157(b)(2)(o). If this case is not deemed a core proceeding, this court has jurisdiction under Section 157(c)(1).

## II.    THE PARTIES

7.    BUI, over 60 years of age, is, and at all times herein, was a resident of the County of Los Angeles, State of California and under personal jurisdiction of this Court. The property that is the subject of this Complaint is located at 937 18th St., Unit #7, Santa Monica, CA and a legal description is attached as Exhibit A to this Complaint (the "Subject Property").

8.    Defendants Thomas Lei and Katherine Lu (collectively "Lei") are, Bui is informed and believes and thereon alleges, residents of Santa Clara County, California, and therefore under personal jurisdiction of this Court. Lei claim an interest and "ownership" in the Subject Property as a result of a Los Angeles Superior Court default judgment, which, for the reasons outlined below, should be deemed void and unenforceable by this Court.

## III.    STATEMENT OF PERTINENT FACTS

9.    BUI is the owner of the Subject Property.  As of the date of the filing of her Bankruptcy Petition and to this day, Bui remains the owner on title and in possession of the Subject Property.

10.    On May 7, 2007 BUI entered into an adjustable rate note with negative amortization in the sum of $650,000 with GREENPOINT. The note was secured by a deed of trust on the subject property with GREENPOINT as the trustor. Plaintiff is informed and believes and thereon alleges that US Bank ("US Bank") is the current owner of the note and deed of trust on the subject property and that Nationstar Mortgage LLC ("Nationstar") is both the loan servicer for that home loan and the agent for US Bank.

11.    Due to economic hardship BUI fell behind on her home loan payments and therefore was attempting to avoid foreclosure of the Subject Property through, first, a loan modification, and later, a short sale

12.    As part of the short sale attempt, BUI and Lei entered into a short sale agreement in June 2013, a true and correct copy which is attached hereto as Exhibit B. The transaction had to go through Auction.com which apparently then handled short sale transactions for Nationstar, thereby subjecting Lei and Bui's transaction to Auction.com's "Short Sale Addendum". A true and correct copy of said Addendum, which is initialed by Lei, is attached hereto as Exhibit C. The Addendum clearly states that the transaction was a short sale SUBJECT TO LENDER APPROVAL. Exhibit C, Paragraph 6. Plaintiff is informed and believes and thereon alleges that Lei went ahead and deposited the initial deposit down payment required by the Agreements in escrow.

13.    Bui completed AND submitted all the paperwork Nationstar required to submit a short sale. On July 2, 2013, Nationstar sent a letter to BUI (attached hereto as Exhibit D) approving the short sale request with 16 specified conditions. All conditions had to be met according to Nationstar, given that "approval is contingent upon the following [16 conditions]…". See Exhibit D hereto. However, on August 7, 2013, Nationstar, as was its sole discretion to do, denied the short sale via letter dated August 7, 2013, contending that the conditions had not been met. A true and correct copy of the August 7, 2013 letter is attached as Exhibit E hereto. Lei was then informed of the denial. After Nationstar sent the letter, BUI then pulled out of the short sale arrangement with the Lei's on August 13, 2013, on the correct assumption that it was all over.

14.    Despite Nationstar's denial, Lei, however, through their then counsel Kenny Tan, wrote BUI demanding that the short sale be completed.  In fact Plaintiff is informed and believes and thereon alleges that Lei refused to accept return of their

$32,000 deposit they made when they opened escrow and remains in escrow to this day.

15.    In response to Lei's demand to BUI to specifically perform the short sale arrangement, on September 30, 2013 Martin Cutler, Bui's then attorney, wrote Mr. Tan and explained that specific performance was not a remedy for a conditional sales contract like a short sale agreement, as performance only occurs after all terms and conditions imposed by the lender have been met. A true and correct copy of the September 30, 2013 letter Martin Cutler wrote Lei's counsel is attached hereto as Exhibit F hereto.

16.    As Mr. Cutler explained, Nationstar's final approval was a condition precedent of any short sale deal, and it was never granted in the Lei/BUI arrangement. As such the purchase agreement was unenforceable. Simply put Lei had no basis in law in which to try and enforce specific performance of the short sale purchase agreement therein.

17.    Although Lei knew BUI was represented by counsel they never sought to contact counsel Cutler further and instead filed suit, (Lei v Bui LASC Case No. SC121358). A true and correct copy of their Complaint is attached hereto as Exhibit G.  In that lawsuit Lei contended they and BUI had a standard real estate purchase agreement which they attached to that Complaint, and claimed it was a straight real estate purchase/sale transaction instead of a short sale transaction. In fact, they left out from the Complaint the short sale addendum to said Agreement which clearly stated it was a short sale.  (Exhibit C hereto).

18.    Due to illness and other issues, Mr. Cutler failed to respond to Lei's SC121358 lawsuit. On May 30, 2014 Lei obtained a judgment by DEFAULT against BUI based on their complaint in Exhibit G. A true and correct copy of that judgment is attached hereto as Exhibit H. The judgment supposedly ordered the real estate purchase agreement for the short sale be specifically enforced by

affixing Bui's signature to short sale documents to again be submitted to Natonstar.

That judgment also ordered BUI to pay Lei damages for "lost rent" for remaining

in the property after it supposedly should have been transferred to Lei, even though

Lei never obtained title to the property as Nationstar had rejected the short sale

request months earlier in August 2013, and even though escrow never officially

closed. In fact, as it stands, Lei and Nationstar are presently locked in litigation

over this same transaction in Los Angeles Superior Court (Case No.  SC126554)

wherein Lei is requiring Nationstar to consummate the Bui transaction.[1] Attached

hereto as Exhibit I is the Declaration of Martin Cutler, Bui's then attorney,

detailing the history and background of the obtaining and attempted enforcement

of this Default Judgment and attempts to set it aside.

19.    Bui's then counsel Cutler first found out about this judgment when Lei first

went to court, ex parte, to have the court affix BUI's signature to subsequent short

sale documents to be submitted to Nationstar without Bui's involvement. Bui

objected, but the Court went ahead and affixed her signature to the short sale

documents anyway contending it was a "ministerial act". However, again as it is

their sole discretion to do, Nationstar denied the Short sale request. One such post

judgment denial was on September 17, 2014, a true and correct copy of which is

attached hereto as Exhibit J.

20.    Despite this default judgment, title to the Subject Property has never been

transferred to Lei. In fact, as proof of this fact, on September 8, 2017, a few days

ago, Lei went back to Court, ex parte, to attempt to get the Judge to for the first

time judicially sign a deed to transfer title to them pursuant to this judgment.

(Exhibit K hereto). That hearing did not go forward due to the filing of this

Bankruptcy petition.

---

[1]    Bui tried to intervene in that case but the Superior Court Judge refused the request to intervene.

21.    BUI believing herself to be the sole owner of the subject property continued to pursue a loan modification with Nationstar. Nationstar to this day acknowledges that Bui is the owner of the Subject Property, Nationstar accepted her loan modification application paperwork and went ahead and processed her application. In October 2016 they ultimately rejected her for a loan modification. See Exhibit L hereto.

22.    Bui is informed and believes and thereon alleges that neither Nationstar, County of Los Angeles Tax Collector, Los Angeles water district, the electric company, US Post Office, the Subject Property's condominium Association, nor anyone else, recognizes or has ever recognized Lei, as opposed to Bui, as the owner of the Subject Property to this day. Attached hereto as Exhibit M is a transaction history obtained from titleprofile.com which still lists BUI and not Lei as the title owner of the subject property. In addition, since this judgment was obtained, Bui has remained in possession and spent a lot of money to upkeep the property, pay condominium fees, pay for repairs and has done everything necessary to keep up the value of the Subject Property.

23.    Bui remains as sole owner on title and in possession - neither title nor possession has ever been transferred to Lei.  Title and possession should not be transferred via default judgment without at least giving Bui a chance to present her defense as to why Lei has no legal or equitable right or claim to take over her property and this is all Bui is asking of this Court. All Bui is is seeking from this Court, or any Court, is an opportunity to present her case why Lei should not be awarded her property for which she has spent hundreds of thousands of dollars to purchase and upkeep to this day. Bui just wants an opportunity to present her case and a declaratory determination made on this issue – whether the Subject Property should remain part of the Bankruptcy estate as defined by the Bankruptcy Code

Section 541, or be transferred to Lei pursuant to a void and unenforceable Superior Court Judgment.

### FIRST CAUSE OF ACTION

### DETERMINATION THAT THE SUBJECT PROPERTY SHOULD REMAIN PART OF BUI'S BANKRUPTCY ESTATE UNDER BANKRUPTTCY CODE SECTION 541 AND NOT TRANSFERRED TO LEI

24.    BUI hereby incorporates by reference all the preceding paragraphs as though set forth here in full.

25.    BUI is the title owner of the subject property and has been since August 2007.

26.    The sole basis for Lei's claim to title is pursuant to the default judgment obtained May 30, 2014. However, that default judgment is unenforceable and void at law (FRCP 60(b)(4)), in equity (FRCP 60(b)(6)), and under FRCP 60(d)(1) for the following reasons[2]:

    i.    The Court had no jurisdiction to enforce the agreement given that Paragraph 26A of the Agreement (Exhibit B) specifically requires the Bui and Lei to mediate their dispute "**before resorting to arbitration of court action".** Agreement, Ex. B, para. 26A. Lei filed their Los Angeles Superior Court lawsuit without any mediation occurring or requested.

    ii.    It was obtained without default prove up hearing and evidence presented, as required by *Code of Civil Procedure section 764.010,* in the case of transfer of title to property. To date no proof that a prove up hearing ever occurred to obtain this default judgment. Bui and her present and former counsel have never seen or been

---

[2]    A void judgment could be challenged at any time after judgment. *County of Ventura v. Tillett*, (1982) 133 Cal. App.3d, 105, 110.

provided with a transcript of any such default prove up hearing;

iii. Lei's complaint leading to the default judgment sought specific performance of a conditional sales contract which required 3rd party (Nationstar's) approval, a 3rd party who was not part of that lawsuit and for which there is now presently a lawsuit between Nationstar and Lei (Los Angeles Superior Court No. SC126554);

iv. The complaint resulting in the default judgment did not state a cause of action in specific performance because it did not allege that BUI had "received an adequate consideration for the contract" or that the contract was, as to her, "just and reasonable;

v. The judgment takes Bui's property without any consideration paid to Bui. Taking Lei's complaint at face value that this was a standard purchase/sale real estate deal, the default Judgment on the one hand supposedly authorizes Lei to take Bui's property pursuant to the sole Breach of contract claim in Lei's complaint, but never does the other part, which is require Lei to pay to Bui the full "purchase price" stated in the "breached" contract. The Judgment does not even order Lei to pay anything at all to anyone – the Judgment purely gifts the Subject Property to Lei[3].

vi. To date Bui is the owner on title, has lived in the property and done all the upkeep and repairs. It would be unconscionable to divest Bui of her property by default and admitted fault of her prior attorney Martin Cutler, without the opportunity for her to be heard.

[3]  It should not matter that Lei may have had to assume or pay off Bui's note with Nationstar – Lei obtained the judgment on a breach of contract claim which does not reference the existence of a note or Lien. Thus the Court's Judgment should have required Lei to pay the "contract price" to Bui. The fact that this was not done is further proof that the arrangement was indeed a short sale arrangement which required Lender approval – once the Lender had rejected it in 2013, the Court had no basis to award anything to Lei in 2014, let alone award without requiring Lei to pay the "contract price" to Bui in exchange.

vii.    The default judgment also was in excess of the court's jurisdiction as it affixed Bui's signature to a short sale agreement that still needed Nationstar approval, but it then went ahead and awarded approximately $22,000 in lost rent as if Lei was already the legal owner in 2014. Lei was not, as the short sale transaction never closed, escrow never closed to this day, and Nationstar never allowed the short sale. Lei's attempted ex parte application of September 8, 2017 in Los Angeles Superior Court to get the Court to sign a deed transferring title confirms that the 2014 default judgment exceeded jurisdiction– Lei was asking the Court in 2017 to transfer title and ownership but the default judgment had already awarded Lei damages in rent in 2014 as if Lei was already the owner of the Subject Property. Thus, there was no basis for the Judgment to award Lei lost rent. It is excess of jurisdiction. *Conservatorship of O'Conner (1996) 48 Cal.App.4th 1076, 1088, disapproved on another ground in Donovan v. Rrl Corp. (2001) 26 Cal.4th 261, 280.*

viii.    The default judgment is also in excess of jurisdiction because it awards attorney fees to Lei even though specifically excluded in the Agreement in Exhibit B. See Exhibit B Paragraph 26A, which specifically excludes any entitlement to attorneys' fees for any court action filed before mediation occurs. There was never any mediation in this dispute so Lei was never entitled to and the judgment should have never awarded Lei attorney fees. See Judgment, Ex. H, pages 3:28-4:1.

ix. The ongoing case (Lei v. Nationstar, Los Angeles Superior Court Case No. SC126554**)** which is a lawsuit brought by Lei against

Nationstar specifically because Nationstar refused to approve the short sale that resulted in the default judgment, is proof that this judgment cannot and should not be enforced for excess of jurisdiction on title, attorney fees, and rent issues.

27.    The judgment Lei received against Bui was obtained through fraud on the Court for which relief is available under FRCP 60(b)(6) and FRCP 60(d)(3):

i.    Lei represented to the Court that it was a standard buyer/seller agreement for the transfer of real property, but The Auction.com short sale Addendum governing the transaction specifically states this is a short sale and subject to lender (Nationstar) approval.  Lei never attached this short sale Addendum to their court complaint which resulted in the Default Judgment, and apparently did not inform the Court of this fact before the Judgment was obtained;

ii.    Lei deliberately left out of the default judgment they submitted to the Court for signature any obligation on their part to pay money under the contract;

iii.    Lei did not ask for nor obtain a default prove up hearing even though the default judgment they obtained was for transfer of title to real property.

iv.    Bui spoke to Nationstar in late July 2013 and was orally informed that Nationstar would not approve the short sale request submitted in 2013 as part of the Bui/Lei transaction (this is the denial that Nationstar confirmed in writing in Exhibit E hereto).  Based on this information, Bui then sent a document officially canceling the transaction on 8/1/2013, in a California Association of Realtors approved Form called "Cancellation of Contract, Release of Deposit and Joint Escrow Instructions". A true and correct copy of that document is attached as Exhibit N hereto. Lei however, never informed the Court that Bui had in fact officially cancelled the transaction (Exhibit N) or that Nationstar had in fact rejected the short sale request (Exhibit E).

v.    There was a mediation and binding arbitration clauses in the short sale

agreement (Ex. B), and, as such, the matter should have first been submitted to mediation and then arbitration before any court action by Lei. There is a strong public policy in favor of arbitration agreements. *Armendariz v. Foundation Health Psychcare Services, Inc*. (2000) 24 Cal. 4th 83, 98.

28.    At the very least the default judgment should now be extinguished as having been satisfied. FRCP 60(b)(5).  The Lei/Bui transaction of 2013 was a short sale. Nationstar had the sole discretion to either approve or deny that short sale. They denied it in 2013 pre-judgment (Exhibit E), and in 2014 post judgment (Exhibit J). What Lei sought under the default judgment - to proceed with a short sale - had been met. That the judgment Lei is seeking to enforce does not require any payment to Bui for her property also confirms that this was a short sale and that Nationstar's subsequent rejection of that short sale meant the contract Lei sued upon was over.

29.    That the judgment Lei is seeking to enforce does not require any payment to Bui for her property confirms that applying the Judgment prospectively is also no longer equitable. FRCP 60(b)(5). It is and would be inequitable and unconscionable for any Court to judicially transfer property from Bui to Lei, by default, without any consideration paid Bui at all. Bui has received no consideration whatsoever. In addition, she stands to lose any increases in value she has caused to be added to the Subject Property since 2013. Under FRCP 60(b)(6) and FRCP 60(d)(1) this Court should at least set a trial on the merits to determine this issue.

## **PRAYER FOR RELIEF**

WHEREFORE, Bui prays that:

1.    This Court not allow the removal of the Subject Property from the Bankruptcy Estate via a transfer to Lei, without a full trial by jury on the merits as to the rights to ownership and possession of the Subject Property.

2.      For costs of suit herein incurred; and

3.      For such other and further relief as the court may deem proper.

Dated:          9.11.17                    GA LAW GROUP


_____/s/_____

GEORGE E. AKWO


Attorneys for Debtor and Complainant
KIMBERLY BUI

File No: 1031713

17

# EXHIBIT "A"

All that certain real property situated in the County of Los Angeles, State of California, described as follows:

A CONDOMINIUM COMPRISED OF:

PARCEL 1:

THAT PORTION OF LOT 1, OF TRACT NO. 24127, IN THE CITY OF SANTA MONICA, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 840, PAGE 93 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, SHOWN AND DEFINED AS UNIT NO. 7 ON THE CONDOMINIUM PLAN, RECORDED APRIL 9, 1974 AS INSTRUMENT NO. 3737 OFFICIAL RECORDS OF SAID COUNTY.

PARCEL 2:

AN UNDIVIDED 1/7TH INTEREST IN AND TO LOT 1, OF TRACT NO. 24127.

EXCEPT THEREFROM THOSE PORTIONS SHOWN AND DEFINED AS UNITS 1 TO 7 INCLUSIVE, ON SAID CONDOMINIUM PLAN.

Assessor's Parcel Number:     4277-010-054

07 117 5334

# CALIFORNIA
## RESIDENTIAL PURCHASE AGREEMENT
### AND JOINT ESCROW INSTRUCTIONS

CALIFORNIA ASSOCIATION OF REALTORS®

Date: **May 17, 2013**

1. **OFFER:**
   A. THIS IS AN OFFER FROM **Thomas Lai, Katherine W. Lu** ("Buyer").
   B. THE REAL PROPERTY TO BE ACQUIRED is described as **937 18th St #17**, situated in **Santa Monica**, County of **Los Angeles**, California ("Property"). Assessor's Parcel No. **4277-010-054**
   C. THE PURCHASE PRICE offered is **Six Hundred Forty-Eight Thousand Three Hundred Seventy-Five and 00/100** Dollars $ **648,375.00**
   D. CLOSE OF ESCROW shall occur on **07/01/2013** (date) or ☐ _____ Days After Acceptance.

2. **AGENCY:**
   A. DISCLOSURE: Buyer and Seller each acknowledge prior receipt of a "Disclosure Regarding Real Estate Agency Relationships" (C.A.R. Form AD).
   B. POTENTIALLY COMPETING BUYERS AND SELLERS: ...
   C. CONFIRMATION: The following agency relationships are hereby confirmed for this transaction:
      Listing Agent _____ (Print Firm Name) is the agent of (check one):
      Selling Agent **Southern California Realty** (Print Firm Name) ...

3. **FINANCE TERMS:** Buyer represents that funds will be good when deposited with Escrow Holder.
   A. INITIAL DEPOSIT: Deposit shall be in the amount of ............ $ **13,246.75**
   B. INCREASED DEPOSIT: ...
   C. LOAN(S):
      (1) FIRST LOAN in the amount of .......... $ **452,000.00**
      (2) SECOND LOAN in the amount of ...
      (3) FHA/VA: ...
   D. ADDITIONAL FINANCING TERMS:
   E. BALANCE OF PURCHASE PRICE OR DOWN PAYMENT in the amount of ... $ **183,995.25**
   F. PURCHASE PRICE (TOTAL): ............ $ **648,375.00**

Buyer's Initials _____    Seller's Initials ( K x B )

RPA-CA REVISED 4/10 (PAGE 1 OF 8)  Print Date

Reviewed by _____ Date _____

Property Address: 937 18th St.                           Date: 05/17/2013

G. **VERIFICATION OF DOWN PAYMENT AND CLOSING COSTS:** Buyer (or Buyer's lender or loan broker pursuant to 3H(1)) shall, within 7 (or ☐ _____) Days After Acceptance, Deliver to Seller written verification of Buyer's down payment and closing costs. (If checked, ☐ verification attached.)

H. **LOAN TERMS:**
(1) **LOAN APPLICATIONS:** Within 7 (or ☐ _____) Days After Acceptance, Buyer shall Deliver to Seller a letter from lender or loan broker stating that, based on a review of Buyer's written application and credit report, Buyer is prequalified or preapproved for any NEW loan specified in 3C above. (If checked, ☐ letter attached.)
(2) **LOAN CONTINGENCY:** Buyer shall act diligently and in good faith to obtain the designated loan(s). Obtaining the loan(s) specified above is a contingency of this Agreement unless otherwise agreed in writing. Buyer's contractual obligations to obtain and provide deposit, balance of down payment and closing costs are not contingencies of this Agreement.
(3) **LOAN CONTINGENCY REMOVAL:**
(i) Within 17 (or ☐ _____) Days After Acceptance, Buyer shall, as specified in paragraph 14, in writing remove the loan contingency or cancel this Agreement;
OR (ii) (If checked) ☐ the loan contingency shall remain in effect until the designated loans are funded.
(4) ☐ **NO LOAN CONTINGENCY** (If checked): Obtaining any loan specified above is NOT a contingency of this Agreement. If Buyer does not obtain the loan and as a result Buyer does not purchase the Property, Seller may be entitled to Buyer's deposit or other legal remedies.

I. **APPRAISAL CONTINGENCY AND REMOVAL:** This Agreement is (or, if checked, ☐ is NOT) contingent upon a written appraisal of the Property by a licensed or certified appraiser at no less than the specified purchase price. If there is a loan contingency, Buyer's removal of the loan contingency shall be deemed removal of this appraisal contingency (or, ☐ if checked, Buyer shall, as specified in paragraph 14B(3), in writing remove the appraisal contingency or cancel this Agreement within 17 (or _____) Days After Acceptance). If there is no loan contingency, Buyer shall, as specified in paragraph 14B(3), in writing remove the appraisal contingency or cancel this Agreement within 17 (or _____) Days After Acceptance.

J. ☐ **ALL CASH OFFER** (If checked): Buyer shall, within 7 (or ☐ _____) Days After Acceptance, Deliver to Seller written verification of sufficient funds to close this transaction. (If checked, ☐ verification attached.)

K. **BUYER STATED FINANCING:** Seller has relied on Buyer's representation of the type of financing specified (including but not limited to, as applicable, amount of down payment, contingent or non contingent loan, or all cash). If Buyer seeks alternate financing, (i) Seller has no obligation to cooperate with Buyer's efforts to obtain such financing, and (ii) Buyer shall also pursue the financing method specified in this Agreement. Buyer's failure to secure alternate financing does not excuse Buyer from the obligation to purchase the Property and close escrow as specified in this Agreement.

4. **ALLOCATION OF COSTS** (If checked: Unless otherwise specified in writing, this paragraph only determines who is to pay for the inspection, test or service ("Report") mentioned; it does not determine who is to pay for any work recommended or identified in the Report).

A. **INSPECTIONS AND REPORTS:**
(1) ☐ Buyer ☐ Seller shall pay for an inspection and report for wood destroying pests and organisms ("Wood Pest Report") prepared by _____ a registered structural pest control company.
(2) ☐ Buyer ☐ Seller shall pay to have septic or private sewage disposal systems inspected _____
(3) ☐ Buyer ☐ Seller shall pay to have domestic wells tested for water potability and productivity _____
(4) ☐ Buyer ☐ Seller shall pay for a natural hazard zone disclosure report prepared by _____
(5) ☐ Buyer ☐ Seller shall pay for the following inspection or report _____
(6) ☐ Buyer ☐ Seller shall pay for the following inspection or report _____

B. **GOVERNMENT REQUIREMENTS AND RETROFIT:**
(1) ☐ Buyer ☐ Seller shall pay for smoke detector installation and/or water heater bracing, if required by Law. Prior to Close Of Escrow, Seller shall provide Buyer written statement(s) of compliance in accordance with state and local Law, unless exempt.
(2) ☐ Buyer ☐ Seller shall pay the cost of compliance with any other minimum mandatory government retrofit standards, inspections and reports if required as a condition of closing escrow under any Law.

C. **ESCROW AND TITLE:**
(1) ☒ Buyer ☒ Seller shall pay escrow fee   Each to pay own _____
    Escrow Holder shall be _____
(2) ☐ Buyer ☐ Seller shall pay for owner's title insurance policy specified in paragraph 12B _____
    Owner's title policy to be issued by _____
    (Buyer shall pay for any title insurance policy insuring Buyer's lender, unless otherwise agreed in writing.)

D. **OTHER COSTS:**
(1) ☐ Buyer ☒ Seller shall pay County transfer tax or fee _____
(2) ☐ Buyer ☒ Seller shall pay City transfer tax or fee _____
(3) ☐ Buyer ☒ Seller shall pay Homeowners' Association ("HOA") transfer fee _____
(4) ☐ Buyer ☒ Seller shall pay HOA document preparation fees _____
(5) ☐ Buyer ☐ Seller shall pay for any private transfer fee _____
(6) ☐ Buyer ☐ Seller shall pay for the cost, not to exceed $ _____ of a one-year home warranty plan, issued by _____, with the following optional coverages:
    ☐ Air Conditioner ☐ Pool/Spa ☐ Code and Permit upgrade ☐ Other: _____
    Buyer is informed that home warranty plans have many optional coverages in addition to those listed above. Buyer is advised to investigate these coverages to determine those that may be suitable for Buyer.
(7) ☐ Buyer ☐ Seller shall pay for _____
(8) ☐ Buyer ☐ Seller shall pay for _____

Buyer's Initials _____

Seller's Initials K  B

Copyright © 1991-2010, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
RPA-CA REVISED 4/10 (PAGE 2 OF 8) Print Date

Reviewed by _____ Date _____

Case 2:17-ap-01468-BR

EXHIBIT B TO ADVERSARIAL COMPLAINT

Property Address: 937 18th St.      Date: 05/17/2013

**5. CLOSING AND POSSESSION:**

A. Buyer intends (or □) does not intend) to occupy the Property as Buyer's primary residence.

B. Seller-occupied or vacant property: Possession shall be delivered to Buyer at 6 PM or (□ _____ □ AM/□ PM), on the date of Close Of Escrow; □ on _____; or □ no later than _____ Days After Close Of Escrow. If transfer of title and possession do not occur at the same time, Buyer and Seller are advised to: (i) enter into a written occupancy agreement (C.A.R. Form PAA, paragraph 2); and (ii) consult with their insurance and legal advisors.

C. Tenant-occupied property:
  (i) Property shall be vacant at least 5 (or □ _____) Days Prior to Close Of Escrow, unless otherwise agreed in writing. Note to Seller: If you are unable to deliver Property vacant in accordance with rent control and other applicable Law, you may be in breach of this Agreement.
  OR (ii) (if checked) □ Tenant to remain in possession. (C.A.R. Form PAA, paragraph 3)

D. At Close Of Escrow, (i) Seller assigns to Buyer any assignable warranty rights for items included in the sale, and (ii) Seller shall Deliver to Buyer available Copies of warranties. Brokers cannot and will not determine the assignability of any warranties.

E. At Close Of Escrow, unless otherwise agreed in writing, Seller shall provide keys and/or means to operate all locks, mailboxes, security systems, alarms and garage door openers. If Property is a condominium or located in a common interest subdivision, Buyer may be required to pay a deposit to the Homeowners' Association ("HOA") to obtain keys to accessible HOA facilities.

**6. STATUTORY DISCLOSURES (INCLUDING LEAD-BASED PAINT HAZARD DISCLOSURES) AND CANCELLATION RIGHTS:**

A. (1) Seller shall, within the time specified in paragraph 14A, Deliver to Buyer if required by Law: (i) Federal Lead-Based Paint Disclosures (C.A.R. Form FLD) and pamphlet ("Lead Disclosures") and (ii) disclosures or notices required by sections 1102 et. seq. and 1103 et. seq. of the Civil Code ("Statutory Disclosures"). Statutory Disclosures include, but are not limited to, a Real Estate Transfer Disclosure Statement ("TDS"), Natural Hazard Disclosure Statement ("NHD"), notice or actual knowledge of release of illegal controlled substance, notice of special tax and/or assessments (or, if allowed, substantially equivalent notice regarding the Mello-Roos Community Facilities Act and Improvement Bond Act of 1915) and, if Seller has actual knowledge, of industrial use or military ordnance location (C.A.R. Form SPQ or SSD).

(2) Buyer shall, within the time specified in paragraph 14B(1), return Signed Copies of the Statutory and Lead Disclosures to Seller.

(3) In the event Seller, prior to Close Of Escrow, becomes aware of adverse conditions materially affecting the Property, or any material inaccuracy in disclosures, information or representations previously provided to Buyer, Seller shall promptly provide a subsequent or amended disclosure or notice, in writing, covering those items. However, a subsequent or amended disclosure shall not be required for conditions and material inaccuracies of which Buyer is otherwise aware, or which are disclosed in reports provided to or obtained by Buyer or ordered and paid for by Buyer.

(4) If any disclosure or notice specified in 6A(1), or subsequent or amended disclosure or notice is Delivered to Buyer after the offer is Signed, Buyer shall have the right to cancel this Agreement within 3 Days After Delivery in person, or 5 Days After Delivery by deposit in the mail, by giving written notice of cancellation to Seller or Seller's agent.

(5) Note to Buyer and Seller: Waiver of Statutory and Lead Disclosures is prohibited by Law.

B. NATURAL AND ENVIRONMENTAL HAZARDS: Within the time specified in paragraph 14A, Seller shall, if required by Law: (i) Deliver to Buyer earthquake guides (and questionnaire) and environmental hazards booklet; (ii) even if exempt from the obligation to provide a NHD, disclose if the Property is located in a Special Flood Hazard Area; Potential Flooding (Inundation) Area; Very High Fire Hazard Zone; State Fire Responsibility Area; Earthquake Fault Zone; Seismic Hazard Zone; and (iii) disclose any other zone as required by Law and provide any other information required for those zones.

C. WITHHOLDING TAXES: Within the time specified in paragraph 14A, to avoid required withholding, Seller shall Deliver to Buyer or qualified substitute, an affidavit sufficient to comply with federal (FIRPTA) and California withholding Law (C.A.R. Form AS or QS).

D. MEGAN'S LAW DATABASE DISCLOSURE: Notice: Pursuant to Section 290.46 of the Penal Code, information about specified registered sex offenders is made available to the public via an Internet Web site maintained by the Department of Justice at www.meganslaw.ca.gov. Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and ZIP Code in which he or she resides. (Neither Seller nor Brokers are required to check this website. If Buyer wants further information, Broker recommends that Buyer obtain information from this website during Buyer's inspection contingency period. Brokers do not have expertise in this area.)

**7. CONDOMINIUM/PLANNED DEVELOPMENT DISCLOSURES:**

A. SELLER HAS 7 (or □ _____) Days After Acceptance to disclose to Buyer whether the Property is a condominium, or is located in a planned development or other common interest subdivision (C.A.R. Form SPQ or SSD).

B. If the Property is a condominium or is located in a planned development or other common interest subdivision, Seller has 3 (or □ _____) Days After Acceptance to request from the HOA (C.A.R. Form HOA): (i) Copies of any documents required by Law; (ii) disclosure of any pending or anticipated claim or litigation by or against the HOA; (iii) a statement containing the location and number of designated parking and storage spaces; (iv) Copies of the most recent 12 months of HOA minutes for regular and special meetings; and (v) the names and contact information of all HOAs governing the Property (collectively, "CI Disclosures"). Seller shall itemize and Deliver to Buyer all CI Disclosures received from the HOA and any CI Disclosures in Seller's possession. Buyer's approval of CI Disclosures is a contingency of this Agreement as specified in paragraph 14B(3).

**8. ITEMS INCLUDED IN AND EXCLUDED FROM PURCHASE PRICE:**

A. NOTE TO BUYER AND SELLER: Items listed as included or excluded in the MLS, flyers or marketing materials are not included in the purchase price or excluded from the sale unless specified in 8B or C.

B. ITEMS INCLUDED IN SALE:
  (1) All EXISTING fixtures and fittings that are attached to the Property;
  (2) EXISTING electrical, mechanical, lighting, plumbing and heating fixtures, ceiling fans, fireplace inserts, gas logs and grates, solar systems, built-in appliances, window and door screens, awnings, shutters, window coverings, attached floor coverings, television antennas, satellite dishes, private integrated telephone systems, air coolers/conditioners, pool/spa equipment, garage door openers/remote controls, mailbox, in-ground landscaping, trees/shrubs, water softeners, water purifiers, security systems/alarms; (if checked) □ stove(s), □ refrigerator(s); and
  (3) The following additional items: _____
  (4) Seller represents that all items included in the purchase price, unless otherwise specified, are owned by Seller.
  (5) All items included shall be transferred free of liens and without Seller warranty.

C. ITEMS EXCLUDED FROM SALE: Unless otherwise specified, audio and video components (such as flat screen TVs and speakers) are excluded if any such item is not itself attached to the Property, even if a bracket or other mechanism is attached to the component is attached to the Property; and _____

Buyer's Initials _____ / _____      Seller's Initials K / B

Copyright © 1991-2010, CALIFORNIA ASSOCIATION OF REALTORS, INC.
RPA-CA REVISED 4/10 (PAGE 3 OF 8) Print Date      Reviewed by _____ Date _____

CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 3 OF 8)

Property Address: _937  18th  St._                                    Date: _05/17/2013_

9.  CONDITION OF PROPERTY: Unless otherwise agreed: (i) the Property is sold (a) in its PRESENT physical ("as-is") condition as of the date of Acceptance and (b) subject to Buyer's Investigation rights; (ii) the Property, including pool, spa, landscaping and grounds, is to be maintained in substantially the same condition as of the date of Acceptance; and (iii) all debris and personal property not included in the sale shall be removed by Seller by Close Of Escrow.
    A.  Seller shall, within the time specified in paragraph 14A, DISCLOSE KNOWN MATERIAL FACTS AND DEFECTS affecting the Property, including known insurance claims within the past five years, and make any and all other disclosures required by law.
    B.  Buyer has the right to inspect the Property and, as specified in paragraph 14B, based upon information discovered in those inspections: (i) cancel this Agreement; or (ii) request that Seller make Repairs or take other action.
    C.  Buyer is strongly advised to conduct investigations of the entire Property in order to determine its present condition. Seller may not be aware of all defects affecting the Property or other factors that Buyer considers important. Property improvements may not be built according to code, in compliance with current Law, or have had permits issued.

10.  BUYER'S INVESTIGATION OF PROPERTY AND MATTERS AFFECTING PROPERTY:
    A.  Buyer's acceptance of the condition of, and any other matter affecting the Property, is a contingency of this Agreement as specified in this paragraph and paragraph 14B. Within the time specified in paragraph 14B(1), Buyer shall have the right, at Buyer's expense unless otherwise agreed, to conduct inspections, investigations, tests, surveys and other studies ("Buyer Investigations"), including, but not limited to, the right to: (i) inspect for lead-based paint and other lead-based paint hazards; (ii) inspect for wood destroying pests and organisms; (iii) review the registered sex offender database; (iv) confirm the insurability of Buyer and the Property; and (v) satisfy Buyer as to any matter specified in the attached Buyer's Inspection Advisory (C.A.R. Form BIA). Without Seller's prior written consent, Buyer shall neither make nor cause to be made (i) invasive or destructive Buyer Investigations; or (ii) inspections by any governmental building or zoning inspector or government employee, unless required by Law.
    B.  Seller shall make the Property available for all Buyer Investigations. Buyer shall (i) as specified in paragraph 14B, complete Buyer Investigations and, either remove the contingency or cancel this Agreement, and (ii) give Seller, at no cost, complete Copies of all investigation reports obtained by Buyer. Seller's obligation shall survive the termination of this Agreement.
    C.  Seller shall have water, gas, electricity and all operable pilot lights on for Buyer's Investigations and through the date possession is made available to Buyer.
    D.  Buyer indemnify and Seller protection for entry upon property. Buyer shall: (i) keep the Property free and clear of liens; (ii) repair all damage arising from Buyer Investigations; and (iii) indemnify and hold Seller harmless from all resulting liability, claims, demands, damages and costs of Buyer Investigations. Buyer shall carry, or Buyer shall require anyone acting on Buyer's behalf to carry, policies of liability, workers' compensation and other applicable insurance, defending and protecting Seller from liability for any injuries to persons or property occurring during any Buyer Investigations or work done on the Property at Buyer's direction prior to Close Of Escrow. Seller is advised that certain protections may be afforded Seller by recording a "Notice of Non-responsibility" (C.A.R. Form NNR) for Buyer Investigations and work done on the Property at Buyer's direction. Buyer's obligations under this paragraph shall survive the termination or cancellation of this Agreement and Close Of Escrow.

11.  SELLER DISCLOSURES; ADDENDA; ADVISORIES; OTHER TERMS:
    A.  Seller Disclosures (if checked): Seller shall, within the time specified in paragraph 14A, complete and provide Buyer with a:
        ☒ Seller Property Questionnaire (C.A.R. Form SPQ)   OR   ☐ Supplemental Contractual and Statutory Disclosures (C.A.R. Form SSD)
    B.  Addenda (if checked):                          ☐ Addendum # _____ (C.A.R. Form ADM)
        ☐ Wood Destroying Pest Inspection and Allocation of Cost Addendum (C.A.R. Form WPA)
        ☐ Purchase Agreement Addendum (C.A.R. Form PAA)   ☐ Septic, Well and Property Monument Addendum (C.A.R. Form SWPI)
        ☒ Short Sale Addendum (C.A.R. Form SSA)             ☐ Other _____
    C.  Advisories (if checked):                        ☑ Buyer's Inspection Advisory (C.A.R. Form BIA)
        ☐ Probate Advisory (C.A.R. Form PAK)            ☑ Statewide Buyer and Seller Advisory (C.A.R. Form SBSA)
        ☐ Trust Advisory (C.A.R. Form TA)               ☐ REO Advisory (C.A.R. Form REO)
    D.  Other Terms:

12.  TITLE AND VESTING:
    A.  Within the time specified in paragraph 14, Buyer shall be provided a current preliminary title report, which shall include a search of the General Index. Seller shall within 7 Days After Acceptance give Escrow Holder a completed Statement of Information. The preliminary report is only an offer by the title insurer to issue a policy of title insurance and may not contain every item affecting title. Buyer's review of the preliminary report and any other matters which may affect title are a contingency of this Agreement as specified in paragraph 14B.
    B.  Title is taken in its present condition subject to all encumbrances, easements, covenants, conditions, restrictions, rights and other matters, whether of record or not, as of the date of Acceptance except: (i) monetary liens of record unless Buyer is assuming those obligations or taking the Property subject to those obligations; and (ii) those matters which Seller has agreed to remove in writing.
    C.  Within the time specified in paragraph 14A, Seller has a duty to disclose to Buyer all matters known to Seller affecting title, whether of record or not.
    D.  At Close Of Escrow, Buyer shall receive a grant deed conveying title (or, for stock cooperative or long-term lease, an assignment of stock certificate or of Seller's leasehold interest), including oil, mineral and water rights if currently owned by Seller. Title shall vest as designated in Buyer's supplemental escrow instructions. THE MANNER OF TAKING TITLE MAY HAVE SIGNIFICANT LEGAL AND TAX CONSEQUENCES. CONSULT AN APPROPRIATE PROFESSIONAL.
    E.  Buyer shall receive a CLTA/ALTA Homeowner's Policy of Title Insurance. A title company, at Buyer's request, can provide information about the availability, desirability, coverage, survey requirements, and cost of various title insurance coverages and endorsements. If Buyer desires title coverage other than that required by this paragraph, Buyer shall instruct Escrow Holder in writing and pay any increase in cost.

13.  SALE OF BUYER'S PROPERTY:
    A.  This Agreement is NOT contingent upon the sale of any property owned by Buyer.
    OR B.  ☐ (if checked): The attached addendum (C.A.R. Form COP) regarding the contingency for the sale of property owned by Buyer is incorporated into this Agreement.

Buyer's Initials ( _____ ) ( _____ )                    Seller's Initials ( _K_ ) ( _R B_ )

Copyright © 1991-2010, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
RPA-CA REVISED 4/10 (PAGE 4 OF 8) Print Date          Reviewed by _____ Date _____

CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 4 OF 8)

Property Address: _937 18th St_____    Date: _05/17/2013_

14. **TIME PERIODS; REMOVAL OF CONTINGENCIES; CANCELLATION RIGHTS:** The following time periods may only be extended, altered, modified or changed by mutual written agreement. Any removal of contingencies or cancellation under this paragraph by either Buyer or Seller must be exercised in good faith and in writing (C.A.R. Form CR or CC).

A. **SELLER HAS:** 7 (or ☐ ____) Days After Acceptance to Deliver to Buyer all Reports, disclosures and information for which Seller is responsible under paragraphs 4, 6A, B and C, 7A, 9A, 11A and 8, and 12. Buyer may give Seller a Notice to Seller to Perform (C.A.R. Form NSP) if Seller has not Delivered the items within the time specified.

B. (1) **BUYER HAS:** 17 (or ☐ ____) Days After Acceptance, unless otherwise agreed in writing, to:
   (i) complete all Buyer Investigations; approve all disclosures, reports and other applicable information, which Buyer receives from Seller; and approve all other matters affecting the Property; and
   (ii) Deliver to Seller Signed Copies of Statutory and Lead Disclosures Delivered by Seller in accordance with paragraph 6A.

   (2) Within the time specified in 14B(1), Buyer may request that Seller make repairs or take any other action regarding the Property (C.A.R. Form RR). Seller has no obligation to agree to or respond to Buyer's requests.
   (3) Within the time specified in 14B(1) (or as otherwise specified in this Agreement), Buyer shall Deliver to Seller either (i) a removal of the applicable contingency (C.A.R. Form CR), or (ii) a cancellation (C.A.R. Form CC) of this Agreement based upon a remaining contingency or Seller's failure to Deliver the specified items. However, if any report, disclosure or information for which Seller is responsible is not Delivered within the time specified in 14B(1), then Buyer has 5 (or ☐ ___) Days After Delivery of any such items, or the time specified in 14B(1), whichever is later, to Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement.
   (4) Continuation of Contingency: Even after the end of the time specified in 14B(1) and before Seller cancels this Agreement, if at all, pursuant to 14C, Buyer retains the right to either (i) in writing remove remaining contingencies, or (ii) cancel this Agreement based upon a remaining contingency or Seller's failure to Deliver the specified items. Once Buyer's written removal of all contingencies is Delivered to Seller, Seller may not cancel this Agreement pursuant to 14C(1).

C. **SELLER RIGHT TO CANCEL:**
   (1) Seller right to Cancel; Buyer Contingencies: If, within time specified in this Agreement, Buyer does not, in writing, Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement then Seller, after first Delivering to Buyer a Notice to Buyer to Perform (C.A.R. Form NBP) may cancel this Agreement. In such event, Seller shall authorize return of Buyer's deposit.
   (2) Seller right to Cancel; Buyer Contract Obligations: Seller, after first Delivering to Buyer a NBP may cancel this Agreement for any of the following reasons: (i) if Buyer fails to deposit funds as required by 3A or 3B; (ii) if the funds deposited pursuant to 3A or 3B are not good when deposited; (iii) if Buyer fails to Deliver a notice of FHA or VA costs or terms as required by 3C(3) (C.A.R. Form FVA); (iv) if Buyer fails to Deliver a letter as required by 3H; (v) if Buyer fails to Deliver verification as required by 3G or 3J; (vi) if Seller reasonably disapproves of the verification provided by 3G or 3J; (vii) if Buyer fails to return Statutory and Lead Disclosures as required by paragraph 6A(2); or (viii) if Buyer fails to sign or initial a separate liquidated damages form for an increased deposit as required by paragraphs 3B and 25. In such event, Seller shall authorize return of Buyer's deposit.
   (3) Notice To Buyer To Perform: The NBP shall: (i) be in writing; (ii) be signed by Seller; and (iii) give Buyer at least 2 (or ☐ ___) Days After Delivery (or until the time specified in the applicable paragraph, whichever occurs last) to take the applicable action. A NBP may not be Delivered any earlier than 2 Days Prior to the expiration of the applicable time for Buyer to Remove a contingency or cancel this Agreement or meet an obligation specified in 14C(1).

D. **EFFECT OF BUYER'S REMOVAL OF CONTINGENCIES:** If Buyer removes, in writing, any contingency or cancellation rights, unless otherwise specified in a separate written agreement between Buyer and Seller, Buyer shall with regard to that contingency or cancellation right conclusively be deemed to have: (i) completed all Buyer Investigations, and review of reports and other applicable information and disclosures; (ii) elected to proceed with the transaction; and (iii) assumed all liability, responsibility and expense for Repairs or corrections or for inability to obtain financing.

E. **CLOSE OF ESCROW:** Before Seller or Buyer may cancel this Agreement for failure of the other party to close escrow pursuant to this Agreement, Seller or Buyer must first Deliver to the other a demand to close escrow (C.A.R. Form DCE).

F. **EFFECT OF CANCELLATION ON DEPOSITS:** If Buyer or Seller gives written notice of cancellation pursuant to rights duly exercised under the terms of this Agreement, Buyer and Seller agree to Sign mutual instructions to cancel the sale and escrow and release deposits, if any, to the party entitled to the funds, less fees and costs incurred by that party. Fees and costs may be payable to service providers and vendors for services and products provided during escrow. Release of funds will require mutual Signed release instructions from Buyer and Seller, judicial decision or arbitration award. A Buyer or Seller may be subject to a civil penalty of up to $1,000 for refusal to sign such instructions if no good faith dispute exists as to who is entitled to the deposited funds (Civil Code §1057.3).

15. **REPAIRS:** Repairs shall be completed prior to final verification of condition unless otherwise agreed in writing. Repairs to be performed at Seller's expense may be performed by Seller or through others, provided that the work complies with applicable Law, including governmental permit, inspection and approval requirements. Repairs shall be performed in a good, skillful manner with materials of quality and appearance comparable to existing materials. It is understood that exact restoration of appearance or cosmetic items following all Repairs may not be possible. Seller shall: (i) obtain receipts for Repairs performed by others; (ii) prepare a written statement indicating the Repairs performed by Seller and the date of such Repairs; and (iii) provide Copies of receipts and statements to Buyer prior to final verification of condition.

16. **FINAL VERIFICATION OF CONDITION:** Buyer shall have the right to make a final inspection of the Property within 5 (or ☐ ___) Days Prior to Close Of Escrow, NOT AS A CONTINGENCY OF THE SALE, but solely to confirm: (i) the Property is maintained pursuant to paragraph 9; (ii) Repairs have been completed as agreed; and (iii) Seller has complied with Seller's other obligations under this Agreement (C.A.R. Form VP).

17. **PRORATIONS OF PROPERTY TAXES AND OTHER ITEMS:** Unless otherwise agreed in writing, the following items shall be PAID CURRENT and prorated between Buyer and Seller as of Close Of Escrow: real property taxes and assessments, interest, rents, HOA regular, special, and emergency dues and assessments imposed prior to Close Of Escrow, premiums on insurance assumed by Buyer, payments on bonds and assessments assumed by Buyer, and payments on Mello-Roos and other Special Assessment District bonds and assessments that are a current lien. The following items shall be assumed by Buyer WITHOUT CREDIT toward the purchase price: prorated payments on Mello-Roos and other Special Assessment District bonds and assessments and HOA special assessments that are a current lien but not yet due. Property will be reassessed upon change of ownership. Any supplemental tax bills shall be paid as follows: (i) for periods after Close Of Escrow, by Buyer; and (ii) for periods prior to Close Of Escrow, by Seller (see C.A.R. Form SPT or SBSA for further information). TAX BILLS ISSUED AFTER CLOSE OF ESCROW SHALL BE HANDLED DIRECTLY BETWEEN BUYER AND SELLER. Prorations shall be made based on a 30-day month.

Buyer's Initials _____    Seller's Initials _____

Copyright © 1991-2010, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
RPA-CA REVISED 4/10 (PAGE 5 OF 8) Print Date    Reviewed by ____ Date ____
CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 5 OF 8)



Property Address: _937 18th St._                                          Date: _05/17/2013_

18. **SELECTION OF SERVICE PROVIDERS:** Brokers do not guarantee the performance of any vendors, service or product providers ("Providers"), whether referred by Broker or selected by Buyer, Seller or other person. Buyer and Seller may select ANY Providers of their own choosing.

19. **MULTIPLE LISTING SERVICE ("MLS"):** Brokers are authorized to report to the MLS a pending sale and, upon Close Of Escrow, the sales price and other terms of this transaction shall be provided to the MLS to be published and disseminated to persons and entities authorized to use the information on terms approved by the MLS.

20. **EQUAL HOUSING OPPORTUNITY:** The Property is sold in compliance with federal, state and local anti-discrimination Laws.

21. **ATTORNEY FEES:** In any action, proceeding, or arbitration between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorney fees and costs from the non-prevailing Buyer or Seller, except as provided in paragraph 26A.

22. **DEFINITIONS:** As used in this Agreement:

   A. "Acceptance" means the time the offer or final counter offer is accepted in writing by a party and is delivered to and personally received by the other party or that party's authorized agent in accordance with the terms of this offer or a final counter offer.

   B. "C.A.R. Form" means the specific form referenced or another comparable form agreed to by the parties.

   C. "Close Of Escrow" means the date the grant deed, or other evidence of transfer of title, is recorded.

   D. "Copy" means copy by any means, including photocopy, NCR, facsimile and electronic.

   E. "Days" means calendar days. However, after Acceptance, the last Day for performance of any act required by this Agreement (including Close Of Escrow) shall not include any Saturday, Sunday, or legal holiday and shall instead be the next Day.

   F. "Days After" means the specified number of calendar days after the occurrence of the event specified, not counting the calendar date on which the specified event occurs, and ending at 11:59 PM on the final day.

   G. "Days Prior" means the specified number of calendar days before the occurrence of the event specified, not counting the calendar date on which the specified event is scheduled to occur.

   H. "Deliver", "Delivered" or "Delivery", regardless of the method used (i.e. messenger, mail, email, fax, other), means and shall be effective upon (i) personal receipt by Buyer or Seller or the individual Real Estate Licensee for that principal as specified in paragraph D of the section titled Real Estate Brokers on page 8;

   OR (if checked) □ per the attached addendum (C.A.R. Form RDN).

   I. "Electronic Copy" or "Electronic Signature" means, as applicable, an electronic copy or signature complying with California Law. Buyer and Seller agree that electronic means will not be used by either party to modify or alter the content or integrity of this Agreement without the knowledge and consent of the other party.

   J. "Law" means any law, code, statute, ordinance, regulation, rule or order, which is adopted by a controlling city, county, state or federal legislative, judicial or executive body or agency.

   K. "Repairs" means any repairs (including pest control), alterations, replacements, modifications or retrofitting of the Property provided for under this Agreement.

   L. "Signed" means either a handwritten or electronic signature on an original document, Copy or any counterpart.

23. **BROKER COMPENSATION:** Seller or Buyer, or both, as applicable, agrees to pay compensation to Broker as specified in a separate written agreement between Broker and that Seller or Buyer. Compensation is payable upon Close Of Escrow, or if escrow does not close, as otherwise specified in the agreement between Broker and that Seller or Buyer.

24. **JOINT ESCROW INSTRUCTIONS TO ESCROW HOLDER:**

   A. The following paragraphs, or applicable portions thereof, of this Agreement constitute the joint escrow instructions of Buyer and Seller to Escrow Holder, which Escrow Holder is to use along with any related counter offers and addenda, and any additional mutual instructions to close the escrow: 1, 3, 4, 5C, 11B and D, 12, 13B, 14F, 17, 22, 23, 24, 26, 30, and paragraph D of the section titled Real Estate Brokers on page 8. If a Copy of the separate compensation Agreement(s) provided for in paragraph 23, or paragraph D of the section titled Real Estate Brokers on page 8, is deposited with Escrow Holder by Broker, Escrow Holder shall accept such agreement(s) and pay out of Buyer's or Seller's funds, or both, as applicable, the respective Broker's compensation provided for in such agreement(s). The terms and conditions of this Agreement not specifically referenced above, in the specified paragraphs are additional matters for the information of Escrow Holder, but about which Escrow Holder need not be concerned. Buyer and Seller will receive Escrow Holder's general provisions directly from Escrow Holder and will execute such provisions upon Escrow Holder's request. To the extent the general provisions are inconsistent or conflict with this Agreement, the general provisions will control as to the duties and obligations of Escrow Holder only. Buyer and Seller will execute additional instructions, documents and forms provided by Escrow Holder that are reasonably necessary to close the escrow.

   B. A Copy of this Agreement shall be delivered to Escrow Holder within 3 business days after Acceptance (or □ _____). Escrow Holder shall provide Seller's Statement of Information to Title company when received from Seller, Buyer and Seller authorize Escrow Holder to accept and rely on Copies and Signatures as defined in this Agreement as originals, to open escrow and for other purposes of escrow. The validity of this Agreement as between Buyer and Seller is not affected by whether or when Escrow Holder Signs this Agreement.

   C. Brokers are a party to the escrow for the sole purpose of compensation pursuant to paragraph 23 and paragraph D of the section titled Real Estate Brokers on page 8. Buyer and Seller irrevocably assign to Brokers compensation specified in paragraph 23, respectively, and irrevocably instruct Escrow Holder to disburse those funds to Brokers at Close Of Escrow or pursuant to any other mutually executed cancellation agreement. Compensation instructions can be amended or revoked only with the written consent of Brokers. Buyer and Seller shall release and hold harmless Escrow Holder from any liability resulting from Escrow Holder's payment to Broker(s) of compensation pursuant to this Agreement. Escrow Holder shall immediately notify Brokers: (i) if Buyer's initial or any additional deposit is not made pursuant to this Agreement, or is not good at time of deposit with Escrow Holder; or (ii) if either Buyer or Seller instruct Escrow Holder to cancel escrow.

   D. A Copy of any amendment that affects any paragraph of this Agreement for which Escrow Holder is responsible shall be delivered to Escrow Holder within 2 business days after mutual execution of the amendment.

Buyer's Initials _____                                Seller's Initials _____

Copyright © 1991-2010, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
RPA-CA REVISED 4/10 (PAGE 6 OF 8) Print Date
CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 6 OF 8)

Reviewed by _____  Date _____

Property Address: _937 18th St_        Date: _05/17/2013_

**25. LIQUIDATED DAMAGES:** If Buyer fails to complete this purchase because of Buyer's default, Seller shall retain, as liquidated damages, the deposit actually paid. If the Property is a dwelling with no more than four units, one of which Buyer intends to occupy, then the amount retained shall be no more than 3% of the purchase price. Any excess shall be returned to Buyer. Release of funds will require mutual, Signed release instructions from both Buyer and Seller, judicial decision or arbitration award. AT TIME OF THE INCREASED DEPOSIT BUYER AND SELLER SHALL SIGN A SEPARATE LIQUIDATED DAMAGES PROVISION FOR ANY INCREASED DEPOSIT (C.A.R. FORM RID).

Buyer's Initials ____ / ____     Seller's Initials ____ K ____ / ____ B ____

**26. DISPUTE RESOLUTION:**

A. **MEDIATION:** Buyer and Seller agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to arbitration or court action. Buyer and Seller also agree to mediate any disputes or claims with Broker(s) who, in writing, agree to such mediation prior to, or within a reasonable time after, the dispute or claim is presented to the Broker. Mediation fees, if any, shall be divided equally among the parties involved. If, for any dispute or claim to which this paragraph applies, any party (i) commences an action without first attempting to resolve the matter through mediation, or (ii) before commencement of an action, refuses to mediate after a request has been made, then that party shall not be entitled to recover attorney fees, even if they would otherwise be available to that party in any such action. THIS MEDIATION PROVISION APPLIES WHETHER OR NOT THE ARBITRATION PROVISION IS INITIALED. Exclusions from this mediation agreement are specified in paragraph 26C.

B. **ARBITRATION OF DISPUTES:**
Buyer and Seller agree that any dispute or claim in Law or equity arising between them out of this Agreement or any resulting transaction, which is not settled through mediation, shall be decided by neutral, binding arbitration. Buyer and Seller also agree to arbitrate any disputes or claims with Broker(s) who, in writing, agree to such arbitration prior to, or within a reasonable time after the dispute or claim is presented to the Broker. The arbitrator shall be a retired judge or justice, or an attorney with at least 5 years of residential real estate Law experience, unless the parties mutually agree to a different arbitrator. The parties shall have the right to discovery in accordance with Code of Civil Procedure §1283.05. In all other respects, the arbitration shall be conducted in accordance with Title 9 of Part 3 of the Code of Civil Procedure. Judgment upon the award of the arbitrator(s) may be entered into any court having jurisdiction. Enforcement of this agreement to arbitrate shall be governed by the Federal Arbitration Act. Exclusions from this arbitration agreement are specified in paragraph 26C.

"NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY."

"WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION."

Buyer's Initials ____ / ____     Seller's Initials ____ K ____ / ____ B ____

C. **ADDITIONAL MEDIATION AND ARBITRATION TERMS:**
(1) **EXCLUSIONS:** The following matters shall be excluded from mediation and arbitration: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code §2985; (ii) an unlawful detainer action; (iii) the filing or enforcement of a mechanic's lien; and (iv) any matter that is within the jurisdiction of a probate, small claims or bankruptcy court. The filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies, shall not constitute a waiver or violation of the mediation and arbitration provisions.
(2) **BROKERS:** Brokers shall not be obligated or compelled to mediate or arbitrate unless they agree to do so in writing. Any Broker(s) participating in mediation or arbitration shall not be deemed a party to the Agreement.

**27. TERMS AND CONDITIONS OF OFFER:**
This is an offer to purchase the Property on the above terms and conditions. The liquidated damages paragraph or the arbitration of disputes paragraph is incorporated in this Agreement if initialed by all parties or if incorporated by mutual agreement in a counter offer or addendum. If at least one but not all parties initial such paragraph(s), a counter offer is required until agreement is reached. Seller has the right to continue to offer the Property for sale and to accept any other offer at any time prior to notification of Acceptance. If this offer is accepted and Buyer subsequently defaults, Buyer may be responsible for payment of Brokers' compensation. This Agreement and any supplement, addendum or modification, including any Copy, may be Signed in two or more counterparts, all of which shall constitute one and the same writing.

**28. TIME OF ESSENCE; ENTIRE CONTRACT; CHANGES:** Time is of the essence. All understandings between the parties are incorporated in this Agreement. Its terms are intended by the parties as a final, complete and exclusive expression of their Agreement with respect to its subject matter, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. Except as otherwise specified, this Agreement shall be interpreted and disputes shall be resolved in accordance with the laws of the State of California. Neither this Agreement nor any provision in it may be extended, amended, modified, altered or changed, except in writing Signed by Buyer and Seller.

Buyer's Initials ____ / ____      Seller's Initials ____ K ____ / ____ B ____

Copyright © 1991-2010, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
RPA-CA REVISED 4/10 (PAGE 7 OF 8) Print Date

Reviewed by _____ Date _____



CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 7 OF 8)

Property Address ___937 18th St.___          Date: __05/17/2013__

29. EXPIRATION OF OFFER: This offer shall be deemed revoked and the deposit shall be returned unless the offer is Signed by Seller and a Copy of the Signed offer is personally received by Buyer, or by _____ who is authorized to receive it, by 5:00 PM on the third Day after this offer is signed by Buyer (or, if checked, ☐ by ____ ☐ AM ☐ PM, on _____ (date)).

Buyer has read and acknowledges receipt of a Copy of the offer and agrees to the above confirmation of agency relationships.

Date __05/17/2013__                                          Date __5/17/2013__

BUYER _____                      BUYER _____

(Print name) __Thomas Lei__                   (Print name) __Katherine Lu__

(Address) _____

☐ Additional Signature Addendum attached (C.A.R. Form ASA).

30. ACCEPTANCE OF OFFER: Seller warrants that Seller is the owner of the Property, or has the authority to execute this Agreement. Seller accepts the above offer, agrees to sell the Property on the above terms and conditions, and agrees to the above confirmation of agency relationships. Seller has read and acknowledges receipt of a Copy of this Agreement, and authorizes Broker to Deliver a Signed Copy to Buyer.

☐ (If checked) SUBJECT TO ATTACHED COUNTER OFFER (C.A.R. Form CO) DATED: _____

Date __05/17/201?__                                          Date _____

SELLER _____                    SELLER _____

(Print name) __Kimber. T. Ise?__              (Print name) _____

(Address) _____

☐ Additional Signature Addendum attached (C.A.R. Form ASA).

( ____ / ____ )   CONFIRMATION OF ACCEPTANCE: A Copy of Signed Acceptance was personally received by Buyer or Buyer's authorized (Initials)   agent on (date) _____ ☐ AM ☐ PM. A Binding Agreement is created when a Copy of Signed Acceptance is personally received by Buyer or Buyer's authorized agent whether or not confirmed in this document. Completion of this confirmation is not legally required in order to create a binding Agreement. It is solely intended to evidence the date that Confirmation of Acceptance has occurred.

REAL ESTATE BROKERS:
A. Real Estate Brokers are not parties to the Agreement between Buyer and Seller.
B. Agency relationships are confirmed as stated in paragraph 2.
C. If specified in paragraph 3A(2), Agent who submitted the offer for Buyer acknowledges receipt of deposit.
D. COOPERATING BROKER COMPENSATION: Listing Broker agrees to pay Cooperating Broker (Selling Firm) and Cooperating Broker agrees to accept, out of Listing Broker's proceeds in escrow: (i) the amount specified in the MLS, provided Cooperating Broker is a Participant of the MLS in which the Property is offered for sale or a reciprocal MLS; or (ii) ☐ (if checked) the amount specified in a separate written agreement (C.A.R. Form CBC) between Listing Broker and Cooperating Broker. Declaration of License and Tax (C.A.R. Form DLT) may be used to document that tax reporting will be required or that an exemption exists.

Real Estate Broker (Selling Firm) __Southern California Realty__               DRE Lic. # __0131 2729__
By __Hinglong Wing__          DRE Lic # __00??????__  Date __05/07/2013__
Address __1055 E. Valley Blvd #405__       City __San Gabriel__     State __CA__  Zip __91776__
Telephone __626-???-????__  Fax __626-???-7444__  E-mail __q.huang@socalgas.net__

Real Estate Broker (Listing Firm) __Robert M. Sullivan Inc__                   DRE Lic # __00715743__
By _____          DRE Lic # _____  Date _____
Address __520 E. Valley Blvd__      City _____  State __CA__  Zip _____
Telephone __626-???-????__  Fax __626-???-????__  E-mail __PickDrive.uarb.com__

ESCROW HOLDER ACKNOWLEDGMENT:
Escrow Holder acknowledges receipt of a Copy of this Agreement, (if checked, ☐ a deposit in the amount of $ _____ ),
counter offer numbered _____, ☐ Seller's Statement of Information and ☐ Other _____,
and agrees to act as Escrow Holder subject to paragraph 24 of this Agreement, any
supplemental escrow instructions and the terms of Escrow Holder's general provisions if any.
Escrow Holder is advised that the date of Confirmation of Acceptance of the Agreement as between Buyer and Seller is _____.
Escrow Holder _____                                       Escrow # _____
By _____                                                  Date _____
Address _____
Phone/Fax/E-mail _____
Escrow Holder is licensed by the California Department of ☐ Corporations, ☐ Insurance, ☐ Real Estate. License # _____

PRESENTATION OF OFFER: ( ____ ) Listing Broker presented this offer to Seller on _____ (date).
     Broker or Designee Initials

REJECTION OF OFFER: ( ____ )( ____ ) No counter offer is being made. This offer was rejected by Seller on _____ (date).
     Seller's Initials

THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

☐ Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

REVISION DATE 4/10

Reviewed by _____ Broker or Designee _____ Date _____

CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 8 OF 8)                          blank forms

EXH C TO
ADVERSARIAL
COMPLAINT

## Package     Item No.     Winning Bid     Bidder No.
## CB51020 $617,500.00 8022

| Have you viewed the property? | ☐ Yes ☑ No |
|---|---|

| | | |
|---|---|---|
| Winning Bid Amount: | $617,500.00 | ☑ SOLD SUBJECT TO SELLER CONFIRMATION |
| + 5.00% Buyers Premium: | $30,875.00 | 5% Earnest Money Deposit Required |
| = Total Purchase Price: | $648,375.00 | Earnest Money Deposit = $32,418.75 |

**Property Address:** 937 18TH ST

| City: | SANTA MONICA | Type: | Condo |
|---|---|---|---|
| State: | CA | Square Feet: | 1319 |
| Zip: | 90403 | Bed Rooms: | 3 |
| County: | Los Angeles | Baths: | 2 |

**Buyer Name:** Thomas Lei

Co-buyer Name: Katherine W. Lu

Company Name:

Mailing Address: 12575 La Cresta Drive

| City: | Los Altos Hills | State: California | Zip: 94022 |
|---|---|---|---|
| Home Phone: | 408-887-7574 | Cell Phone: | 408-279-1186 |

Email: tdleimd@gmail.com     ☐ I will be paying cash for my purchase.

First Time Home Buyer: No    ☐ Owner Occupied    ☐ Investment    ☑ Second Home

*By signing below, buyer(s) confirm the winning bid amount and total purchase price and agree to the purchase of the subject property as set forth.*

| Buyer's Signature: | *DocuSigned by:* | Date: | 5/17/2013 |
|---|---|---|---|
| Buyer's Signature: | | Date: | 5/17/2013 |

**Broker Name:** Qinglong Wang     (Only if Buyer is represented.)

| Work Phone: | 626-731-3521 | Email: | qilwang@sbcglobal.net |
|---|---|---|---|
| Firm Name: | | License#: | BK LIC.01312729 |
| Broker's Signature: | *Qinglong Wang* | Date: | 5/17/2013 |

**Lender Name:** Wells Fargo     (Only if Buyer is financing.)

| Loan Amount: | | LTV: | |
|---|---|---|---|
| Agent Name: | Joann Yu | Finance Type: | Conventional |
| Work Phone: | 650-559-2013 | Email: | erica.y.lau@wellsfargo.com |

| Date Time: | Online Auction Designated: | Total Purchased Price Deposit Required: | Auctioneer: |
|---|---|---|---|
| 05-17-2013-01:05:34 | No | No | |

# auction.com

1 MAUCHLY · IRVINE · CA 92618
CUSTOMER SERVICE · (888) 996-3823

| **Auction Event ID** | O-360 | **Auction Date** | 05-17-2013 |
|---|---|---|---|

## IMPORTANT CONTACT INFORMATION

| | | | |
|---|---|---|---|
| **Auction Item No.** | CB51020 | **Loan No. (REO ID)** | 600412662 |
| **Property Address** | 937 18TH ST SANTA MONICA CA 90403 | | |

| | | | |
|---|---|---|---|
| AUCTION.COM Contact: | Customer Service | | Tel: 800-793-6107 |
| Property Managing Agent | BRANDON HORKAI | | |
| Agent Telephone: | 310-351-6821 | | Agent's Email BH.EMPIREREALTY@ROCKETMAIL.COM |

| | | | |
|---|---|---|---|
| Owner Occupied? | ☐ YES ☑ NO | Are you a licensed Agent: ☐ YES ☑ NO | |
| Subject To Confirmation? | ☑ YES ☐ NO | Cash or Financed Sale? ☐ CASH ☑ FINANCE | |
| Winning Bid Amount | $ 617,500.00 | **Total EMD Required** $ | 32,418.75 |
| Buyer's Premium | $ 30,875.00 | | |
| **TOTAL Purchase Price** | $ 648,375.00 | **Closing Date :** | 07/01/2013 |

| | |
|---|---|
| **Buyer's Name** | Thomas Lei |
| **Co-Buyer Name** | Katherine W. Lu |
| **Buyer's Mailing Address** | 12575 La Cresta Drive     Los Altos Hills, California 94022 |
| **Buyer's Telephone** | 408-279-1186     Buyer's Email: tdleimd@gmail.com |
| **Buyer's Broker/Agent:** | Qinglong Wang |
| Agent's Broker Company | |
| Agent Telephone | 626-731-3521     Agent Email: qilwang@sbcglobal.net |

| | |
|---|---|
| **Escrow/Closing Agent** | |
| Escrow/Closing Agent | Email: |
| Office Telephone | Secondary Contact |

| | |
|---|---|
| **Lender Institution** | Wells Fargo     Tel: 650-559-2013 |
| Lending Officer | Joann Yu     Lender Email     erica.y.lau@wellsfargo.com |

## PROPERTY SOLD AT AUCTION

1. **CASH.** The seller executed purchase documentation shall be sent to you as soon as available. If you are able to close early, please contact the Escrow/Closing Agent to make arrangements. Obtain from the Escrow/Closing Agent and be prepared to wire the balance due for closing the transaction to the Escrow/Closing Agent as soon as possible. Documents not provided on auction day, for transactions entered into by a legal entity (anything other than a natural person) must be provided to the Escrow/Closing Agent as soon as possible and prior to closing of the transaction.

2. **FINANCING.\*** The seller executed purchase documentation shall be sent to you as soon as available. Contact your lender for details to arrange for your financing and provide all the necessary supporting documents (Proof of Income and Assets – W2, pay stubs, etc). Contact the Escrow/Closing agent to confirm the closing date and confirm receipt of all necessary documents required for closing. Maintain constant contact with your Escrow/Closing Agent and lender; advise Escrow/Closing Agent, lender and auctioneer of any details that would prevent a timely closing and provide your best contact number. **PROMPTLY COMPLY WITH ALL OF THE INSTRUCTIONS FROM YOUR LENDER OR CLOSER. \*FINANCING IS NOT A CONTINGENCY TO YOUR OBLIGATION TO CLOSE.**

**PROPERTY SOLD "SUBJECT TO CONFIRMATION"** - The Escrow/Closing Agent or Auctioneer shall notify you of the acceptance of your winning bid. If accepted, the procedure set forth in the Addendum "Subject To" shall be sent to the address that was provided in the Purchase Agreement with Joint Escrow Instructions.

1. **ACCEPTED BIDS** - see above "Property Sold at Auction" for the next steps. You should call the Escrow/Closing Agent and confirm the closing date.
2. **REJECTED BIDS –** Please see the Addendum "Subject To."



Lupe Hernandez
14351 Myford Road, Suite H
Tustin, CA 92780
Tel: (877) 272-1113
Fax: (714) 242-1839

## Auction Bid Deposit Escrow Agreement
## (Auction.com)

### Auction #

CB51020 / 600412662

Parties to this Auction Bid Deposit Escrow Agreement (Auction.com) ("Agreement") are Ultra Escrow Incorporated, as servicing agent ("Servicer"), and the bidder identified below ("Bidder"). Servicer will act as Bidder's servicing agent for the purpose of holding funds in reserve for the sole purpose indicated in this Agreement.

## Bidder Information

| | |
|---|---|
| Registered Bidder's Name: | Thomas Lei, Katherine W. Lu |
| Auth. Entity Representative: | |
| Mailing Address: | 12575 La Cresta Drive Los Altos Hills, California 94022 |
| | |
| Daytime Phone: | 408-279-1186 |
| Mobile Phone: 408-279-1186 |
| Facsimile: | |
| Preferred Email Address: | tdleimd@gmail.com |
| Alternate Email Address: | |

### GENERAL TERMS OF AUCTION DEPOSIT INCLUDING SERVICER FEES:

1. Bidder agrees to deposit with Servicer the amount (minimum $2,500 per asset) indicated on the Bid Deposit Instructions attached hereto as **Exhibit A** and incorporated herein by reference ("Deposit Instructions"), by cashier's check or wire transfer of immediately available funds (the "Bid Deposit Amount"). The Bid Deposit Amount must be received by Servicer no later than 5:00 PM on the first business day after this Agreement is presented to Bidder by Auction.com. Servicer shall have no liability for any Bid Deposit Amount not received within the time specified by Auction.com.
2. Bidder must submit a completed and fully executed copy of this Agreement and Deposit Instructions to process the Bid Deposit. One Agreement and one set of Deposit Instructions must be submitted for each property.
3. Bidder directs Servicer to provide Auction.com with the details of this Agreement and the fact of receipt of Deposit Instructions and the Bid Deposit Amount to facilitate obtaining the Short Sale Lender's Consent.
4. The Bid Deposit Amount and any other funds deposited with Servicer and comprising the Total Deposit Amount indicated in the Deposit Instructions ("Total Deposit Amount") will be held in Servicer's non-interest bearing escrow trust account.
5. Servicer will return to Bidder each Bid Deposit Amount relating to assets for which the Short Sale Lender's Consent is not received within fifteen (15) business days after Servicer's receipt of this Agreement. Servicer shall return the Bid Deposit Amount within seven (7) business days after the end of the period during which the Short Sale Lender's Consent may be delivered.
6. If Short Sale Lender's Consent is received, Bidder hereby irrevocably agrees that Servicer may immediately transfer the Bid Deposit Amount to the designated escrow/closing agent.

## TERMS AND CONDITIONS

1. **Rights, Duties and Responsibilities of Servicer.** Servicer is acting hereunder only as Bidder's escrow agent for the limited purpose of holding and disbursing funds in accordance with the provisions of this Agreement, and Servicer is not responsible or liable in any manner whatsoever for the sufficiency, correctness, genuineness, or validity of any instrument or for the identity, authority, or rights of any person executing or depositing it. Notwithstanding any provision herein incorporating other instruments by reference, Servicer shall not be charged with notice of the terms of any such instruments, and its duties, responsibilities, and immunities shall be determined solely by reference to this Agreement.

2. **Fees and Expenses.** Servicer shall be paid fees that are disclosed in this Agreement. All fees and expenses of the Servicer addressed in this Agreement may be deducted from funds held on behalf of Bidder unless otherwise paid.

3. **Notices.** All notices, requests, consents, demands and other communications required or permitted to be given or made under this Agreement shall be in writing and shall be deemed to have been duly given when delivered to the parties at their respective addresses or numbers set forth in this Agreement (a) on the date of personal delivery, or (b) three (3) business days following the date of deposit in the United States mail, postage prepaid, by registered air mail, return receipt requested, or (c) on the date of transmission by telegram, cable, telex, or telephonic facsimile transmission, as evidenced by written confirmation of successful transmission, or (d) on the date following delivery to a nationally recognized overnight courier service.

4. **Relationship.** Bidder understands and agrees that Servicer has no authority, express or implied, to act as agent for Bidder other than for the limited purpose of holding and disbursing funds in accordance with the provisions of this Agreement. Bidder further agrees that Bidder has no right or authority whatsoever to direct or control the actions of Servicer other than Servicer's limited undertakings as explicitly set forth in this Agreement.

5. **Dispute.** In the event of conflicting claims to the funds held pursuant to this Agreement, Bidder expressly agrees that Servicer shall have the right, at its election, to discontinue any acts or services under this Agreement, terminate this Agreement, or commence an interpleader action in the appropriate court requiring the claimants to answer and litigate their several claims and rights among themselves, and Servicer is authorized to deposit with the clerk of the court all documents and funds held in escrow on behalf of Bidder pursuant to this Agreement. In the event such action is filed, Bidder severally agrees to pay all cancellation charges and costs, expenses and reasonable attorneys' fees which Servicer is required to expend or incur in such interpleader action, the amount thereof to be fixed and judgment therefore to be rendered by the court. Upon the filing of an interpleader action, Servicer shall be fully and completely absolved from all further obligation or liability under this Agreement.

6. **Attorneys' Fees; Choice of Law and Venue.** Bidder agrees that Bidder is severally liable to Servicer for all attorneys' fees and costs incurred by it relating to this Agreement or the underlying transaction, whether or not suit is filed, including any attorneys' fees and costs incurred as part of any court, bankruptcy, arbitration proceeding, or appeal. This Agreement shall be governed by and construed in accordance with the laws of the State of California. Bidder agrees that jurisdiction and venue for any court action shall be in the Superior Court of California, County of Orange.

7. **Severability.** In the event any provision of this Agreement is found to be invalid, illegal or unenforceable, the validity, legality or enforceability of the remaining provisions shall not in any way be affected or impaired.

8. **Facsimile and Electronic Signatures.** Facsimile copies of documents, documents executed, scanned and transmitted electronically, and electronic signatures shall be deemed original signatures for purposes of this Agreement and all matters related thereto, with such facsimile, scanned and electronic signatures having the same legal effect as original signatures.

9. **Entire Agreement.** This Agreement constitutes the entire understanding between Servicer and Bidder. No amendment or modification of this Agreement shall be effective unless set forth in writing and signed by both Servicer and Bidder.

It is understood by the parties signing this Agreement that the Agreement sets forth the complete instructions between Servicer, as escrow agent, and Bidder, as principal, for the escrow transaction embodied in the Agreement. Read this Agreement carefully and do not sign it unless it is acceptable to you.

DATE:   5/17/2013   « DATE HERE

**BIDDER:**                                              **SERVICER:**

DocuSigned by:

                                    « SIGN HERE    Ultra Escrow Incorporated
[Insert Bidder Corporate Name, if applicable, or Individual Signature]

By X                                                    By_____
(Signature and Title of Authorized Corporate Officer, if applicable,
or Printed Name of Individual]

AFTER COMPLETING AND SIGNING THIS AGREEMENT, PLEASE FAX OR E-MAIL THIS FORM TO:
FAX: (714) 242-1839  -  E-MAIL: shortsaledeposits@auction.com

EACH PARTY HAS READ AND AGREES THAT THE INFORMATION GIVEN IS ACCURATE AND AGREES TO THE TERMS AND CONDITIONS ON ALL PAGES OF THE AGREEMENT

## Exhibit A

# BID DEPOSIT INSTRUCTIONS

**Registered Bidder's Name:** Thomas Lei, Katherine W. Lu

| Asset ID No. | Asset Address | Bid Deposit Amount |
|---|---|---|
| 600412662 | 937 18TH ST SANTA MONICA CA 90403 | 32,418.75 |
| | **TOTAL DEPOSIT AMOUNT:** | 32,418.75 |

## DEPOSIT METHOD

☐ **CASHIER'S CHECK**    ☑ **WIRE TRANSFER (See wiring instructions below)**

## CASHIER'S CHECK INSTRUCTIONS:

**Bidder should make cashier's check payable to: Ultra Escrow Incorporated**

Please send cashier's checks to the physical address at the top of page one. Cashier's checks must be received no later than 5:00 PM on the first business day after this Agreement is presented to Bidder by Auction.com to ensure that they are deposited and collected before the auction date. **Please reference Bidder's name and the Auction.com Auction Number on the cashier's check.**

## WIRING INSTRUCTIONS:

| ACCOUNT NAME:<br>Ultra Escrow Incorporated<br>Account # 555034342<br><br>BANK INFORMATION:<br>City National Bank<br>Specialty Deposits<br>555 South Flower Street<br>Los Angeles, CA 90071 | ABA (ROUTING) NUMBER:<br>**122016066**<br><br>ACCOUNT NUMBER:<br>**555034342** | For the Benefit of:<br>Ultra Escrow Incorporated<br><br>Please Reference:<br>Bidder Name, Telephone Number, and Auction #<br><br>(NOTE: THIS REFERENCE IS CRITICAL! FAILURE TO USE THIS REFERENCE IN THE WIRE WILL RESULT IN IT BEING REJECTED.) |

# BID DEPOSIT RETURN INSTRUCTION

In the event the Bid Deposit Amount needs to be returned to Bidder, this instruction should be pre-executed directing the return of the Bid Deposit Amount, if necessary.  By signing this Agreement, Bidder authorizes Servicer to return the Bid Deposit Amount to Bidder using the following method:

**Return Method** (Please Check):  [  ] Overnight Delivery        [ x ] Wire Transfer

| Bid Deposit Return |
| --- |
| Registered Bidder's Name: Thomas Lei, Katherine W. Lu |
| Bidder's Disbursement Address: 12575 La Cresta Drive Los Altos Hills, California 94022 |
| |

| Bank Account Information | |
| --- | --- |
| Account Name:    Lei and Lu family trust | |
| Bidder's Bank Name:    First republic bank | |
| Account #:  95400012098 | ABA Routing #:    321081669 |

# DISBURSEMENT INSTRUCTION

Any disbursement of the Bid Deposit Amount other than to the designated escrow/closing agent for a winning Bidder, or a non-winning Bidder according to the separately executed Bid Deposit Return Instruction, will require the following form to be completed and submitted to Servicer. By signing this Agreement, Bidder authorizes Servicer to disburse the Bid Deposit Amount using the following method:

**Disbursement Method** (Please Check): [ ] Overnight Delivery        [x] Wire Transfer

| Disbursement | |
|---|---|
| Registered Bidder's Name: Thomas Lei, Katherine W. Lu | |
| Auth. Entity Representative: | |
| Intended Recipient: | |
| Recipient's Address: 12575 La Cresta Drive Los Altos Hills, California 94022 | |
| | |
| Reference: | |
| **Bank Account Information** | |
| Recipient's Account Name:  Lei  and Lu family trust | |
| Recipient's Bank Name:   First republic bank | |
| Account #:  95400012098 | ABA Routing #:  321081669 |

AUCTION ITEM NO. CB51020 / 600412662

Property Address: 937 18TH ST SANTA MONICA CA 90403

## AUCTION ADDENDUM – SHORT SALE

SELLER:                                           BUYER:

KIMBERLY BUI                                      Thomas Lei

                                                  Katherine W. Lu

This Auction Addendum–Short Sale ("SS Addendum") amends and supplements that certain Purchase and/or Sales Agreement ("Agreement") for the purchase of the real property identified above. Seller agrees to sell to Buyer and Buyer agrees to purchase from Seller, the "Property" (as described in the Agreement) for the Total Purchase Price on the terms and conditions as set forth in the Agreement and on such terms as set forth herein. Any capitalized terms not otherwise defined herein shall have the meanings as set forth in the Agreement. If there is a conflict between the Agreement and the terms and provisions of this SS Addendum, the terms of this SS Addendum shall control.

1.    TOTAL PURCHASE PRICE CALCULATION:

| | |
|---|---|
| Winning Bid Amount: | $    617,500.00 |
| plus Buyer's Premium (greater of 5% or $2,500): | $    30,875.00 |
| equals TOTAL PURCHASE PRICE: | $    648,375.00 |
| Earnest Money Deposit* from Buyer: | $    32,418.75 |

☑   CHECK BOX if first property acquired at auction (*Earnest Money Deposit to be 5% of Total Purchase Price or $2,500, whichever is greater.  First $2,500 of Earnest Money Deposit shall be in the form of a cashier's check or cash.)

☐   CHECK BOX if NOT first property acquired at auction (*Earnest Money Deposit to be 15% of Total Purchase Price or $5,000, whichever is greater.  First $5,000 of Earnest Money Deposit shall be in the form of a cashier's check or cash.)

A.   Bidder's Bank.  Upon being declared the Winning Bidder, information regarding a bidder's bank ("Bidder's Bank") will be provided to the Buyer for delivery of the Earnest Money Deposit.  The Buyer, by execution of this Agreement, hereby agrees to deliver the Earnest Money Deposit to the Bidder's Bank, as directed by auctioneer and further, Buyer, by execution of this Agreement, hereby authorizes the transfer of the monies held on account of Buyer in the Bidder's Bank, if any, to be transferred to the Escrow/Closing Agent set forth herein upon the approval by the Short Sale Lender as set forth in Section 6 below, and cancellation of any previous escrow, if applicable, regarding the Property.  No further action, consent, instruction or document from Buyer shall be required.

BUYER INITIALS_____ * INITIAL HERE

2.    CLOSING DATE:                    07/01/2013.  Escrow/Closing Agent shall close the transaction contemplated by the Agreement and this SS Addendum (the "Close of Escrow" or "Closing") on the earlier of the date set forth herein or the date that is forty-five (45) days after the date this SS Addendum is executed by Buyer.  If such date falls on a weekend or a state or federally recognized holiday, such Closing Date shall be the next business day.

_____/_____
SELLER INITIALS

* INITIAL HERE
BUYER INITIALS

AUCTION ITEM NO.  CB51020 / 600412662

Property Address:  937 18TH ST SANTA MONICA CA 90403

3.      FINANCING.  Buyer represents and warrants as follows (CHECK ONE BOX ONLY):

☐      A.      No Financing Contingency.  Buyer understands and agrees that the purchase of the Property and the transaction contemplated by the Agreement and this SS Addendum **IS NOT** contingent on the Buyer obtaining financing for the purchase of the Property.  Notwithstanding that there is no financing contingency, the Seller may require Buyer to obtain pre-qualification at or prior to entering into this Agreement.  If required, Buyer agrees to pre-qualify with Seller's auction designated lender and cooperate with such lender in the processing of this transaction (Buyer may obtain financing, if desired, through any lender of his or her choice).  The failure of Buyer to consummate and close the transaction contemplated by the Agreement and this SS Addendum may entitle Seller to liquidated damages or other legal remedies.

BUYER INITIALS_____/_____      « INITIAL HE

☑      B.      Financing Contingency.  Buyer has provided Seller with verifiable evidence that Buyer has pre-qualified for a loan to be secured by a first priority mortgage or deed of trust encumbering the Property (the "New First Mortgage Loan/Trust Deed Loan") which, when combined with the Earnest Money Deposit and additional funds of Buyer, immediately verifiable and available, will be sufficient to pay all amounts Buyer is required to pay under this Agreement to complete the purchase of the Property on or before the Close of Escrow.  Buyer shall act diligently and in good faith to cooperate with the lender and provide information reasonably requested in a timely manner to comply with the lender's requirements to qualify for financing.  Buyer shall notify Seller or Seller's agent, in writing, within fifteen (15) calendar days of execution of this Agreement by Buyer of Buyer's final financing approval, including providing the name and contact information for Buyer's lender.  If, through no fault of Buyer, Buyer is unable to obtain New First Mortgage Loan/Trust Deed Loan in the amount that Buyer pre-qualified for within fifteen (15) calendar days after executing the Agreement and this SS Addendum, Buyer or Seller may terminate the transaction contemplated by the Agreement and this SS Addendum and this transaction shall be cancelled.  Upon cancellation under this section, the Escrow/Closing Agent shall return to Buyer any Earnest Money Deposit given by Buyer to Escrow/Closing Agent, less document, administrative and processing fees, if any, incurred by Escrow/Closing Agent in relation to the transaction contemplated by the Agreement and this SS Addendum.  Upon Escrow/Closing Agent's receipt of signed cancellation instructions from Buyer or Seller pursuant to this section, Buyer and Seller shall be relieved of any further liability and/or obligation each to the other under this Agreement other than those terms that expressly survive such termination of the Agreement and this SS Addendum.

BUYER INITIALS_____/_____      « INITIAL HE

4.      INSPECTION AND APPRAISAL CONTINGENCY.      Buyer understands and agrees that the purchase of the Property and the transaction contemplated by the Agreement and this SS Addendum **IS NOT** contingent on the results of any inspection regarding the Property and Buyer waives the right to cancel the transaction based on the results of any inspection.  Buyer further understands and agrees that the purchase of the Property **IS NOT** contingent upon a written appraisal of the Property at no less than the Total Purchase Price.

5.      TIME PERIODS.  All time periods set forth in the Agreement for inspections, contingencies, covenants, and other obligations shall begin the date this SS Addendum is executed by Buyer.

6.      SHORT SALE APPROVAL.  THE AGREEMENT IS CONTINGENT UPON SELLER'S RECEIPT OF AND DELIVERY TO BUYER OF WRITTEN CONSENT ("**SHORT SALE LENDERS' CONSENT**") TO THE AGREEMENT AND THIS SS ADDENDUM AND THEIR TERMS FROM ALL EXISTING SECURED LENDERS AND LIEN HOLDERS ("**SHORT SALE LENDERS**") ON OR BEFORE THE DATE SET FOR CLOSING.  SHORT SALE LENDERS' CONSENT MEANS THAT ALL SHORT SALE LENDERS SHALL COLLECTIVELY AGREE TO REDUCE THEIR RESPECTIVE LOAN BALANCES BY AN AMOUNT SUFFICIENT TO PERMIT THE PROCEEDS FROM THE SALE OF THE PROPERTY TO PAY THE EXISTING BALANCES ON LOANS SECURED BY THE PROPERTY, REAL PROPERTY TAXES, BROKERAGE COMMISSIONS, CLOSING COSTS, AND OTHER MONETARY OBLIGATIONS THE AGREEMENT AND THIS SS ADDENDUM REQUIRE SELLER TO PAY AT THE CLOSE OF ESCROW

_____/_____      
SELLER INITIALS

_____/_____      « INITIAL HERE
BUYER INITIALS

Property Address: 937 18TH ST SANTA MONICA CA 90403

(INCLUDING, BUT NOT LIMITED TO, ESCROW CHARGES, TITLE CHARGES, DOCUMENTARY TRANSFER TAXES, PRORATIONS, RETROFIT COSTS, HOMEOWNERS ASSOCIATION FEES AND REPAIRS) WITHOUT REQUIRING SELLER TO PLACE ANY FUNDS INTO ESCROW OR HAVE ANY CONTINUING OBLIGATION TO SHORT SALE LENDERS.

IF, NO LATER THAN FIVE (5) BUSINESS DAYS PRIOR TO THE CLOSING DATE, (I) SELLER HAS NOT RECEIVED SHORT SALE LENDERS' CONSENT TO THE TERMS OF THE AGREEMENT AND THIS SS ADDENDUM, SELLER MAY, IN WRITING, CANCEL THE AGREEMENT AND THIS SS ADDENDUM, OR (II) BUYER HAS NOT RECEIVED A COPY OF SHORT SALE LENDERS' CONSENT TO THE TERMS OF THE AGREEMENT AND THIS SS ADDENDUM, BUYER MAY, IN WRITING, CANCEL THE AGREEMENT AND THIS SS ADDENDUM. IN EITHER CASE, BUYER SHALL BE ENTITLED TO THE RETURN OF ANY EARNEST MONEY DEPOSIT DELIVERED TO THE ESCROW/CLOSING AGENT.

SELLER AND BUYER SHALL REASONABLY COOPERATE WITH EXISTING SHORT SALE LENDERS IN THE SHORT SALE PROCESS. SELLER IS INFORMED THAT A SHORT SALE MAY HAVE CREDIT OR LEGAL CONSEQUENCES AND MAY RESULT IN TAXABLE INCOME TO SELLER. SELLER IS ADVISED TO SEEK ADVICE FROM AN ATTORNEY, CERTIFIED PUBLIC ACCOUNTANT OR OTHER EXPERT REGARDING THE POTENTIAL CONSEQUENCES OF A SHORT SALE.

BUYER AGREES THAT BUYER IS BUYING THE PROPERTY "AS IS, WHERE IS, WITH ALL FAULTS AND LIMITATIONS." IF SELLER SUCCESSFULLY COMPLETES A COOPERATIVE SHORT SALE, SELLER WILL BE REQUIRED TO VACATE THE PROPERTY. BUYER AND SELLER REPRESENT AND WARRANT THAT THIS TRANSACTION IS AN ARM'S LENGTH TRANSACTION AND THAT NEITHER BUYER NOR SELLER ARE RELATED TO EACH OTHER NOR DO THEY HAVE A CLOSE PERSONAL OR BUSINESS RELATIONSHIP WITH THE OTHER.

7.      BUYER AND SELLER COSTS. Buyer and Seller acknowledge that each of them may incur costs in connection with rights or obligations under the Agreement and this SS Addendum. These costs may include, but are not limited to, payments for loan applications, inspections, appraisals, and other reports. Such costs will be the sole responsibility of the party incurring them if the Short Sale Lenders do not consent to the transaction or either party cancels the transaction pursuant to the Agreement and this SS Addendum.

8.      COMMISSIONS DUE REAL ESTATE LICENSEES. Buyer and Seller as well as their respective agents/brokers understand and acknowledge that all commissions to be paid at the closing of the transaction contemplated by the Agreement and this SS Addendum shall be calculated and paid based on the Winning Bid Amount (and not the Total Purchase Price) as set forth in Section 1.

9.      REQUIREMENT OF COMMUNICATION. Buyer and Seller hereby authorize Escrow/Closing Agent to report to auctioneer the status of the Closing and respond to all inquiries of the auctioneer including, but not limited to, current loan status of the Buyer, status of contingencies, inspection completion, and closing status upon request of auctioneer. Buyer and Seller shall further ensure that the Escrow/Closing Agent communicate with auctioneer as set forth herein.

10.     CONFLICT. To the extent that the terms of this SS Addendum conflict with any other terms of the Agreement, the terms of this SS Addendum shall control. All Agreement terms not specifically modified herein shall remain in full force and effect. No addition or modification of this SS Addendum shall be effective unless set forth in writing and signed by Buyer and Seller.

11.     COUNTERPARTS AND ELECTRONIC SIGNATURES. The Agreement and this SS Addendum may be executed in multiple counterparts by the parties hereto. All counterparts so executed shall constitute one agreement binding upon all parties, notwithstanding that all parties are not signatories to the original or the same counterpart. Each counterpart shall be deemed an original Agreement all of which shall constitute one agreement to be valid as of the date of this SS Addendum. Facsimile documents executed, scanned and transmitted electronically and electronic signatures shall be deemed original signatures for purposes of this SS Addendum and all matters related thereto, with such facsimile, scanned and electronic signatures having the same legal effect as original signatures. Seller and Buyer agree that this SS Addendum, any addendum thereto or any other document necessary for the consummation of the transaction contemplated by this SS Addendum may be accepted, executed or agreed to through the use of an electronic signature in accordance with the Electronic Signatures in Global and National Commerce Act ("E-Sign Act"), Title 15, United States Code, Sections 7001 et seq., as amended, the Uniform Electronic Transaction Act ("UETA"), as amended, and any applicable state law. Any document accepted, executed or agreed to in conformity with such laws

SELLER INITIALS _____/_____      BUYER INITIALS

◄ INITIAL HERE

AUCTION ITEM NO. CB51020 / 600412662

Property Address: 937 18TH ST SANTA MONICA CA 90403

will be binding on both Seller and Buyer the same as if it were physically executed and Buyer hereby consents to the use of any third party electronic signature capture service providers as may be chosen by Seller or auctioneer.

12. **LEGALLY BINDING CONTRACT.** THIS IS A LEGALLY BINDING ADDENDUM TO THE AGREEMENT. IF EITHER PARTY DOES NOT UNDERSTAND THE TERMS AND CONDITIONS OF THE AGREEMENT OR THIS SS ADDENDUM, CONSULT LEGAL OR OTHER COUNSEL BEFORE SIGNING. BUYER HAS BEEN ADVISED BY SELLER, SELLER'S BROKER AND AUCTIONEER TO SEEK LEGAL, FINANCIAL, CONSTRUCTION, AIR QUALITY, ENVIRONMENTAL AND/OR PROFESSIONAL INSPECTIONS AND ADVICE BY QUALIFIED PROFESSIONALS REGARDING BUYER'S PURCHASE OF THE PROPERTY AND THE TERMS OF THE AGREEMENT AND THIS SS ADDENDUM. BY SIGNING THE AGREEMENT AND THIS SS ADDENDUM, BUYER REPRESENTS AND WARRANTS THAT HE/SHE/IT HAS CONSULTED WITH, HAD THE OPPORTUNITY TO CONSULT WITH OR WAIVED THE RIGHT TO CONSULT WITH LEGAL OR OTHER PROFESSIONALS BUYER DEEMS PRUDENT OR NECESSARY.

13. **SEVERABILITY.** If any portion of this SS Addendum shall be declared by any court of competent jurisdiction to be invalid, illegal or unenforceable, such portion shall be deemed severed from this SS Addendum, and the remaining part of this SS Addendum shall remain in full force and effect, as fully as though such portion had never been part of this SS Addendum.

14. **LANGUAGE IN BOLD OR CAPITALIZED.** FOR EMPHASIS AND BUYER'S BENEFIT, SOME PROVISIONS HAVE BEEN BOLDED AND/OR CAPITALIZED (LIKE THIS SECTION), BUT EACH AND EVERY PROVISION IN THIS SS ADDENDUM IS SIGNIFICANT AND SHOULD BE REVIEWED AND UNDERSTOOD. NO PROVISION SHOULD BE IGNORED OR DISREGARDED BECAUSE IT IS NOT IN BOLD OR EMPHASIZED IN SOME MANNER, AND THE FAILURE TO BOLD, CAPITALIZE, OR EMPHASIZE IN SOME MANNER ANY TERMS OR PROVISIONS IN THIS SS ADDENDUM SHALL NOT AFFECT THE ENFORCEABILITY OF ANY TERMS OR PROVISIONS.

15. **DISCLOSURE.** Buyer and Seller acknowledge and agree that auctioneer has no real estate brokerage agency relationship with either party and is acting solely in the capacity of auctioneer in the transaction contemplated by the Agreement and this SS Addendum.

16. **PROPERTY SOLD SUBJECT TO CONFIRMATION.** Buyer(s) and Seller(s) acknowledge and agree that the transaction contemplated by the Agreement and this SS Addendum is subject to the Short Sale Lenders' Consent as set forth in Section 6.

Dated: _____        Dated: _5 /17 / 2013_        « DATE HERE

SELLER:                                BUYER(S):

                                                                       « SIGN HERE

_____                _____
SIGNATURE                              SIGNATURE

KIMBERLY BUI                           Thomas Lei
PRINTED NAME                           PRINTED NAME

                                                                       « SIGN HERE

_____                _____
SIGNATURE                              SIGNATURE

                                       Katherine W. Lu
PRINTED NAME                           PRINTED NAME

                                                                       « INITIAL HERE

Auction Addendum (Short Sale) 03252013 BB        _____ / _____          _____
Page | 4                                         SELLER INITIALS        BUYER INITIALS

AUCTION ITEM NO.  CB51020 / 600412662

Property Address:  937 18TH ST SANTA MONICA CA 90403

SELLER'S AGENT/BROKER:

Seller's Agent/Broker hereby represents that he/she accepts the Auction Terms and Conditions in their entirety and specifically as to the compensation calculation based on the Winning Bid Amount and that this is the only compensation Agent/Broker shall receive or is entitled to for this transaction from Seller, Seller's broker or auctioneer. Agent/Broker further represents that he/she is not a principal in the transaction (as such terms are defined in the Auction Terms and Conditions):

BUYER'S AGENT/BROKER:

Buyer's Agent/Broker hereby represents that he/she has registered prior to the Auction pursuant to the Auction Terms and Conditions as a Registered Agent/Broker, that he/she accepts the Auction Terms and Conditions in their entirety and specifically as to the compensation due as the cooperating Agent/Broker set forth below, if any, and that this is the only compensation Agent/Broker shall receive or is entitled to for this transaction from Seller, Seller's broker or auctioneer. Agent/Broker further represents that he/she is not a principal in the transaction (as such terms are defined in the Auction Terms and Conditions):

BRANDON HORKAI
BROKER/AGENT PRINTED NAME

_____
BROKERAGE PRINTED NAME

By:_____
BROKER/AGENT SIGNATURE

License Number: _____ State: _____

Qinglong Wang
BROKER/AGENT PRINTED NAME

Southern California Realty
BROKERAGE PRINTED NAME

By:_____          « SIGN HERE
BROKER/AGENT SIGNATURE

License Number: BK LIC.01312729 ___ State: CA ___

Auction Addendum (Short Sale) 03252013 BB
Page | 5

_____/_____
SELLER INITIALS

INITIAL HERE
BUYER INITIALS

Auction Item No. CB51020 / 600412662

Address: <u>937 18TH ST SANTA MONICA CA 90403</u>

### ACKNOWLEDGMENT AND AGREEMENT

### BROKER AGENT/PARTICIPATION

<u>SELLER:</u>

<u>BUYER:</u>

Thomas Lei

_____

Katherine W. Lu

Buyer's Broker, through its agent as set forth below, acknowledges and agrees as follows:

1.   LIVE EVENT ATTENDANCE ONLY.  Prior to the live auction event, I have completed the Broker/Agent Participation Form on-line at *www.auction.com* and brought a copy of it (printed from the website) to the Auction along with a copy of my valid real estate license for the live auction event. I personally checked in at the Broker/Agent registration desk prior to the start of the live auction. My client accompanied me at the Broker/Agent check in table. If I am an Agent, I have provided a letter, signed by my Broker on company letterhead, confirming my attendance at the Auction with my client which sets forth commission payment information including broker license number, name and tax identification number.  Prior to closing, I will provide the escrow/closing agent with an IRS Form W-9 or will have electronically completed an IRS Form W-9 in order to receive a commission. I understand and acknowledge that this W-9 must be completed by my Broker if I am an agent or broker associate as payment can only be made through the Broker who holds my license.  I understand that I may be required to provide a copy of my Broker/Agent Participation Form confirming my registration to the escrow/closing agent prior to closing;

2.   ONLINE BIDDING.  Prior to the commencement of the online auction event, I completed the Broker/Agent Participation Form online at *www.auction.com* and when my client registered, he or she included my information as part of the registration identifying me as the broker/agent. I understand that I will be required to complete the necessary electronic signatures as part of the purchase transaction within the time frames required in accordance with the auction's terms and conditions. Prior to closing, I will provide the escrow/closing agent with an IRS Form W-9 or will have electronically completed an IRS Form W-9 in order to receive a commission.  I understand and acknowledge that this W-9 must be completed by my Broker if I am an agent or broker associate as payment can only be made through the Broker who holds my license.  I understand that I may be required to provide a copy of my Broker/Agent Participation Form confirming my registration to the escrow/closing agent prior to closing;

3.   I affirm that I viewed the property referenced above with my client;

4.   I affirm that I remained with my client during the live auction event, if applicable;

5.   I acknowledge that if I fail to execute the purchase documentation at the Auction or within the timeframe prescribed, or if my client fails to identify me as their Broker/Agent pursuant to the auction terms and conditions, then I shall not be entitled to any commission. I understand that a cooperative commission, if any shall

Address: 937 18TH ST SANTA MONICA CA 90403

be due, will only be earned and paid upon the closing of the transaction for the property referenced above;

6.  I affirm that I am duly licensed and my license is in good standing as a real estate licensee in the state in which the property is located; and,

7.  I represent and warrant that I am not (a) acting as a principal in the purchase of any property, (b) acting as the broker/agent on behalf of an entity (including any corporation, partnership, limited liability company, or trust) in which the I have an interest, (c) acting as the broker/agent on behalf of an immediate family member (defined as a spouse, parent, sibling, or child including in-law relationships).

The cooperating broker commission I am entitled to receive, at the closing of the transaction is:

CHECK APPROPRIATE BOX:
Per Listing Agreement Pending

☑ Lender Approval % of the Winning Bid Amount

☐   $_____ Flat Fee

Buyer's Agent/Broker hereby represents that he/she has registered prior to the Auction pursuant to the Auction Terms and Conditions as a Registered Agent/Broker, that he/she accepts the Auction Terms and Conditions in their entirety and specifically as to the compensation due to the cooperating Agent/Broker set forth herein, if any, and that this is the only compensation Agent/Broker shall receive or is entitled to for this transaction from Seller, Seller's broker or auctioneer. Agent/Broker further represents that he/she is not a principal in the transaction (as such terms are defined in the Auction Terms and Conditions) and set forth above and that such Agent/Broker is duly licensed as a real estate licensee in the state in which the property referenced above lies.

Dated: _____05/17/2013_____ « DATE HERE

Qinglong Wang
AGENT PRINTED NAME

Southern California Realty
BROKERAGE PRINTED NAME

By: _____ « SIGN HERE

License Number: BK LIC.01312729    State: CA

Acknowledgement and Agreement BROKER/AGENT PARTICIPATION 08152012
Page 2 of 2

DocuSign.
SECURED

## Certificate of Completion

Envelope Number: 212A544042014580B664200AF0F269EE

Subject: Please DocuSign this document:Auction: O-360, Item #: CB-51020

Loan:

Source Envelope:

Document Pages: 14

Certificate Pages: 7

AutoNav: Enabled

EnvelopeId Stamping: Enabled

Signatures: 4

Initials: 0

Status: Completed

Envelope Originator:

Online Contracts

1 Mauchly

Irvine, CA 92618

Online.Contracts@auction.com

IP Address: 64.213.35.2

## Record Tracking

Status: Original

    5/17/2013 1:07:40 PM PT

Holder: Online Contracts

    Online.Contracts@auction.com

Location: DocuSign

| Signer Events | Signature | Timestamp |
|---|---|---|
| Thomas Lei<br>tdleimd@gmail.com<br>Security Level: Email, Account.Authentication (Optional), Authentication<br>**Authentication Details**<br>IDCheck:<br><br>Transaction: 5020673744221<br>Result: passed<br>Vendor ID: RSA<br>Type: IAuth<br>Performed: 5/17/2013 8:40:43 PM GMT<br><br>Consumer Disclosure:<br>Accepted: 5/17/2013 1:40:53 PM PT<br>ID: 224fc761-428e-488b-8927-88a931c41ad7 | Using IP Address: 198.228.215.192<br>Signed using mobile<br><br>Question Details:<br>passed property.street.in.city.real<br>passed livedat.subdivision.fake<br>passed property.city.real<br>passed property.county.real<br>passed county.lived.multiple.real<br>passed property.purchasedwhen.real | Sent: 5/17/2013 1:14:07 PM PT<br>Viewed: 5/17/2013 1:40:53 PM PT<br>Signed: 5/17/2013 1:49:45 PM PT |
| Katherine W. Lu<br>kwlu1965@gmail.com<br>Security Level: Email, Account Authentication (Optional), Authentication<br>**Authentication Details**<br>IDCheck:<br><br>Transaction: 5020673696407<br>Result: passed<br>Vendor ID: RSA<br>Type: iAuth<br>Performed: 5/17/2013 9:24:35 PM GMT<br><br>Consumer Disclosure:<br>Accepted: 5/17/2013 2:24:59 PM PT<br>ID: 4abe917e-86c1-4009-9e45-69e8a9278013 | Using IP Address: 198.228.215.192<br>Signed using mobile<br><br>Question Details:<br>passed domainname.association.fake<br>passed county.lived.multiple.real<br>passed person.age.real<br>failed property.association.multiple.real<br>passed person.city.real<br>passed property.purchasedfrom.fake | Sent: 5/17/2013 1:49:47 PM PT<br>Viewed: 5/17/2013 2:24:59 PM PT<br>Signed: 5/17/2013 2:29:26 PM PT |
| Qinglong Wang<br>qilwang@sbcglobal.net<br>Security Level: Email, Account Authentication (Optional), Authentication<br>**Authentication Details** | Using IP Address: 69.108.79.141 | Sent: 5/17/2013 2:29:28 PM PT<br>Viewed: 5/17/2013 2:36:21 PM PT<br>Signed: 5/17/2013 2:37:35 PM PT |

| Signer Events | Signature | Timestamp |
|---|---|---|

IDCheck:

Transaction: 5020673696783
  Result: passed
  Vendor ID: RSA
  Type: iAuth
  Performed: 5/17/2013 9:36:09 PM GMT

Question Details:
  passed  property.association.multiple.real
  passed  county.lived.multiple.real
  passed  property.street.in.city.real
  passed  corporate.association.real
  passed  person.known.multiple.fake
  passed  livedat.subdivision.fake

Consumer Disclosure:
  Accepted: 3/3/2013 5:57:35 PM PT
  ID: 4296271a-628d-4b2c-ba1e-60d839308170

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|

Short Sale
shortsaleclosings@auction.com
Security Level: Email, Account Authentication
(Optional)

**COPIED**

Sent: 5/17/2013 2:37:37 PM PT

Consumer Disclosure:
  Accepted: 12/8/2012 5:08:02 PM PT
  ID: fb66040f-97ac-4e2e-b7e0-edf72d0fa390

Bidder Deposit
shortsaledeposits@ultra-escrow.com
Security Level: Email, Account Authentication
(Optional)

**COPIED**

Sent: 5/17/2013 2:37:39 PM PT

Consumer Disclosure:
  Accepted: 5/13/2013 9:40:29 AM PT
  ID: 3cbc76c7-6c76-4685-9bdf-e7e3cb3408e0

BRANDON HORKAI
BH.EMPIREREALTY@ROCKETMAIL.COM
Security Level: Email, Account Authentication
(Optional)

**COPIED**

Sent: 5/17/2013 2:37:40 PM PT

Consumer Disclosure:
  Not Offered
  ID:

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 5/17/2013 2:37:41 PM PT |
| Certified Delivered | Security Checked | 5/17/2013 2:37:41 PM PT |
| Signing Complete | Security Checked | 5/17/2013 2:37:41 PM PT |
| Completed | Security Checked | 5/17/2013 2:37:41 PM PT |

| Consumer Disclosure | | |
|---|---|---|

EXHIBIT D TO ADVERSARIAL COMPLAINT

**APPROVED PROPERTY SALE**
July 2, 2013

**Nationstar**
M O R T G A G E
f/k/a
**Centex Home Equity
Company, LLC**

Loan #: 600412662
Seller (s): KIMBERLY BUI
Property address: 937 18TH ST
SANTA MONICA, CA 90403

---

Nationstar Mortgage LLC f/k/a Centex Home Equity Company, LLC ("Nationstar Mortgage") approves the sale of the above referenced property that will result in a short payoff of the mortgage.

Upon meeting all the conditions specified in this letter, Nationstar Mortgage agrees to (1) file a withdrawal of the Notice, 2) provide any documents necessary for release of mortgage after we receive the required funds, and 3) waive any remaining balance on the account if all participants have acted in good faith and in compliance with all applicable laws.

Possible Income Tax Considerations: The difference between the remaining amount of principal you owe and the current market value of the property must be reported to the Internal revenue service (IRS) on Form 1099-C as debt forgiveness. In some cases, debt forgiveness could be taxed as income. The amount we pay you for moving expenses may also be reported as income. We suggest that you contact the IRS (www.irs.gov) or your tax preparer to determine if you may have any tax liability.

Possible Credit Considerations: The short sale will be reporting to the credit reporting agencies as "Account legally paid in full for less than the full balance". For more information on credit, please visit the Federal Trade Commission at www.ftc.gov.

Nationstar Mortgage approval is contingent upon the following:

1.) The closing must occur on or before 08/16/2013 by noon (CST)
2.) Prior to releasing any funds to a subordinate mortgage/lien holder(s), the servicer through its agent must obtain written commitment from the subordinate lien holder that it will release the borrower from all claims and liability relating to the subordinate lien in exchange for receiving the agreed upon payoff amount. A copy of the written commitment provided by the subordinate lien holder must be sent to the servicer with the final HUD-1 Settlement Statement which is provided in advance of the closing for approval
3.) The approved buyer(s) is/are THOMAS LEI & KATHERINE LU
4.) The approved Gross Sales price is $648,375.00
5.) Allowable closing costs are limited to the following:

|   |   |   |
|---|---|---|
| a. | Commissions | $37,050.00 |
| b. | Total Other Closing Costs | $48,629.07 |
| c. | Negotiated Subordinate Lien Release (if applicable) | $N/A |
| d. | Seller's Concessions (if applicable) | $N/A |
| e. | Relocation Assistance (if applicable) | $N/A |
| f. | Extension Fee (if applicable) | $N/A |

6.) The seller(s) must not receive any proceeds from the short sale transaction, unless otherwise approved by Nationstar Mortgage as advised in section 5 of allowable closing costs.
    a. Any proceeds from impound will be applied to the deficiency.
7.) The total Seller's Cash Contribution required at closing is $000,000.00.
8.) In addition to the Cash Contribution at closing (as stated in section 7), the seller is also required to execute a promissory note in the amount of $000,000.00. A promissory note will not need to be executed at the time of closing if the amount required is $0.00.

9.) Net proceeds must meet or exceed $562,695.93 includes any Seller's Cash Contribution at the time of closing.

10.) The short sale transaction must be an "Arms Length" transaction, and the attached Arms Length Affidavit (if provided) must be signed at closing and returned.

11.) All Final HUD-1 Settlement Statements must be submitted via Equator.com for final approval at least 3 days prior to closing.

12.) If the approved terms above change in any way, are delayed, or cancelled please notify Nationstar Mortgage thru Equator messaging immediately. Any changes needed within 10 business days of the closing date may not be eligible for approval or may delay the final closing date.

    a.  Nationstar Mortgage, LLC reserves the right to charge a per diem for any delays.

13.) The foreclosure process will/may continue during the short sale transaction. Please be advised that if a foreclosure sale is pending, the foreclosure date will not be postponed to allow this short sale closing.

14.) All short sales of loans that have mortgage insurance coverage are subject to mortgage insurer approval.

15.) All funds from the sale must be wired to:

Wells Fargo Bank<br>
420 Montgomery Street<br>
San Francisco, CA 94104<br>
Routing #121000248<br>
Account #40590000600412662

Funds received after 3:00pm Central Time may be posted on the following business day. Please include the Mortgagor's Loan Number on all correspondence. Loan number and Borrower name must be attached to the wire. If the funds received are less than the net proceeds approved in this letter, the funds will be returned.

16.) The ARMS Length Affidavit (if required), wire confirmation, final settlement statement, and this seller signed approval letter must be uploaded through the final task via Equator.com the same business day of closing. Any delays in receiving these documents may result in the return of the wire and cancellation of this approval.

Regards,

Foreclosure Prevention Manager
Ph: 866-312-2432 x 3713

***IMPORTANT NOTICE***

We reserve the right to adjust any portion of this statement at any time for one or more of the following reasons, but not limited to: recent advances, returned items, additional fees or charges, disbursements made on your behalf, scheduled payment(s) from an escrow account, transfer of servicing and/or inadvertent clerical errors. This payoff estimate does not waive our rights to collect any funds which become due on this account as a result of any subsequent adjustments.

Additionally, Nationstar Mortgage LLC will not provide reconveyance or release of the Security Instrument until the net proceeds and all other items required above have been received.

| | | | |
|---|---|---|---|
| [Borrower 1 Printed Name] | Date | [Borrower 2 Printed Name] | Date |
| [Borrower 1 Signature] | Date | [Borrower 2 Signature] | Date |

**Nationstar**
**M O R T G A G E**
350 Highland Drive
Lewisville, TX 75067

EXHIBIT E TO ADVERSARIAL COMPLAINT

8/7/2013

KIMBERLY BUI
937 18TH ST APT 7
SANTA MONICA, CA 90403

RE: Loan: 0600412662
Property Address: 937 18TH ST #7
SANTA MONICA, CA 90403

Dear KIMBERLY BUI :

Thank you for inquiring about the Short Sale program. We have given your request careful consideration and regret to inform you that we are unable to grant your request at this time, as you do not meet the program guidelines.

If you have any questions regarding the denial of your request or would like to learn about other possible options available to you, your Dedicated Loan Specialist is Nicole Wilson and can be reached at (877) 782-7612 EXT. 8067336, Monday-Friday, 8 a.m. to 8 p.m. (CST) and Saturday, 8 a.m. to 12 p.m. (CST) or via mail at the above listed mailing address, or email us at customerrelationsofficer@nationstarmail.com. Visit us on the web at www.MyNationstarMtg.com for further clarification of possible alternatives.

Sincerely,

NATIONSTAR MORTGAGE LLC
NMLS # 2119

This is an attempt to collect a debt and any information obtained may be used for that purpose.

WKODNL

EXHIBIT F TO ADVERSARIAL COMPLAINT

***GA LAW GROUP***

5525 Oakdale Ave., Ste 155

Woodland Hills, CA 91364

(800)606-1508 x506

(310)496-2458 (fax)

**VIA U.S. MAIL AND FACSIMILE (800)301-8290**

September 30, 2013

Kenny Tan, Esq.

640 N. Diamond Bar Blvd.

Diamond Bar, CA 91765

Re: 937 18th St., #7

Santa Monica, CA 90403

Dear Mr. Tan:

This office represents Kimberly Bui, the owner of the real property located at 937 18th St., #7, Santa Monica, CA 90403. I am responding to your letter dated September 16, 2013 to Ms. Bui. Due to a family illness I unfortunately was not able to reply earlier.

Your clients are erroneously treating their offer to purchase the property as if it was a standard purchase agreement. This is not the case, this was an offer to purchase the property via a short sale and all parties knew that any sale was contingent upon Ms. Bui's lender, Nationstar Mortgage, accepting the terms of the short sale and using the proceeds of the sale to completely satisfy Ms. Bui's obligations to her lender. Page 6, paragraph 6 of the Auction Addendum specifically states that the sale is contingent upon the lender (Nationstar) granting approval of the short sale. **The lender, however, never granted approval of the short sale thus this condition was never met.**

In addition Ms. Bui never signed any of the purchase agreement documents, thus she never accepted any offer from your clients to purchase the property. If you have any documents showing that Ms. Bui did in fact accept the terms of the purchase agreement then please send that to me immediately.

Kenny Tan, Esq.

September 30, 2013

Page 2

     Most importantly,  a condition precedent, lender approval of the short sale, was never granted thus the purchase agreement is unenforceable. Simply put your clients have no basis in law in which to try and enforce specific performance of the purchase agreement herein.

     Ms. Bui hereby rejects your offer to mediate this matter and if your clients seek to pursue either mediation or litigation then Ms. Bui will vigorously defend such an action and will insist upon a recovery of her reasonable attorneys fees expended in defending a frivolous lawsuit or mediation.

     Furthermore your clients have now clouded title to her property by improperly placing a Notice of Pending Action on the property.  Kimberly Bui hereby demands that your clients immediately remove the Notice of Pending Action from the subject property or else she will have no alternative but to apply to the court for an order to expunge the Notice of Pending Action.  Again, if Ms. Bui is required to do so then she will have no alternative but to seek the reasonable attorney fees she will incur in removing this cloud on her title.

     I can understand why your clients are seeking specific performance here, because they realize obtaining the property by short sale would be a great bargain for them.  But specific performance is not a remedy available to them when, as here, the lender did not consent to a short sale.

     I trust your clients will now expunge the Notice of Pendency of Action and not seek to enforce their purchase agreement herein.  Please respond to me by October 7, 2013.  If I do not hear back from you then Kimberly Bui will have no alternative but to move the court to expunge your Notice of Pendency of Action.

                                   Very Truly Yours,

                                   GA Law Group

                                   Martin Cutler

cc-Kimberly Bui

EXHIBIT G TO ADVERSARIAL COMPLAINT

SEP-18-2013 10:41    From:3105761399    Page:2/4

To:  Menn 3 of 33    2013-00-17 23.3:44 (GMT)    From: Kenny Tan

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
Kimberly Bui; DOES 1-10 inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
Thomas Lei; Katherine Lu

FILE COPY

FILED
LOS ANGELES SUPERIOR COURT
SEP 1 8 2013
JOHN A. CLARKE, CLERK
BY _____ DEPUTY

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

| | CASE NUMBER: |
|---|---|
| The name and address of the court is: *(El nombre y dirección de la corte es):* Superior Court of California, Los Angeles County 1725 Main Street Santa Monica, CA 90401 | SC121358 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Kenny Kean Tan    Law Offices of Kenny Tan
640 N. Diamond Bar Boulevard    909-860-9008
Diamond Bar, CA 91765

DATE:    SEP 1 8 2013    Clerk, by _____, Deputy
*(Fecha)*    *(Secretario)*    *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

NOTICE TO THE PERSON SERVED: You are served
1. ☒ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☐ on behalf of *(specify):*
   under: ☐ CCP 416.10 (corporation)    ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)    ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]    SUMMONS    Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

ESSENTIAL FORMS™

Lei, Thomas

SEP-18-2013 10:41    From:3105761399    Page:1/4

**FILED**

LOS ANGELES SUPERIOR COURT

SEP 1 8 2013

JOHN A. CLARKE, CLERK
FILE COPY BY _____
DEPUTY

CASE MANAGEMENT CONFERENCE

JAN 0 8 2014

Date

Richard A. Stone    Dept. M

8:30am

1  Kenny Kean Tan, #169777
2  Adam Hussein, #278597
   Law Offices of Kenny Tan
3  640 N. Diamond Bar Boulevard
   Diamond Bar, CA 91765
4  Telephone: (909)860-9008
   Fax: (800)301-8290
5
6  Attorneys for Plaintiff:
   Thomas Lei and Katherine Lu
7
8
9              SUPERIOR COURT OF THE STATE OF CALIFORNIA
10        COUNTY OF LOS ANGELES – SANTA MONICA COURTHOUSE
11
12  THOMAS LEI; KATHERINE LU,                Case No.:  SC121358
13              Plaintiffs,
14                                           COMPLAINT FOR BREACH OF
    vs.                                      CONTRACT FOR SPECIFIC
15                                           PERFORMANCE
    KIMBERLY BUI; DOES 1-10 inclusive,
16
                Defendant.
17
18
19
20
21  Plaintiffs THOMAS LEI and KATHERINE LU allege as follows:
22  FIRST CAUSE OF ACTION FOR BREACH OF CONTRACT AGAINST ALL DEFENDANTS
23      1.   Plaintiffs THOMAS LEI and KATHERINE LU ("Plaintiffs") are now, and were at all
24           times hereinafter stated, individuals and competent adults residing in the County of
25           Los Angeles, State of California.
26      2.   Plaintiff is informed and believes that Defendant KIMBERLY BUI, is now, and was at
27           all times hereinafter stated, an individual and competent adult residing in the County
28           of Los Angeles, State of California.

                                    1
                              COMPLAINT

REC'D
9/18/13

3.   The true names and capacities, whether individual, corporate, associate, or otherwise, of defendants and Does 1 - 10 inclusive, and each of them, are unknown to Plaintiffs who therefore sue these defendants by such fictitious names and will ask leave of court to amend this complaint when the same shall have been ascertained; that Plaintiffs are informed and believe and upon such information and belief allege that each defendant designated herein as a "Doe" was responsible, in some other actionable manner, for the events and happenings referred to herein which proximately caused injury to Plaintiff, as herein alleged.

4.   Plaintiffs are informed and believe, and on the basis of that information and belief allege, at all times herein mentioned, that defendants and each of them, were the agents, servants, employees, assistants, and consultants of their codefendants and in doing the things alleged herein were acting within the course, scope and authority of said agency and employment.

5.   Plaintiffs are informed and believe that Defendant and Does are now, and were at all times hereinafter stated, the record owner of certain real property located at 937 18th Street, #7, Santa Monica, CA 90403 (hereinafter "Subject Property"). The legal description of the Subject Property is: A Condominium Comprised of: Parcel 1: That portion of Lot 1, of Tract No 24127, in the City of Santa Monica, County of Los Angeles, State of California, as per map recorded in Book 840 Page 93 of Maps, in the office of the County Recorder of said County, shown and defined as Unit No. 7 on the Condominium Plan, recorded April 9, 1974 as Instrument No. 3737, Official Records of said County. Parcel 2: An undivided 1/7th interest in and to Lot 1, of Tract No. 24127. EXCEPT therefrom those portions shown and defined as Units 1 to 7 inclusive, on said Condominium Plan. The Subject Property has an Assessor's Parcel Number of 4277-010-054.

6.   On or about May 17, 2013, Plaintiffs-Buyers and Defendant-Seller entered into a written purchase agreement for the Subject Property. A true and correct copy of the agreement containing the terms and conditions of said agreement is attached hereto

2

**COMPLAINT**

as **Exhibit "1"**.

7.  Plaintiffs have fully performed all conditions, covenants, and promises required of them to be performed under the terms of the contract except as prevented by the conduct and actions of Defendants, and each of them.

8.  The Defendants, and each of them, have failed and refused to perform under the terms of the written agreement of the parties, despite the Plaintiffs' request for performance under the terms of the agreement.

9.  The written agreement provides for recovery of attorney's fees to the prevailing party. Plaintiffs have incurred and will continue to incur attorney's fees and are seeking recovery of attorney's fees.

10. Said purchase agreement provides that in the event of any disputes between the parties, the parties agree to mediate the dispute; if mediation is unsuccessful to resolve said disputes, then the parties agree to resort to a binding arbitration to resolve the disputes. This action is being filed solely to allow Plaintiffs to record *a lis pendens*. Plaintiffs would agree to submit this matter to mediation, and if necessary, binding arbitration and request that the matter be stayed pending completion of the mediation and/or arbitration.

11. Said purchase agreement is enforceable, sufficiently certain on its terms, supported by adequate consideration, and overall just and reasonable. The purchase price of the Subject Property, $648,375.00, is equal to the fair market value of said property.

12. Plaintiffs are now, and at all relevant times were, ready, willing, and able to perform their obligations under the terms and conditions of said purchase agreement and have fully performed the same.

13. Plaintiffs' remedy at law is inadequate because Defendants' breach cannot be adequately compensated for in damages due to the uniqueness of the Subject Property. There is a conclusive presumption that the Subject Property is unique to Plaintiffs.

///

**COMPLAINT**

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as follows:

1. For a decree ordering that the Subject Property be sold to Plaintiffs and an order compelling Defendants to execute a grant deed transferring the Subject Property to Plaintiffs;

2. In the alternative, for compensatory damages in excess of $25,000;

3. For attorney's fees in the amount to be proven at trial;

4. For costs of suit incurred; and

5. For such other and further relief that the Court deems proper.

Dated: September 13, 2013

Law Offices of Kenny Tan

Kenny Tan, Esq.
Adam Hussein, Esq.
Attorneys for Plaintiffs

4

**COMPLAINT**

# EXHIBIT "1"

# CALIFORNIA
## RESIDENTIAL PURCHASE AGREEMENT
### AND JOINT ESCROW INSTRUCTIONS

Date: **May 17, 2013**

1. **OFFER:**
   A. THIS IS AN OFFER FROM **Thomas Lai, Katherine Lu** ("Buyer").
   B. THE REAL PROPERTY TO BE ACQUIRED is described as **937 18th St #17**, situated in **Santa Monica**, County of **Los Angeles**, California ("Property"). Assessor's Parcel No. **4277-510-054**.
   C. THE PURCHASE PRICE offered is **Six Hundred Forty-Eight Thousand Three Hundred Seventy-Five and 00/100** (Dollars) $ **648,375.00**.
   D. CLOSE OF ESCROW shall occur on **07/01/2013** (date) or ☐ ____ Days After Acceptance.

2. **AGENCY:**
   A. DISCLOSURE: Buyer and Seller each acknowledge prior receipt of a "Disclosure Regarding Real Estate Agency Relationships" (C.A.R. Form AD).
   ...

FINANCE TERMS: Buyer represents that funds will be good when deposited with Escrow Holder.
   A. INITIAL DEPOSIT: Deposit shall be in the amount of ........ $ **13,241.875**
   C. LOAN(S):
      (1) FIRST LOAN in the amount of .......... $ **452,000.00**
   E. BALANCE OF PURCHASE PRICE OR DOWN PAYMENT in the amount of .... $ **16,595,625**
   F. PURCHASE PRICE (TOTAL): .......... $ **648,375.00**

Buyer's Initials ( ___ )( ___ )     Seller's Initials ( K )( B )

RPA-CA REVISED 4/10 (PAGE 1 OF 8)   Print Date

Property Address: 937 18th St.                                           Date: 05/17/2013

G. **VERIFICATION OF DOWN PAYMENT AND CLOSING COSTS:** Buyer (or Buyer's lender or loan broker pursuant to 3H(1)) shall, within 7 (or ☐ _____) Days After Acceptance, Deliver to Seller written verification of Buyer's down payment and closing costs. (If checked, ☐ verification attached.)

H. **LOAN TERMS:**
(1) **LOAN APPLICATIONS:** Within 7 (or ☐ _____) Days After Acceptance, Buyer shall Deliver to Seller a letter from lender or loan broker stating that, based on a review of Buyer's written application and credit report, Buyer is prequalified or preapproved for any NEW loan specified in 3C above. (If checked, ☐ letter attached.)
(2) **LOAN CONTINGENCY:** Buyer shall act diligently and in good faith to obtain the designated loan(s). Obtaining the loan(s) specified above is a contingency of this Agreement unless otherwise agreed in writing. Buyer's contractual obligations to obtain and provide deposit, balance of down payment and closing costs are not contingencies of this Agreement.
(3) **LOAN CONTINGENCY REMOVAL:**
(i) Within 17 (or ☐ _____) Days After Acceptance, Buyer shall, as specified in paragraph 14, in writing remove the loan contingency or cancel this Agreement;
OR (ii) (If checked) ☐ the loan contingency shall remain in effect until the designated loans are funded.
(4) ☐ **NO LOAN CONTINGENCY** (If checked): Obtaining any loan specified above is NOT a contingency of this Agreement. If Buyer does not obtain the loan and as a result Buyer does not purchase the Property, Seller may be entitled to Buyer's deposit or other legal remedies.

I. **APPRAISAL CONTINGENCY AND REMOVAL:** This Agreement is (or, if checked, ☐ is NOT) contingent upon a written appraisal of the Property by a licensed or certified appraiser at no less than the specified purchase price. If there is a loan contingency, Buyer's removal of the loan contingency shall be deemed removal of this appraisal contingency (or, ☐ if checked, Buyer shall, as specified in paragraph 14B(3), in writing remove the appraisal contingency or cancel this Agreement within 17 (or ☐ _____) Days After Acceptance). If there is no loan contingency, Buyer shall, as specified in paragraph 14B(3), in writing remove the appraisal contingency or cancel this Agreement within 17 (or ☐ _____) Days After Acceptance.

J. ☐ **ALL CASH OFFER** (If checked): Buyer shall, within 7 (or ☐ _____) Days After Acceptance, Deliver to Seller written verification of sufficient funds to close this transaction. (If checked, ☐ verification attached.)

K. **BUYER STATED FINANCING:** Seller has relied on Buyer's representation of the type of financing specified (including but not limited to, as applicable, amount of down payment, contingent or non contingent loan, or all cash). If Buyer seeks alternate financing, (i) Seller has no obligation to cooperate with Buyer's efforts to obtain such financing, and (ii) Buyer shall also pursue the financing method specified in this Agreement. Buyer's failure to secure alternate financing does not excuse Buyer from the obligation to purchase the Property and close escrow as specified in this Agreement.

4. **ALLOCATION OF COSTS** (If checked): Unless otherwise specified in writing, this paragraph only determines who is to pay for the inspection, test or service ("Report") mentioned; it does not determine who is to pay for any work recommended or identified in the Report.

A. **INSPECTIONS AND REPORTS:**
(1) ☐ Buyer ☐ Seller shall pay for an inspection and report for wood destroying pests and organisms ("Wood Pest Report") prepared by _____, a registered structural pest control company.
(2) ☐ Buyer ☐ Seller shall pay to have septic or private sewage disposal systems inspected _____
(3) ☐ Buyer ☐ Seller shall pay to have domestic wells tested for water potability and productivity _____
(4) ☐ Buyer ☐ Seller shall pay for a natural hazard zone disclosure report prepared by _____
(5) ☐ Buyer ☐ Seller shall pay for the following inspection or report _____
(6) ☐ Buyer ☐ Seller shall pay for the following inspection or report _____

B. **GOVERNMENT REQUIREMENTS AND RETROFIT:**
(1) ☐ Buyer ☐ Seller shall pay for smoke detector installation and/or water heater bracing, if required by Law. Prior to Close Of Escrow, Seller shall provide Buyer written statement(s) of compliance in accordance with state and local Law, unless exempt.
(2) ☐ Buyer ☐ Seller shall pay the cost of compliance with any other minimum mandatory government retrofit standards, inspections and reports if required as a condition of closing escrow under any Law.

C. **ESCROW AND TITLE:**
(1) ☒ Buyer ☒ Seller shall pay escrow fee Each to pay own _____
Escrow Holder shall be _____
(2) ☐ Buyer ☐ Seller shall pay for owner's title insurance policy specified in paragraph 12E _____
Owner's title policy to be issued by _____
(Buyer shall pay for any title insurance policy insuring Buyer's lender, unless otherwise agreed in writing.)

D. **OTHER COSTS:**
(1) ☐ Buyer ☒ Seller shall pay County transfer tax or fee _____
(2) ☐ Buyer ☒ Seller shall pay City transfer tax or fee _____
(3) ☐ Buyer ☒ Seller shall pay Homeowners' Association ("HOA") transfer fee _____
(4) ☐ Buyer ☒ Seller shall pay HOA document preparation fees _____
(5) ☐ Buyer ☐ Seller shall pay for any private transfer fee _____
(6) ☐ Buyer ☐ Seller shall pay for the cost, not to exceed $ _____ of a one-year home warranty plan, issued by _____, with the following optional coverages:
☐ Air Conditioner ☐ Pool/Spa ☐ Code and Permit upgrade ☐ Other: _____
Buyer is informed that home warranty plans have many optional coverages in addition to those listed above. Buyer is advised to investigate these coverages to determine those that may be suitable for Buyer.
(7) ☐ Buyer ☐ Seller shall pay for _____
(8) ☐ Buyer ☐ Seller shall pay for _____

Buyer's Initials _____         Seller's Initials K  B

Copyright © 1991-2010, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
RPA-CA REVISED 4/10 (PAGE 2 OF 8) Print Date

Reviewed by _____ Date _____

Property Address: **937 18th St.**     Date: **05/17/2013**

**5. CLOSING AND POSSESSION:**

A. Buyer intends (or □) does not intend) to occupy the Property as Buyer's primary residence.

B. Seller-occupied or vacant property: Possession shall be delivered to Buyer at 5 PM or (□ _____ □ AM/□ PM), on the date of Close Of Escrow; □ on _____; or □ no later than _____ Days After Close Of Escrow. If transfer of title and possession do not occur at the same time, Buyer and Seller are advised to: (i) enter into a written occupancy agreement (C.A.R. Form PAA, paragraph 2); and (ii) consult with their insurance and legal advisors.

C. Tenant-occupied property:
(i) Property shall be vacant at least 5 (or □ _____) Days Prior to Close Of Escrow, unless otherwise agreed in writing.
Note to Seller: If you are unable to deliver Property vacant in accordance with rent control and other applicable Law, you may be in breach of this Agreement.

OR (ii) (if checked) □ Tenant to remain in possession. (C.A.R. Form PAA, paragraph 3)

D. At Close Of Escrow, (i) Seller assigns to Buyer any assignable warranty rights for items included in the sale, and (ii) Seller shall Deliver to Buyer available Copies of warranties. Brokers cannot and will not determine the assignability of any warranties.

E. At Close Of Escrow, unless otherwise agreed in writing, Seller shall provide keys and/or means to operate all locks, mailboxes, security systems, alarms and garage door openers. If Property is a condominium or located in a common interest subdivision, Buyer may be required to pay a deposit to the Homeowners' Association ("HOA") to obtain keys to accessible HOA facilities.

**6. STATUTORY DISCLOSURES (INCLUDING LEAD-BASED PAINT HAZARD DISCLOSURES) AND CANCELLATION RIGHTS:**

A. (1) Seller shall, within the time specified in paragraph 14A, Deliver to Buyer, if required by Law: (i) Federal Lead-Based Paint Disclosures (C.A.R. Form FLD) and pamphlet ("Lead Disclosures"); and (ii) disclosures or notices required by sections 1102 et. seq. and 1103 et. seq. of the Civil Code ("Statutory Disclosures"). Statutory Disclosures include, but are not limited to, a Real Estate Transfer Disclosure Statement ("TDS"), Natural Hazard Disclosure Statement ("NHD"), notice or actual knowledge of release of illegal controlled substance, notice of special tax and/or assessments (or, if allowed, substantially equivalent notice regarding the Mello-Roos Community Facilities Act and Improvement Bond Act of 1915) and, if Seller has actual knowledge, of industrial use or military ordnance location (C.A.R. Form SPQ or SSD).

(2) Buyer shall, within the time specified in paragraph 14B(1), return Signed Copies of the Statutory and Lead Disclosures to Seller.

(3) In the event Seller, prior to Close Of Escrow, becomes aware of adverse conditions materially affecting the Property, or any material inaccuracy in disclosures, information or representations previously provided to Buyer, Seller shall promptly provide a subsequent or amended disclosure or notice, in writing, covering those items. However, a subsequent or amended disclosure shall not be required for conditions and material inaccuracies of which Buyer is otherwise aware, or which are disclosed in reports provided to or obtained by Buyer or ordered and paid for by Buyer.

(4) If any disclosure or notice specified in 6A(1), or subsequent or amended disclosure or notice is Delivered to Buyer after the offer is Signed, Buyer shall have the right to cancel this Agreement within 3 Days After Delivery in person, or 5 Days After Delivery by deposit in the mail, by giving written notice of cancellation to Seller or Seller's agent.

(5) Note to Buyer and Seller: Waiver of Statutory and Lead Disclosures is prohibited by Law.

B. NATURAL AND ENVIRONMENTAL HAZARDS: Within the time specified in paragraph 14A, Seller shall, if required by Law: (i) Deliver to Buyer earthquake guides (and questionnaire) and environmental hazards booklet; (ii) even if exempt from the obligation to provide a NHD, disclose if the Property is located in a Special Flood Hazard Area; Potential Flooding (Inundation) Area; Very High Fire Hazard Zone; State Fire Responsibility Area; Earthquake Fault Zone; Seismic Hazard Zone; and (iii) disclose any other zone as required by Law and provide any other information required for these zones.

C. WITHHOLDING TAXES: Within the time specified in paragraph 14A, to avoid required withholding, Seller shall Deliver to Buyer or qualified substitute, an affidavit sufficient to comply with federal (FIRPTA) and California withholding Law (C.A.R. Form AS or QS).

D. MEGAN'S LAW DATABASE DISCLOSURE: Notice: Pursuant to Section 290.46 of the Penal Code, information about specified registered sex offenders is made available to the public via an Internet Web site maintained by the Department of Justice at www.meganslaw.ca.gov. Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and ZIP Code in which he or she resides. (Neither Seller nor Brokers are required to check this website. If Buyer wants further information, Broker recommends that Buyer obtain information from this website during Buyer's inspection contingency period. Brokers do not have expertise in this area.)

**7. CONDOMINIUM/PLANNED DEVELOPMENT DISCLOSURES:**

A. SELLER HAS 7 (or □ _____) Days After Acceptance to disclose to Buyer whether the Property is a condominium, or is located in a planned development or other common interest subdivision (C.A.R. Form SPQ or SSD).

B. If the Property is a condominium or is located in a planned development or other common interest subdivision, Seller has 3 (or □ _____) Days After Acceptance to request from the HOA (C.A.R. Form HOA): (i) Copies of any documents required by Law; (ii) disclosure of any pending or anticipated claim or litigation by or against the HOA; (iii) a statement containing the location and number of designated parking and storage spaces; (iv) Copies of the most recent 12 months of HOA minutes for regular and special meetings; and (v) the names and contact information of all HOAs governing the Property (collectively, "CI Disclosures"). Seller shall itemize and Deliver to Buyer all CI Disclosures received from the HOA and any CI Disclosures in Seller's possession. Buyer's approval of CI Disclosures is a contingency of this Agreement as specified in paragraph 14B(3).

**8. ITEMS INCLUDED IN AND EXCLUDED FROM PURCHASE PRICE:**

A. NOTE TO BUYER AND SELLER: Items listed as included or excluded in the MLS, flyers or marketing materials are not included in the purchase price or excluded from the sale unless specified in 8B or C.

B. ITEMS INCLUDED IN SALE:
(1) All EXISTING fixtures and fittings that are attached to the Property;
(2) EXISTING electrical, mechanical, lighting, plumbing and heating fixtures, ceiling fans, fireplace inserts, gas logs and grates, solar systems, built-in appliances, window and door screens, awnings, shutters, window coverings, attached floor coverings, television antennas, satellite dishes, private integrated telephone systems, air coolers/conditioners, pool/spa equipment, garage door openers/remote controls, mailbox, in-ground landscaping, trees/shrubs, water softeners, water purifiers, security systems/alarms; (if checked) □ stove(s), □ refrigerator(s); and
(3) The following additional items: _____
(4) Seller represents that all items included in the purchase price, unless otherwise specified, are owned by Seller.
(5) All items included shall be transferred free of liens and without Seller warranty.

C. ITEMS EXCLUDED FROM SALE: Unless otherwise specified, audio and video components (such as flat screen TVs and speakers) are excluded if any such item is not itself attached to the Property, even if a bracket or other mechanism attached to the component is attached to the Property; and _____

Buyer's Initials ( _____ ) ( _____ )      Seller's Initials ( **K** ) ( **B** )

Copyright © 1991-2010, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
RPA-CA REVISED 4/10 (PAGE 3 OF 8) Print Date

Reviewed by _____ Date _____

CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 3 OF 8)

Property Address: _937 18th St._      Date: _05/17/2013_

**9. CONDITION OF PROPERTY:** Unless otherwise agreed: (i) the Property is sold (a) in its PRESENT physical ("as-is") condition as of the date of Acceptance and (b) subject to Buyer's Investigation rights; (ii) the Property, including pool, spa, landscaping and grounds, is to be maintained in substantially the same condition as of the date of Acceptance; and (iii) all debris and personal property not included in the sale shall be removed by Seller by Close Of Escrow.

    A. Seller shall, within the time specified in paragraph 14A, DISCLOSE KNOWN MATERIAL FACTS AND DEFECTS affecting the Property, including known insurance claims within the past five years, and make any and all other disclosures required by law.

    B. Buyer has the right to inspect the Property and, as specified in paragraph 14B, based upon information discovered in those inspections: (i) cancel this Agreement; or (ii) request that Seller make Repairs or take other action.

    C. Buyer is strongly advised to conduct investigations of the entire Property in order to determine its present condition. Seller may not be aware of all defects affecting the Property or other factors that Buyer considers important. Property improvements may not be built according to code, in compliance with current Law, or have had permits issued.

**10. BUYER'S INVESTIGATION OF PROPERTY AND MATTERS AFFECTING PROPERTY:**

    A. Buyer's acceptance of the condition of, and any other matter affecting the Property, is a contingency of this Agreement as specified in this paragraph and paragraph 14B. Within the time specified in paragraph 14B(1), Buyer shall have the right, at Buyer's expense unless otherwise agreed, to conduct inspections, investigations, tests, surveys and other studies ("Buyer Investigations"), including, but not limited to, the right to: (i) inspect for lead-based paint and other lead-based paint hazards; (ii) inspect for wood destroying pests and organisms; (iii) review the registered sex offender database; (iv) confirm the insurability of Buyer and the Property; and (v) satisfy Buyer as to any matter specified in the attached Buyer's Inspection Advisory (C.A.R. Form BIA). Without Seller's prior written consent, Buyer shall neither make nor cause to be made (i) invasive or destructive Buyer Investigations; or (ii) inspections by any governmental building or zoning inspector or government employee, unless required by Law.

    B. Seller shall make the Property available for all Buyer Investigations. Buyer shall (i) as specified in paragraph 14B, complete Buyer Investigations and, either remove the contingency or cancel this Agreement, and (ii) give Seller, at no cost, complete Copies of all Investigation reports obtained by Buyer. Buyer's obligation shall survive the termination of this Agreement.

    C. Seller shall have water, gas, electricity and all operable pilot lights for Buyer's Investigations and through the date possession is made available to Buyer.

    D. Buyer indemnity and Seller protection for entry upon property: Buyer shall: (i) keep the Property free and clear of liens; (ii) repair all damage arising from Buyer Investigations; and (iii) indemnify and hold Seller harmless from all resulting liability, claims, demands, damages and costs of Buyer's Investigations. Buyer shall carry, or Buyer shall require anyone acting on Buyer's behalf to carry, policies of liability, workers' compensation and other applicable insurance, defending and protecting Seller from liability for any injuries to persons or property occurring during any Buyer Investigations or work done on the Property at Buyer's direction prior to Close Of Escrow. Seller is advised that certain protections may be afforded Seller by recording a "Notice of Non-responsibility" (C.A.R. Form NNR) for Buyer Investigations and work done on the Property at Buyer's direction. Buyer's obligations under this paragraph shall survive the termination or cancellation of this Agreement and Close Of Escrow.

**11. SELLER DISCLOSURES; ADDENDA; ADVISORIES; OTHER TERMS:**

    A. Seller Disclosures (if checked): Seller shall, within the time specified in paragraph 14A, complete and provide Buyer with a:
      ☒ Seller Property Questionnaire (C.A.R. Form SPQ)   OR   ☐ Supplemental Contractual and Statutory Disclosures (C.A.R. Form SSD)

    B. Addenda (if checked):

| | |
|---|---|
| ☐ Addendum # | ☐ (C.A.R. Form ADM) |
| ☐ Wood Destroying Pest Inspection and Allocation of Cost Addendum (C.A.R. Form WPA) | |
| ☐ Purchase Agreement Addendum (C.A.R. Form PAA) | ☐ Septic, Well and Property Monument Addendum (C.A.R. Form SWPI) |
| ☒ Short Sale Addendum (C.A.R. Form SSA) | ☐ Other |

    C. Advisories (if checked):

| | |
|---|---|
| ☐ Buyer's Inspection Advisory (C.A.R. Form BIA) | ☒ Buyer's Inspection Advisory (C.A.R. Form BIA) |
| ☐ Probate Advisory (C.A.R. Form PAK) | ☒ Statewide Buyer and Seller Advisory (C.A.R. Form SBSA) |
| ☐ Trust Advisory (C.A.R. Form TA) | ☐ REO Advisory (C.A.R. Form REO) |

    D. Other Terms:

**12. TITLE AND VESTING:**

    A. Within the time specified in paragraph 14, Buyer shall be provided a current preliminary title report, which shall include a search of the General Index. Seller shall within 7 Days After Acceptance give Escrow Holder a completed Statement of Information. The preliminary report is only an offer by the title insurer to issue a policy of title insurance and may not contain every item affecting title. Buyer's review of the preliminary report and any other matters which may affect title are a contingency of this Agreement as specified in paragraph 14B.

    B. Title is taken in its present condition subject to all encumbrances, easements, covenants, conditions, restrictions, rights and other matters, whether of record or not, as of the date of Acceptance except: (i) monetary liens of record unless Buyer is assuming those obligations or taking the Property subject to those obligations; and (ii) those matters which Seller has agreed to remove in writing.

    C. Within the time specified in paragraph 14A, Seller has a duty to disclose to Buyer all matters known to Seller affecting title, whether of record or not.

    D. At Close Of Escrow, Buyer shall receive a grant deed conveying title (or, for stock cooperative or long-term lease, an assignment of stock certificate or of Seller's leasehold interest), including oil, mineral and water rights if currently owned by Seller. Title shall vest as designated in Buyer's supplemental escrow instructions. THE MANNER OF TAKING TITLE MAY HAVE SIGNIFICANT LEGAL AND TAX CONSEQUENCES. CONSULT AN APPROPRIATE PROFESSIONAL.

    E. Buyer shall receive a CLTA/ALTA Homeowner's Policy of Title Insurance. A title company, at Buyer's request, can provide information about the availability, desirability, coverage, survey requirements, and cost of various title insurance coverages and endorsements. If Buyer desires title coverage other than that required by this paragraph, Buyer shall instruct Escrow Holder in writing and pay any increase in cost.

**13. SALE OF BUYER'S PROPERTY:**

    A. This Agreement is NOT contingent upon the sale of any property owned by Buyer.

   OR B. ☐ (if checked): The attached addendum (C.A.R. Form COP) regarding the contingency for the sale of property owned by Buyer is incorporated into this Agreement.

Buyer's Initials ( _____ ) ( _____ )      Seller's Initials ( _K_ ) ( _B_ )

Copyright © 1991-2010, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
RPA-CA REVISED 4/10 (PAGE 4 OF 8) Print Date     Reviewed by _____ Date _____

CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 4 OF 8)

Property Address: _937 18th St_      Date: _05/17/2013_

**14. TIME PERIODS; REMOVAL OF CONTINGENCIES; CANCELLATION RIGHTS:** The following time periods may only be extended, altered, modified or changed by mutual written agreement. Any removal of contingencies or cancellation under this paragraph by either Buyer or Seller must be exercised in good faith and in writing (C.A.R. Form CR or CC).

A. **SELLER HAS:** 7 (or ☐ ____) Days After Acceptance to Deliver to Buyer all Reports, disclosures and information for which Seller is responsible under paragraphs 4, 6A, B and C, 7A, 9A, 11A and B, and 12. Buyer may give Seller a Notice to Seller to Perform (C.A.R. Form NSP) if Seller has not Delivered the items within the time specified.

B. (1) **BUYER HAS:** 17 (or ☐ ____) Days After Acceptance, unless otherwise agreed in writing, to:
(i) complete all Buyer Investigations; approve all disclosures, reports and other applicable information, which Buyer receives from Seller; and approve all other matters affecting the Property; and
(ii) Deliver to Seller Signed Copies of Statutory and Lead Disclosures Delivered by Seller in accordance with paragraph 6A.
(2) Within the time specified in 14B(1), Buyer may request that Seller make repairs or take any other action regarding the Property (C.A.R. Form RR). Seller has no obligation to agree to or respond to Buyer's requests.
(3) Within the time specified in 14B(1) (or as otherwise specified in this Agreement), Buyer shall Deliver to Seller either (i) a removal of the applicable contingency (C.A.R. Form CR), or (ii) a cancellation (C.A.R. Form CC) of this Agreement based upon a remaining contingency or Seller's failure to Deliver the specified items. However, if any report, disclosure or information for which Seller is responsible is not Delivered within the time specified in 14A, then Buyer has 5 (or ☐ ____) Days After Delivery of any such items, or the time specified in 14B(1), whichever is later, to Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement.
(4) Continuation of Contingency: Even after the end of the time specified in 14B(1) and before Seller cancels this Agreement, if at all, pursuant to 14C, Buyer retains the right to either (i) in writing remove remaining contingencies, or (ii) cancel this Agreement based upon a remaining contingency or Seller's failure to Deliver the specified items. Once Buyer's written removal of all contingencies is Delivered to Seller, Seller may not cancel this Agreement pursuant to 14C(1).

C. **SELLER RIGHT TO CANCEL:**
(1) Seller right to Cancel; Buyer Contingencies: If, within time specified in this Agreement, Buyer does not, in writing, Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement then Seller, after first Delivering to Buyer a Notice to Buyer to Perform (C.A.R. Form NBP) may cancel this Agreement. In such event, Seller shall authorize return of Buyer's deposit.
(2) Seller right to Cancel; Buyer Contract Obligations: Seller, after first Delivering to Buyer a NBP may cancel this Agreement for any of the following reasons: (i) if Buyer fails to deposit funds as required by 3A or 3B; (ii) if the funds deposited pursuant to 3A or 3B are not good when deposited; (iii) if Buyer fails to Deliver a notice of FHA or VA costs or terms as required by 3C(3) (C.A.R. Form FVA); (iv) if Buyer fails to Deliver a letter as required by 3H; (v) if Buyer fails to Deliver verification as required by 3G or 3J; (vi) if Seller reasonably disapproves of the verification provided by 3G or 3J; (vii) if Buyer fails to return Statutory and Lead Disclosures as required by paragraph 6A(2); or (viii) if Buyer fails to sign or initial a separate liquidated damages form for an increased deposit as required by paragraph 3B and 25. In such event, Seller shall authorize return of Buyer's deposit.
(3) Notice To Buyer To Perform: The NBP shall: (i) be in writing; (ii) be signed by Seller; and (iii) give Buyer at least 2 (or ☐ ____) Days After Delivery (or until the time specified in the applicable paragraph, whichever occurs last) to take the applicable action. A NBP may not be Delivered any earlier than 2 Days Prior to the expiration of the applicable time for Buyer to Remove a contingency or cancel this Agreement or meet an obligation specified in 14C(1).

D. **EFFECT OF BUYER'S REMOVAL OF CONTINGENCIES:** If Buyer removes, in writing, any contingency or cancellation rights, unless otherwise specified in a separate written agreement between Buyer and Seller, Buyer shall with regard to that contingency or cancellation right conclusively be deemed to have: (i) completed all Buyer Investigations, and review of reports and other applicable information and disclosures; (ii) elected to proceed with the transaction; and (iii) assumed all liability, responsibility and expense for Repairs or corrections or for inability to obtain financing.

E. **CLOSE OF ESCROW:** Before Seller or Buyer may cancel this Agreement for failure of the other party to close escrow pursuant to this Agreement, Seller or Buyer must first Deliver to the other a demand to close escrow (C.A.R. Form DCE).

F. **EFFECT OF CANCELLATION ON DEPOSITS:** If Buyer or Seller gives written notice of cancellation pursuant to rights duly exercised under the terms of this Agreement, Buyer and Seller agree to Sign mutual instructions to cancel the sale and escrow and release deposits, if any, to the party entitled to the funds, less fees and costs incurred by that party. Fees and costs may be payable to service providers and vendors for services and products provided during escrow. Release of funds will require mutual Signed release instructions from Buyer and Seller, judicial decision or arbitration award. A Buyer or Seller may be subject to a civil penalty of up to $1,000 for refusal to sign such instructions if no good faith dispute exists as to who is entitled to the deposited funds (Civil Code §1057.3).

**15. REPAIRS:** Repairs shall be completed prior to final verification of condition unless otherwise agreed in writing. Repairs to be performed at Seller's expense may be performed by Seller or through others, provided that the work complies with applicable Law, including governmental permit, inspection and approval requirements. Repairs shall be performed in a good, skillful manner with materials of quality and appearance comparable to existing materials. It is understood that exact restoration of appearance or cosmetic items following all Repairs may not be possible. Seller shall: (i) obtain receipts for Repairs performed by others; (ii) prepare a written statement indicating the Repairs performed by Seller and the date of such Repairs; and (iii) provide Copies of receipts and statements to Buyer prior to final verification of condition.

**16. FINAL VERIFICATION OF CONDITION:** Buyer shall have the right to make a final inspection of the Property within 5 (or ☐ ____) Days Prior to Close Of Escrow, NOT AS A CONTINGENCY OF THE SALE, but solely to confirm: (i) the Property is maintained pursuant to paragraph 9; (ii) Repairs have been completed as agreed; and (iii) Seller has complied with Seller's other obligations under this Agreement (C.A.R. Form VP).

**17. PRORATIONS OF PROPERTY TAXES AND OTHER ITEMS:** Unless otherwise agreed in writing, the following items shall be PAID CURRENT and prorated between Buyer and Seller as of Close Of Escrow: real property taxes and assessments, interest, rents, HOA regular, special, and emergency dues and assessments imposed prior to Close Of Escrow, premiums on insurance assumed by Buyer, payments on bonds and assessments assumed by Buyer, and payments on Mello-Roos and other Special Assessment District bonds and assessments that are a current lien. The following items shall be assumed by Buyer WITHOUT CREDIT toward the purchase price: prorated payments on Mello-Roos and other Special Assessment District bonds and assessments and HOA special assessments that are a current lien but not yet due. Property will be reassessed upon change of ownership. Any supplemental tax bills shall be paid as follows: (i) for periods after Close Of Escrow, by Buyer; and (ii) for periods prior to Close Of Escrow, by Seller (see C.A.R. Form SPT or SBSA for further information). TAX BILLS ISSUED AFTER CLOSE OF ESCROW SHALL BE HANDLED DIRECTLY BETWEEN BUYER AND SELLER. Prorations shall be made based on a 30-day month.

Buyer's Initials ____ ____      Seller's Initials ____ x B ____

Copyright © 1991-2010, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
RPA-CA REVISED 4/10 (PAGE 5 OF 8) Print Date
CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 5 OF 8)

Reviewed by ____ Date ____

Property Address: ___937 18th St._____    Date: __05/17/2013__

18. **SELECTION OF SERVICE PROVIDERS:** Brokers do not guarantee the performance of any vendors, service or product providers ("Providers"), whether referred by Broker or selected by Buyer, Seller or other person. Buyer and Seller may select ANY Providers of their own choosing.

19. **MULTIPLE LISTING SERVICE ("MLS"):** Brokers are authorized to report to the MLS a pending sale and, upon Close Of Escrow, the sales price and other terms of this transaction and to be provided to the MLS to be published and disseminated to persons and entities authorized to use the information on terms approved by the MLS.

20. **EQUAL HOUSING OPPORTUNITY:** The Property is sold in compliance with federal, state and local anti-discrimination Laws.

21. **ATTORNEY FEES:** In any action, proceeding, or arbitration between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorney fees and costs from the non-prevailing Buyer or Seller, except as provided in paragraph 26A.

22. **DEFINITIONS:** As used in this Agreement:
    A. "Acceptance" means the time the offer or final counter offer is accepted in writing by a party and is delivered to and personally received by the other party or that party's authorized agent in accordance with the terms of this offer or a final counter offer.
    B. "C.A.R. Form" means the specific form referenced or another comparable form agreed to by the parties.
    C. "Close Of Escrow" means the date the grant deed, or other evidence of transfer of title, is recorded.
    D. "Copy" means copy by any means, including photocopy, NCR, facsimile and electronic.
    E. "Days" means calendar days. However, after Acceptance, the last Day for performance of any act required by this Agreement (including Close Of Escrow) shall not include any Saturday, Sunday, or legal holiday and shall instead be the next Day.
    F. "Days After" means the specified number of calendar days after the occurrence of the event specified, not counting the calendar date on which the specified event occurs, and ending at 11:59 PM on the final day.
    G. "Days Prior" means the specified number of calendar days before the occurrence of the event specified, not counting the calendar date on which the specified event is scheduled to occur.
    H. "Deliver", "Delivered" or "Delivery", regardless of the method used (i.e. messenger, mail, email, fax, other), means and shall be effective upon (i) personal receipt by Buyer or Seller or the individual Real Estate Licensee for that principal as specified in paragraph D of the section titled Real Estate Brokers on page 8;
    OR (ii) if checked, ☐ per the attached addendum (C.A.R. Form RDN).
    I. "Electronic Copy" or "Electronic Signature" means, as applicable, an electronic copy or signature complying with California Law. Buyer and Seller agree that electronic means will not be used by either party to modify or alter the content or integrity of this Agreement without the knowledge and consent of the other party.
    J. "Law" means any law, code, statute, ordinance, regulation, rule or order, which is adopted by a controlling city, county, state or federal legislative, judicial or executive body or agency.
    K. "Repairs" means any repairs (including pest control), alterations, replacements, modifications or retrofitting of the Property provided for under this Agreement.
    L. "Signed" means either a handwritten or electronic signature on an original document, Copy or any counterpart.

23. **BROKER COMPENSATION:** Seller or Buyer, or both, as applicable, agrees to pay compensation to Broker as specified in a separate written agreement between Broker and that Seller or Buyer. Compensation is payable upon Close Of Escrow, or if escrow does not close, as otherwise specified in the agreement between Broker and that Seller or Buyer.

24. **JOINT ESCROW INSTRUCTIONS TO ESCROW HOLDER:**
    A. The following paragraphs, or applicable portions thereof, of this Agreement constitute the joint escrow instructions of Buyer and Seller to Escrow Holder, which Escrow Holder is to use along with any related counter offers and addenda, and any additional mutual instructions to close the escrow: 1, 3, 4, 5C, 11B and D, 12, 13B, 14H, 17, 22, 23, 24, 26, 30, and paragraph D of the section titled Real Estate Brokers on page 8. If a Copy of the separate compensation agreement(s) provided for in paragraph 23, or paragraph D of the section titled Real Estate Brokers on page 8 is deposited with Escrow Holder by Broker, Escrow Holder shall accept such agreement(s) and pay out of Buyer's or Seller's funds, or both, as applicable, the respective Broker's compensation provided for in such agreement(s).  The terms and conditions of this Agreement not specifically referenced above, in the specified paragraphs are additional matters for the information of Escrow Holder, but about which Escrow Holder need not be concerned.  Buyer and Seller will receive Escrow Holder's general provisions directly from Escrow Holder and will execute such provisions upon Escrow Holder's request. To the extent the general provisions are inconsistent or conflict with this Agreement, the general provisions will control as to the duties and obligations of Escrow Holder only. Buyer and Seller will execute additional instructions, documents and forms provided by Escrow Holder that are reasonably necessary to close the escrow.
    B. A Copy of this Agreement shall be delivered to Escrow Holder within 3 calendar days after Acceptance (or ☐ _____). Escrow Holder shall provide Seller's Statement of Information to Title company when received from Seller, Buyer and Seller authorize Escrow Holder to accept and rely on Copies and Signatures as defined in this Agreement as originals, to open escrow and for other purposes of escrow. The validity of this Agreement as between Buyer and Seller is not affected by whether or when Escrow Holder Signs this Agreement.
    C. Brokers are a party to the escrow for the sole purpose of compensation pursuant to paragraph 23 and paragraph D of the section titled Real Estate Brokers on page 8. Buyer and Seller irrevocably assign to Brokers compensation specified in paragraph 23, respectively, and irrevocably instruct Escrow Holder to disburse those funds to Brokers at Close Of Escrow or pursuant to any other mutually executed cancellation agreement. Compensation instructions can be amended or revoked only with the written consent of Brokers. Buyer and Seller shall release and hold harmless Escrow Holder from any liability resulting from Escrow Holder's payment to Broker(s) of compensation pursuant to this Agreement. Escrow Holder shall immediately notify Brokers: (i) if Buyer's initial or any additional deposit is not made pursuant to this Agreement, or is not good at time of deposit with Escrow Holder; or (ii) if either Buyer or Seller instruct Escrow Holder to cancel escrow.
    D. A Copy of any amendment that affects any paragraph of this Agreement for which Escrow Holder is responsible shall be delivered to Escrow Holder within 2 business days after mutual execution of the amendment.

Buyer's Initials _____    Seller's Initials _____

Copyright © 1991-2010, CALIFORNIA ASSOCIATION OF REALTORS, INC.
RPA-CA REVISED 4/10 (PAGE 6 OF 8) Print Date

Reviewed by _____ Date _____

CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 6 OF 8)

Property Address: 937 18th St.    Date: 05/17/2013

25. **LIQUIDATED DAMAGES:** If Buyer fails to complete this purchase because of Buyer's default, Seller shall retain, as liquidated damages, the deposit actually paid. If the Property is a dwelling with no more than four units, one of which Buyer intends to occupy, then the amount retained shall be no more than 3% of the purchase price. Any excess shall be returned to Buyer. Release of funds will require mutual, Signed release instructions from both Buyer and Seller, judicial decision or arbitration award. AT TIME OF THE INCREASED DEPOSIT BUYER AND SELLER SHALL SIGN A SEPARATE LIQUIDATED DAMAGES PROVISION FOR ANY INCREASED DEPOSIT (C.A.R. FORM RID).

Buyer's Initials ___/___    Seller's Initials ___K___/___B___

26. **DISPUTE RESOLUTION:**

A. **MEDIATION:** Buyer and Seller agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to arbitration or court action. Paragraphs 26B(2) and (3) below apply to mediation whether or not the arbitration provision is initialed. Mediation fees, if any, shall be divided equally among the parties involved. If, for any dispute or claim to which this paragraph applies, any party (i) commences an action without first attempting to resolve the matter through mediation, or (ii) before commencement of an action, refuses to mediate after a request has been made, then that party shall not be entitled to recover attorney fees, even if they would otherwise be available to that party in any such action. THIS MEDIATION PROVISION APPLIES WHETHER OR NOT THE ARBITRATION PROVISION IS INITIALED. Exclusions from this mediation agreement are specified in paragraph 26C.

B. **ARBITRATION OF DISPUTES:** Buyer and Seller agree that any dispute or claim in Law or equity arising between them out of this Agreement or any resulting transaction, which is not settled through mediation, shall be decided by neutral, binding arbitration. Buyer and Seller also agree to arbitrate any disputes or claims with Broker(s) who, in writing, agree to such arbitration prior to, or within a reasonable time after, the dispute or claim is presented to the Broker. The arbitrator shall be a retired judge or justice, or an attorney with at least 5 years of residential real estate Law experience, unless the parties mutually agree to a different arbitrator. The parties shall have the right to discovery in accordance with Code of Civil Procedure §1283.05. In all other respects, the arbitration shall be conducted in accordance with Title 9 of Part 3 of the Code of Civil Procedure. Judgment upon the award of the arbitrator(s) may be entered into any court having jurisdiction. Enforcement of this agreement to arbitrate shall be governed by the Federal Arbitration Act. Exclusions from this arbitration agreement are specified in paragraph 26C.

"NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY."

"WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION."

Buyer's Initials ___/___    Seller's Initials ___K___/___B___

C. **ADDITIONAL MEDIATION AND ARBITRATION TERMS:**
(1) **EXCLUSIONS:** The following matters shall be excluded from mediation and arbitration: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code §2985; (ii) an unlawful detainer action; (iii) the filing or enforcement of a mechanic's lien; and (iv) any matter that is within the jurisdiction of a probate, small claims or bankruptcy court. The filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies, shall not constitute a waiver or violation of the mediation and arbitration provisions.
(2) **BROKERS:** Brokers shall not be obligated or compelled to mediate or arbitrate unless they agree to do so in writing. Any Broker(s) participating in mediation or arbitration shall not be deemed a party to the Agreement.

27. **TERMS AND CONDITIONS OF OFFER:** This is an offer to purchase the Property on the above terms and conditions. The liquidated damages paragraph or the arbitration of disputes paragraph is incorporated in this Agreement if initialed by all parties or if incorporated by mutual agreement in a counter offer or addendum. If at least one but not all parties initial such paragraph(s), a counter offer is required until agreement is reached. Seller has the right to continue to offer the Property for sale and to accept any other offer at any time prior to notification of Acceptance. If this offer is accepted and Buyer subsequently defaults, Buyer may be responsible for payment of Brokers' compensation. This Agreement and any supplement, addendum or modification, including any Copy, may be Signed in two or more counterparts, all of which shall constitute one and the same writing.

28. **TIME OF ESSENCE; ENTIRE CONTRACT; CHANGES:** Time is of the essence. All understandings between the parties are incorporated in this Agreement. Its terms are intended by the parties as a final, complete and exclusive expression of their Agreement with respect to its subject matter, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. Except as otherwise specified, this Agreement shall be interpreted and disputes shall be resolved in accordance with the laws of the State of California. Neither this Agreement nor any provision in it may be extended, amended, modified, altered or changed, except in writing Signed by Buyer and Seller.

Buyer's Initials ___/___

Copyright © 1991-2010, CALIFORNIA ASSOCIATION OF REALTORS, INC.
RPA-CA REVISED 4/10 (PAGE 7 OF 8) Print Date

Seller's Initials ___K___ ___B___

Reviewed by _____ Date _____

CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 7 OF 8)

Property Address _937 18th St._    Date: _05/17/2013_

29. EXPIRATION OF OFFER: This offer shall be deemed revoked and the deposit shall be returned unless the offer is Signed by Seller and a Copy of the Signed offer is personally received by Buyer, or by _____ who is authorized to receive it, by 5:00 PM on the third Day after this offer is signed by Buyer (or, if checked, ☐ by _____ ☐ AM ☐ PM, on _____ (date)).

Buyer has read and acknowledges receipt of a Copy of the offer and agrees to the above confirmation of agency relationships.

Date _05/17/2013_    Date _5/17/2013_

BUYER _____    BUYER _____

(Print name) _Thomas Lei_    (Print name) _Katherine Lu_

(Address) _____

☐ Additional Signature Addendum attached (C.A.R. Form ASA)

30. ACCEPTANCE OF OFFER: Seller warrants that Seller is the owner of the Property, or has the authority to execute this Agreement. Seller accepts the above offer, agrees to sell the Property on the above terms and conditions, and agrees to the above confirmation of agency relationships. Seller has read and acknowledges receipt of a Copy of this Agreement, and authorizes Broker to Deliver a Signed Copy to Buyer.

☐ (If checked) SUBJECT TO ATTACHED COUNTER OFFER (C.A.R. Form CO) DATED: _____

Date _05/17/2013_    Date _____

SELLER _____    SELLER _____

(Print name) _Kimber J. Tso_    (Print name) _____

(Address) _____

☐ Additional Signature Addendum attached (C.A.R. Form ASA)

(_____/_____) CONFIRMATION OF ACCEPTANCE: A Copy of Signed Acceptance was personally received by Buyer or Buyer's authorized
(Initials) agent on (date) _____ ☐ AM ☐ PM. A binding Agreement is created when
a Copy of Signed Acceptance is personally received by Buyer or Buyer's authorized agent whether or not confirmed in
this document. Completion of this confirmation is not legally required in order to create a binding Agreement. It is solely
intended to evidence the date that Confirmation of Acceptance has occurred.

REAL ESTATE BROKERS:
A. Real Estate Brokers are not parties to the Agreement between Buyer and Seller.
B. Agency relationships are confirmed as stated in paragraph 2.
C. If specified in paragraph 3A(2), Agent who submitted the offer for Buyer acknowledges receipt of deposit.
D. COOPERATING BROKER COMPENSATION: Listing Broker agrees to pay Cooperating Broker (Selling Firm) and Cooperating Broker agrees to accept, out of Listing Broker's proceeds in escrow: (i) the amount specified in the MLS, provided Cooperating Broker is a Participant of the MLS in which the Property is offered for sale or a reciprocal MLS; or (ii) ☐ (if checked) the amount specified in a separate written agreement (C.A.R. Form CBC) between Listing Broker and Cooperating Broker. Declaration of License and Tax (C.A.R. Form DLT) may be used to document that tax reporting will be required or that an exemption exists.

Real Estate Broker (Selling Firm) _Southern California Realty_    DRE Lic. # _0131 2729_
By _Minglong Wang_    DRE Lic. # _____    Date _____
Address _____ City _____ State _____ Zip _____
Telephone _____ Fax _____ E-mail _____

Real Estate Broker (Listing Firm) _____    DRE Lic. # _____
By _____    DRE Lic. # _____    Date _____
Address _____ City _____ State _____ Zip _____
Telephone _____ Fax _____ E-mail _____

ESCROW HOLDER ACKNOWLEDGMENT:
Escrow Holder acknowledges receipt of a Copy of this Agreement, (if checked, ☐ a deposit in the amount of $ _____),
counter offer numbered _____, ☐ Seller's Statement of Information and ☐ Other _____,
and agrees to act as Escrow Holder subject to paragraph 24 of this Agreement, any supplemental escrow instructions and the terms of Escrow Holder's general provisions if any.
Escrow Holder is advised that the date of Confirmation of Acceptance of the Agreement as between Buyer and Seller is _____.
Escrow Holder _____    Escrow # _____
By _____    Date _____
Address _____
Phone/Fax/E-mail _____
Escrow Holder is licensed by the California Department of ☐ Corporations, ☐ Insurance, ☐ Real Estate. License # _____

PRESENTATION OF OFFER: (_____) Listing Broker presented this offer to Seller on _____ (date).
Broker or Designee Initials

REJECTION OF OFFER: (_____)(_____) No counter offer is being made. This offer was rejected by Seller on _____ (date).
Seller's Initials

THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR. REALTOR is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS
525 South Virgil Avenue, Los Angeles, California 90020

REVISION DATE 4/10

Reviewed by _____ Date _____
Broker or Designee



CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 8 OF 8)    blank forms

To:  Page 4 of 22                    2013-09-17 23:51:44 (GMT)                    From: Kenny Tan

**CM-010**

| | |
|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):*<br>Kenny Kean Tan 169777<br>Law Offices of Kenny Tan<br>640 N. Diamond Bar Boulevard<br>Diamond Bar, CA 91765<br>TELEPHONE NO.: 909-860-9008    FAX NO.: 800-301-8290<br>ATTORNEY FOR *(Name):* Plaintiffs Thomas Lei and Katherine Lu | **FILED**<br>LOS ANGELES SUPERIOR COURT<br>SEP 1 8 2013<br>JOHN A. CLARKE, CLERK<br>BY _____ DEPUTY<br>FILE COPY |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS: 1725 Main Street
MAILING ADDRESS:
CITY AND ZIP CODE: Santa Monica, CA 90401
BRANCH NAME: Santa Monica Courthouse

CASE NAME: Lei v. Bui

| **CIVIL CASE COVER SHEET**<br>[X] Unlimited  [ ] Limited<br>(Amount        (Amount<br>demanded     demanded is<br>exceeds $25,000) $25,000 or less) | **Complex Case Designation**<br>[ ] Counter  [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | CASE NUMBER: **SC121358**<br>JUDGE:  Richard A. Stone<br>DEPT.: |
|---|---|---|

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [ ] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [ ] Wrongful termination (36)
- [ ] Other employment (15)

**Contract**
- [X] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [ ] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation**
*(Cal. Rules of Court, rules 3.400–3.403)*
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition *(not specified above)* (43)

2. This case [ ] is  [X] is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
  a. [ ] Large number of separately represented parties    d. [ ] Large number of witnesses
  b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve    e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
  c. [ ] Substantial amount of documentary evidence    f. [ ] Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply):* a. [X] monetary b. [X] nonmonetary; declaratory or injunctive relief  c. [ ] punitive
4. Number of causes of action *(specify):* One
5. This case [ ] is  [X] is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: 9/13/2013

Kenny Tan
(TYPE OR PRINT NAME)    ▶    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | ESSENTIAL FORMS | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov |
|---|---|---|---|

Lei, Thomas

REC'D
9/20/13



| SHORT TITLE: Lei v. Bui | CASE NUMBER SC121358 |
|---|---|

## CIVIL CASE COVER SHEET ADDENDUM AND
## STATEMENT OF LOCATION
### (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

> **This form is required pursuant to Local Rule 2.0 in all new civil case filings in the Los Angeles Superior Court.**

**Item I.** Check the types of hearing and fill in the estimated length of hearing expected for this case:

JURY TRIAL? ☐ YES   CLASS ACTION? ☐ YES   LIMITED CASE? ☐ YES   TIME ESTIMATED FOR TRIAL 1-3 ☐ HOURS/ ☑ DAYS

**Item II. Indicate** the correct district and courthouse location (4 steps – If you checked "Limited Case", skip to Item III, Pg. 4):

**Step 1:** After first completing the Civil Case Cover Sheet form, find the main Civil Case Cover Sheet heading for your case in the left margin below, and, to the right in Column **A**, the Civil Case Cover Sheet case type you selected.

**Step 2:** Check **one** Superior Court type of action in Column **B** below which best describes the nature of this case.

**Step 3:** In Column **C**, circle the reason for the court location choice that applies to the type of action you have checked. For any exception to the court location, see Local Rule 2.0.

> **Applicable Reasons for Choosing Courthouse Location (see Column C below)**

1. Class actions must be filed in the Stanley Mosk Courthouse, central district.
2. May be filed in central (other county, or no bodily injury/property damage).
3. Location where cause of action arose.
4. Location where bodily injury, death or damage occurred.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office

**Step 4:** Fill in the information requested on page 4 in Item III; complete Item IV. Sign the declaration.

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ A7100 Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| | Uninsured Motorist (46) | ☐ A7110 Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1., 2., 4. |
| **Other Personal Injury/ Property Damage/ Wrongful Death Tort** | Asbestos (04) | ☐ A6070 Asbestos Property Damage | 2. |
| | | ☐ A7221 Asbestos - Personal Injury/Wrongful Death | 2. |
| | Product Liability (24) | ☐ A7260 Product Liability (not asbestos or toxic/environmental) | 1., 2., 3., 4., 8. |
| | Medical Malpractice (45) | ☐ A7210 Medical Malpractice - Physicians & Surgeons | 1., 4. |
| | | ☐ A7240 Other Professional Health Care Malpractice | 1., 4. |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250 Premises Liability (e.g., slip and fall) | 1., 4. |
| | | ☐ A7230 Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1., 4. |
| | | ☐ A7270 Intentional Infliction of Emotional Distress | 1., 3. |
| | | ☐ A7220 Other Personal Injury/Property Damage/Wrongful Death | 1., 4. |

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.0
Page 1 of 4

| SHORT TITLE: Lei v. Bui | CASE NUMBER |
|---|---|

| | **A**<br>Civil Case Cover Sheet<br>Category No. | **B**<br>Type of Action<br>(Check only one) | **C**<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Non-Personal Injury/ Property Damage/Wrongful Death Tort** | Business Tort (07) | ☐ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1., 3. |
| | Civil Rights (08) | ☐ A6005  Civil Rights/Discrimination | 1., 2., 3. |
| | Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1., 2., 3. |
| | Fraud (16) | ☐ A6013  Fraud (no contract) | 1., 2., 3. |
| | Professional Negligence (25) | ☐ A6017  Legal Malpractice | 1., 2., 3. |
| | | ☐ A6050  Other Professional Malpractice (not medical or legal) | 1., 2., 3. |
| | Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 2.,3. |
| **Employment** | Wrongful Termination (36) | ☐ A6037  Wrongful Termination | 1., 2., 3. |
| | Other Employment (15) | ☐ A6024  Other Employment Complaint Case | 1., 2., 3. |
| | | ☐ A6109  Labor Commissioner Appeals | 10. |
| **Contract** | Breach of Contract/ Warranty (06)<br>(not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2., 5. |
| | | ☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2., 5. |
| | | ☐ A6019  Negligent Breach of Contract/Warranty (no fraud) | 1., 2., 5. |
| | | ☑ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 1., 2.,(5.) |
| | Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff | 2., 5., 6. |
| | | ☐ A6012  Other Promissory Note/Collections Case | 2., 5. |
| | Insurance Coverage (18) | ☐ A6015  Insurance Coverage (not complex) | 1., 2., 5., 8. |
| | Other Contract (37) | ☐ A6009  Contractual Fraud | 1., 2., 3., 5. |
| | | ☐ A6031  Tortious Interference | 1., 2., 3., 5. |
| | | ☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1., 2., 3., 8. |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation     Number of parcels_____ | 2. |
| | Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2., 6. |
| | Other Real Property (26) | ☐ A6018  Mortgage Foreclosure | 2., 6. |
| | | ☐ A6032  Quiet Title | 2., 6. |
| | | ☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2., 6. |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2., 6. |
| | Unlawful Detainer-Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2., 6. |

| SHORT TITLE: Lei v. Bui | CASE NUMBER |
|---|---|

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2., 6. |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2., 5. |
| | Writ of Mandate (02) | ☐ A6151  Writ - Administrative Mandamus | 2., 8. |
| | | ☐ A6152  Writ - Mandamus on Limited Court Case Matter | 2. |
| | | ☐ A6153  Writ - Other Limited Court Case Review | 2. |
| | Other Judicial Review (39) | ☐ A6150  Other Writ /Judicial Review | 2., 8. |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1., 2., 8. |
| | Construction Defect (10) | ☐ A6007  Construction Defect | 1., 2., 3. |
| | Claims Involving Mass Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1., 2., 8. |
| | Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1., 2., 8. |
| | Toxic Tort<br>Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1., 2., 3., 8. |
| | Insurance Coverage Claims<br>from Complex Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1., 2., 5., 8. |
| **Enforcement of Judgment** | Enforcement<br>of Judgment (20) | ☐ A6141  Sister State Judgment | 2., 9. |
| | | ☐ A6160  Abstract of Judgment | 2., 6. |
| | | ☐ A6107  Confession of Judgment (non-domestic relations) | 2., 9. |
| | | ☐ A6140  Administrative Agency Award (not unpaid taxes) | 2., 8. |
| | | ☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax | 2., 8. |
| | | ☐ A6112  Other Enforcement of Judgment Case | 2., 8., 9. |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1., 2., 8. |
| | Other Complaints<br>(Not Specified Above) (42) | ☐ A6030  Declaratory Relief Only | 1., 2., 8. |
| | | ☐ A6040  Injunctive Relief Only (not domestic/harassment) | 2., 8. |
| | | ☐ A6011  Other Commercial Complaint Case (non-tort/non-complex) | 1., 2., 8. |
| | | ☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1., 2., 8. |
| **Miscellaneous Civil Petitions** | Partnership Corporation<br>Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2., 8. |
| | Other Petitions<br>(Not Specified Above)<br>(43) | ☐ A6121  Civil Harassment | 2., 3., 9. |
| | | ☐ A6123  Workplace Harassment | 2., 3., 9. |
| | | ☐ A6124  Elder/Dependent Adult Abuse Case | 2., 3., 9. |
| | | ☐ A6190  Election Contest | 2. |
| | | ☐ A6110  Petition for Change of Name | 2., 7. |
| | | ☐ A6170  Petition for Relief from Late Claim Law | 2., 3., 4., 8. |
| | | ☐ A6100  Other Civil Petition | 2., 9. |

LACIV 109 (Rev. 03/11)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.0
Page 3 of 4

| SHORT TITLE: | CASE NUMBER |
|---|---|
| Lei v. Bui | |

**Item III. Statement of Location:** Enter the address of the accident, party's residence or place of business, performance, or other circumstance indicated in Item II., Step 3 on Page 1, as the proper reason for filing in the court location you selected.

| REASON: Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected for this case. | ADDRESS: 937 18th Street, #7 |
|---|---|
| ☐1. ☐2. ☐3. ☐4. ☐5. ☑6. ☐7. ☐8. ☐9. ☐10. | |

| CITY: | STATE: | ZIP CODE: |
|---|---|---|
| Santa Monica | CA | 90403 |

**Item IV.** *Declaration of Assignment:* I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that the above-entitled matter is properly filed for assignment to the ___Santa Monica___ courthouse in the ___West___ District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., § 392 et seq., and Local Rule 2.0, subds. (b), (c) and (d)].

Dated: __9/13/2013__

_____
(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1.  Original Complaint or Petition.

2.  If filing a Complaint, a completed Summons form for issuance by the Clerk.

3.  Civil Case Cover Sheet, Judicial Council form CM-010.

4.  Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 03/11).

5.  Payment in full of the filing fee, unless fees have been waived.

6.  A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7.  Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

CASE NO. _____   **SC121358**

*FI...*

## NOTICE OF CASE ASSIGNMENT TO INDIVIDUAL CALENDAR COURT

TO PLAINTIFFS AND PLAINTIFFS' ATTORNEYS OF RECORD or PLAINTIFFS
IN PRO PER:

IT IS HEREBY ORDERED AND YOU ARE HEREBY NOTIFIED that this action shall
be assigned to a Judge for all purposes, including trial, as follows:

**Richard A. Stone**                     Department:

Santa Monica Courthouse
1725 Main Street
Santa Monica, CA 90401

IT IS FURTHER ORDERED THAT PLAINTIFF OR COUNSEL FOR PLAINTIFF
SHALL GIVE NOTICE OF THIS ALL-PURPOSE CASE ASSIGNMENT by serving a copy
of this Notice on all parties to this action at the time the Summons and Complaint are served, or, if
not a served party, then when such party (including any cross-defendant or complainant-in-
intervention) appears in the action.

CASE MANAGEMENT REVIEW AND CONFERENCE:  Upon the filing of the
Complaint, a Case Management Review and Conference will be calendared for hearing in the Court
to which the case is assigned. The hearing date will be stamped upon the face of the Complaint.
Plaintiff shall give separate notice of the Case Management Review and Conference to all
named parties in conjunction with service of the Summons and Complaint and include any later
appearing party such as a cross-defendant or complainant-in-intervention served within this time
period. Proof of service must be brought to the hearing if not previously filed. Failure to timely
file proof of service of Summons and Complaint within 60 days after filing the Complaint
(CRC 3.110(b)) may result in an Order to Show Cause re sanctions being issued. (CRC 3.110(f).)

If a case is assigned to Department X, located in the Beverly Hills Courthouse, all
documents, pleadings, motions, and papers filed subsequent to the original Complaint shall be filed
directly in the courtroom stamped upon the Complaint.

-1-

EXHIBIT H TO ADVERSARIAL COMPLAINT



**ORIGINAL**

3

RECEIVED

MAR 27 2014

SUPERIOR COURT
WEST DISTRICT
SANTA MONICA

**FILED**
Superior Court of California
County of Los Angeles

**MAY 1 5 2014**

Sherri R. Carter, Executive Officer/Clerk
By_____, Deputy
Gwendolyn Jones

1
2
3
4
5
6
7
8

9    **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

10   **COUNTY OF LOS ANGELES – SANTA MONICA COURTHOUSE**

11

12   THOMAS LEI; KATHERINE LU,                    Case No.: SC121358

13            Plaintiffs,

14   vs.                                          [PROPOSED] JUDGMENT

15   KIMBERLY BUI; DOES 1-10 inclusive,

16            Defendant.

17

18

19

BY FAX

20        ORDERED, ADJUDGED AND DECREED that judgment is entered in favor of Plaintiffs

21   THOMAS LEI and KATHERINE LU and against Defendant KIMBERLY BUI for specific

22   performance.

23        Plaintiffs/Buyers THOMAS LEI AND KATHERINE LU are entitled to specific

24   performance of the CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT

25   ESCROW INSTRUCTIONS first dated May 17, 2013 with its addendums and counters

26   ("Exhibit 1") and as incorporated into the SALE ESCROW INSTRUCTIONS NO 001199-DM

27   with Pacific Time Escrow dated July 31, 2013 ("Exhibit 2") (hereinafter collectively referred to

28   as ("Purchase and Sale Documents"). Defendant/Seller KIMBERLY BUI, the brokers Qinglong

1

[PROPOSED] JUDGMENT

1  Wong, Southern California Realty, Robbie M. Schultz, any and all escrow companies
2  (including Pacific Time Escrow) and/or lenders and other necessary or affected persons
3  previously or in the future involved in the sale of the subject property are hereby ordered to
4  consummate the sale of the subject property by KIMBERLY BUI to THOMAS LEI and
5  KATHERINE LU in accordance with the Purchase and Sale Documents and this Judgment.
6  The subject property is commonly known as 937 18th Street, #7, Santa Monica, CA 90403.
7  The legal description is A Condominium Comprised of: Parcel 1: That portion of Lot 1, of Tract
8  No 24127, in the City of Santa Monica, County of Los Angeles, State of California, as per map
9  recorded in Book 840 Page 53 of Maps, in the office of the County Recorder of said County,
10  shown and defined as Unit No. 7 on the Condominium Plan, recorded April 9, 1974 as
11  Instrument No. 3737, Official Records of said County. Parcel 2: An undivided 1/7th interest in
12  and to Lot 1, of Tract No. 24127. EXCEPT therefrom those portions shown and defined as
13  Units 1 to 7 inclusive, on said Condominium Plan;
14      Defendant/Seller KIMBERLY BUI, the brokers Qinglong Wong, Southern California
15  Realty, Robbie M. Schultz, any and all escrow companies (including Pacific Time Escrow)
16  and/or lenders and other necessary or affected persons previously or in the future involved in
17  the sale of the subject property are hereby ordered to, among other things, execute all
18  necessary conveyances to deliver all Deeds or other documents into escrow necessary to
19  consummate the same transaction within ninety (90) days of execution of this Judgment;
20      If any person fails to perform any acts necessary to consummate the transaction, the
21  Clerk of the Superior Court is hereby ordered and authorized to execute whatever documents
22  are necessary to ensure consummation of this sale;
23      Seller KIMBERLY BUI is forthwith ordered to refrain from conveying any interest of any
24  kind in the subject property to any other person, firm, corporation other than buyers THOMAS
25  LEI and KATHERINE LU and is further ordered to reasonably maintain, but not improve, the
26  subject property, including any mortgage(s) on the subject property until title can be
27  transferred as provided in this judgment;
28      The Court retains jurisdiction to award damages to Plaintiffs THOMAS LEI and

2

**[PROPOSED] JUDGMENT**

1  KATHERINE LU for any damage to the subject property caused by Defendant KIMBERLY BUI

2  since August 2013 to the present.  Seller KIMBERLY BUI is forthwith ordered to refrain from

3  causing any damage of any kind to the subject property.  If Seller causes any damage to the

4  subject property the cost to repair such damage shall be deducted from the purchase price;

5      The subject property shall be transferred to Buyers THOMAS LEI and KATHERINE LU

6  as prescribed in the Purchase and Sale Document;

7      With respect to non-monetary encumbrances, easements, covenants, conditions,

8  restrictions, or rights that affect the property, the intent of this judgment is to comply with the

9  Purchase and Sale Documents and shall be consistent with the standards of practice in real

10  property transactions of like nature;

11      Seller shall purchase and pay for a title policy in standard form and insuring Buyers' title

12  in the subject property.  If the Buyers are required to purchase and pay for such policy, that

13  amount shall be deducted from the Seller's proceeds and credited to the Buyers in escrow;

14      In the event, Pacific Time Escrow is no longer utilized as the escrow company and that

15  escrow is required to be cancelled, the Buyers shall receive a credit on the purchase price for

16  the cancellation fees, if any, for the escrow services and the balance of moneys deposited in

17  said escrow shall be returned to Buyers.  The costs and fees of a successor escrow company

18  shall be allocated in accordance with the Purchase and Sale Documents.

19      Buyers THOMAS LEI and KATHERINE LU are entitled to a credit for all monetary

20  obligations not paid by the Seller, all as provided in the Purchase and Sale Documents that is,

21  obligations for which Seller is contractually obligated.  These obligations, if not paid by the

22  Seller, shall be deducted from the Seller's proceeds and credited to the Buyers in escrow;

23      Buyers THOMAS LEI and KATHERINE LU shall be entitled to a further credit or

24  abatement in the purchase price in the sum of $21,000.00 for the loss of the reasonable rental

25  value for the period of time commencing on September 1, 2013 through March 31, 2014.  This

26  credit or abatement of the purchase price was determined and calculated based on the

27  reasonable rental value of the subject property;

28      Buyers THOMAS LEI and KATHERINE LU are entitled to recovery of their attorneys'

3
[PROPOSED] JUDGMENT

1 | fees of $1,020.00 and costs of $514.00;

2 |     Jurisdiction is reserved to ensure compliance with the terms of this judgment, including

3 | without limitation, the award of further attorneys' fees and costs to either the Buyers or the

4 | Seller for their failure to reasonably comply with the terms and conditions of this judgment or

5 | any subsequent orders of judgment.

6 |     Based on the evidence submitted, the Court finds Plaintiffs THOMAS LEI and

7 | KATHERINE LU are the prevailing party on the cause of action for specific performance.

10 | DATED: 5/15/14

Judicial Officer of the Superior Court

---

**4**

**[PROPOSED] JUDGMENT**

1   Kenny Kean Tan, #169777
    Adam Hussein, #278597
2   Tiffany Garrick, #296892
    Law Offices of Kenny Tan
3   640 N. Diamond Bar Boulevard
    Diamond Bar, CA 91765
4   Telephone: (909)860-9008
    Fax: (800)301-8290
5
    Attorneys for Plaintiff:
6   Thomas Lei and Katherine Lu

**FILED**
Superior Court of California
County of Los Angeles

AUG 1 5 2014

Sherri R. Carter, Executive Officer/Clerk
By _____ Deputy
Gwendolyn Jones

7

8

9           **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

10      **COUNTY OF LOS ANGELES – SANTA MONICA COURTHOUSE**

11

12   THOMAS LEI; KATHERINE LU,          )   Case No.: SC121358
                                        )
13          Plaintiffs,                 )
                                        )   [PROPOSED] NUNC PRO TUNC
14   vs.                                )   ORDER
                                        )
15   KIMBERLY BUI; DOES 1-10 inclusive, )   Date: August 15, 2014
                                        )   Time: 9:00 AM
16          Defendant.                  )   Dept.: M
                                        )
17                                      )
                                        )
18

19

20

21

22

23          The Court, having considered Plaintiffs Thomas Lei and Katherine Lu's ex parte

24   application for an order to correct judgment:

25          **IT IS ORDERED THAT**

26          Plaintiffs' motion is granted.  The Court orders that the judgment, entered May 15,

27   2014, is hereby interlineated to add the following language:

28   ///

---

1

**[PROPOSED] NUNC PRO TUNC ORDER**

1    Defendant/Seller KIMBERLY BUI is hereby ordered to, among other things, execute all

2    necessary conveyances to deliver all Deeds or other documents into escrow necessary to

3    consummate the same transaction;

4    If seller fails to perform any acts necessary to consummate the transaction, the Clerk of

5    the Superior Court is hereby ordered and authorized to execute whatever documents are

6    necessary to ensure consummation of this sale.

7    OR

8    **IT IS ORDERED THAT**

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26    Dated: 8/15/14

27                                    _____
                                     Judge of the Superior Court

28

2

**[PROPOSED] NUNC PRO TUNC ORDER**

## DECLARATION OF MARTIN CUTLER

I, MARTIN CUTLER, DECLARE:

1. I am an adult over the age of 18 and a resident of Los Angeles County,
   California.  I have personal knowledge of the following facts except those I
   state under information and belief.  If called upon to testify herein, I could
   and would be able to competently testify herewith.

2. I was previously the attorney for Kimberly Bui and was the sole attorney for
   GA Law Group while its principal George Akwo was recovering in 2013
   and 2014 from open heart surgery complications. I have not been practicing
   law since July 2015 and am not currently licensed to practice law.  I have,
   however, been assisting GA Law Group on some of their cases since July
   2015, especially cases such as this one which I was the primary attorney on.

3. Earlier in 2013 Nationstar had rejected a short sale request by Bui and Lei.
   However, Lei demanded it be submitted again. Bui refused and In
   September 30, 2013 I wrote on behalf of my then client Kimberly Bui to the
   attorney for Thomas Lei and Katherine Lu explaining why they had no basis
   for claiming Kimberly Bui was in breach of the short sale agreement Ms.
   Bui had entered into with Lei and Lu (collectively hereinafter  "Lei")
   because it was conditioned, as all short sale agreements are, on the approval
   of Ms. Bui's lender Nationstar.  I never heard a response back from Lei's
   attorney.  This September 30, 2013 letter is Exhibit F to this adversarial
   complaint.

4. Due to severe health issues with both my wife and myself I failed to file an
   answer to the complaint Lei filed against Bui (Los Angeles Superior Court
   Case No. SC121358).  I did not know that a default judgment had been
   entered in May 2014 against Bui as I had never been given notice of the

entry of default even though Lei knew that I was representing Bui (from my September 30, 2013 correspondence.)  The first time I knew there was a default judgment in Case No. SC121358 was on August 14, 2014 when I received notice from Lei that the following day they were moving the Court ex parte to get the Court to affix Ms. Bui's signature to a short sale submission documents.  Still ill, I had an attorney appear on behalf of Ms. Bui objecting to affixing Bui's signature and to the judgment itself which I believed was improperly entered against Bui.  I am informed and believe and thereon allege that the judge, however, said that Lei's ex parte request was a ministerial act to affix the signature and thus ignored Bui's objections.

5.  Thereafter on September 17, 2014 Nationstar rejected a short sale by Bui which I am informed and believe was initiated by Lei after they obtained the signature of Bui on the short sale submission documents.

6.  Because the transaction Lei was seeking to enforce through their lawsuit was a short sale, I mistakenly believed that the denial in September 2014 of the short sale was the end of the matter as the short sale required the lender (Nationstar) approval.

7.  In December 2014, Lei again went in ex parte to affix Bui's signature to a short sale.  I appeared on behalf of Bui opposing this and also requested the Court set a hearing for a Code of Civil Procedure 473 motion to set aside the default and vacate the default judgment.  The Court declined to set a hearing on the 473 motion, and again said this was a ministerial act requested merely to affix Bui's signature to the short sale submission documents.

8.  This was the last event which I was aware of regarding this issue. I thought since no short sale went ahead, the matter was essentially dead and Bui remained the title owner of her property, as she is to this day.

9.  Neither myself nor anyone at GA Law Group received any notice of any further activity on this matter, until November 2016 when counsel for Nationstar informed us that Lei had filed suit against Nationstar to approve the short sale. (Los Angeles Superior Court Case No. SC126554). I then informed George Akwo, Esq. of this and he then filed on behalf of Bui, a motion to intervene in that case to determine rights to this property.  That motion to intervene was denied on January 31, 2017.

10. Again nothing seemed to happen on the matter until September 8, 2017 when I was again sent notice from Lei's new counsel of their intent to move the Court, ex parte, to sign a deed transferring the property from Bui to Lei. A true and correct copy of said notice is attached as Exhibit K to this adversarial complaint.

11. I have been involved in this matter since 2013 and I know, as well as I am informed and believe and allege as true that Ms. Bui has never received a single penny in compensation or consideration from the Lei's on this matter in exchange of title transferring to Lei.

I declare under penalty of perjury under the laws of the United State of America that the above is true and correct. Executed this 10th day of September 2017 in Los Angeles, California.

*Martin Cutler*

Martin Cutler

EXHIBIT J TO ADVERSARIAL COMPLAINT



**Nationstar**
MORTGAGE
350 Highland Drive
Lewisville, TX 75067

9/17/2014

KIMBERLY BUI
C/O GA LAW GROUP
5525 OAKDALE AVENUE SUITE 155
WOODLAND HILLS, CA 91364

RE: Loan: 0600412662
Property Address:
937 18TH ST
SANTA MONICA, CA 90403

Dear  KIMBERLY BUI  :

Thank you for inquiring about the Short Sale program. We have given your request careful consideration and regret to inform you that we are unable to grant your request at this time, as you do not meet the program guidelines because of the following reason(s):

Incomplete Request.

If you have any questions regarding the denial of your request or would like to learn about other possible options available to you, your Dedicated Loan Specialist is William Kaja and can be reached at (877) 782-7612 EXT. 4670728, Monday-Friday, 8 a.m. to 8 p.m. (CST) and Saturday, 8 a.m. to 12 p.m. (CST) or via mail at the above listed mailing address, or email us at customerrelationsofficer@nationstarmail.com.  Visit us on the web at www.MyNationstarMtg.com for further clarification of possible alternatives.

Sincerely,

Centralized Collateral
Nationstar Mortgage LLC

Nationstar is a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose. However, if you are currently in bankruptcy or have received a discharge in bankruptcy, this communication is not an attempt to collect a debt from you personally to the extent that it is included in your bankruptcy or has been discharged, but is provided for informational purposes only.

WKODNL

www.mynationstarmtg.com



# LINDEMANN
## — LAW FIRM —

433 N. Camden Drive, 4th Floor ● Beverly Hills, CA 90210 ● 310 279-5269 ● fax: 310 300-0267 ● blake@lawbl.com

June 13, 2017

**<u>VIA ELECTRONIC MAIL</u>**                    EXHIBIT K TO ADVERSARIAL COMPLAINT

Martin Cutler, Esq.
8306 Wilshire Blvd # 745
Beverly Hills, CA 90211-2304

Via E-maill: <u>mcutler63@yahoo.com</u>

      **Re:**  *Lei et al v. Bui*; Case No. SC121358

Dear Counsel:

Pursuant to the telephonic notice to be provided this morning, this letter will serve to confirm that on September 8, 2017 at 8:30 a.m., or as soon thereafter as the matter may be heard, in Department M of the Santa Monica Courthouse located at 1725 Main Street, Santa Monica, CA 90401, Plaintiffs Thomas Lei and Katherine Lu will bring an ex parte application for an order to implement and enforce this Court's judgments of March 27, 2014 and August 15 2014 by appointing the Clerk of the Los Angeles Superior Court to execute a deed transferring real property at 937 18th Street, #7, Santa Monica, CA 90403 to the Plaintiffs and for an order directing the Clerk to issue a writ of possession for Real Property.

Please advise whether Defendant intends to oppose the ex parte application. Please contact the undersigned at your convenience should you wish to discuss.

      Sincerely yours,

      _____
      Blake J. Lindemann

BJL: ng

**Nationstar**
M O R T G A G E

RETURN SERVICE ONLY
PLEASE DO NOT SEND MAIL TO THIS ADDRESS
P.O BOX 619063
DALLAS,TX 75261-9063

EXHIBIT L TO ADVERSARIAL COMPLAINT

October 12, 2016

2-692-71927-0000009-001-1-000-000-000-000
KIMBERLY BUI
C/O GA LAW GROUP
5525 OAKDALE AVENUE SUITE 155
WOODLAND HILLS CA 91364

**Loan #:**            0600412662
**Property Address:** 937 18TH ST
#7
SANTA MONICA CA 90403

Dear Kimberly Bui:

This letter is to inform you that we have reviewed your request for assistance and are unable to grant your request at this time. The reasons we could not approve you for assistance are listed below:

## Loss Mitigation Options

You were evaluated for mortgage payment assistance based on the eligibility requirements of U.S. Bank N.A., the owner/guarantor/trustee of your mortgage loan, but were declined for the following program(s). Please note, as the servicer of your loan, Nationstar Mortgage LLC is responsible for responding to any questions related to investor requirements or the review of your request for assistance.

### HAMP Tier I - Declined

**Denial Reason:** Ineligible Mortgage
We are unable to offer you a modification because your loan did not meet one or more of the basic eligibility criteria of the modification program.
- Your mortgage loan was originated after January 1, 2009, or
- Your mortgage loan was originated less than 12 months prior to the date we evaluated for a modification, or
- Your mortgage loan is not secured by a one- to four-unit property, or
- Your loan with us is not a first lien mortgage, or
- The current unpaid principal balance (UPB) on your loan is higher than the program limit:
  - 1 Unit $729,750
  - 2 Units $934,200
  - 3 Units $1,129,250
  - 4 Units $1,403,400

### HAMP Tier II - Declined

**Denial Reason:** Ineligible Mortgage
We are unable to offer you a modification because your loan did not meet one or more of the basic eligibility criteria of the modification program.
- Your mortgage loan was originated after January 1, 2009, or
- Your mortgage loan was originated less than 12 months prior to the date we evaluated for a modification, or
- Your mortgage loan is not secured by a one- to four-unit property, or
- Your loan with us is not a first lien mortgage, or
- The current unpaid principal balance (UPB) on your loan is higher than the program limit:
  - 1 Unit $729,750
  - 2 Units $934,200
  - 3 Units $1,129,250
  - 4 Units $1,403,400

### Standard Modification - Declined

**Denial Reason:** Negative NPV
The modification program requires a calculation of the net present value (NPV) of a modification using a formula. The NPV calculation requires us to input certain financial information about your income and your loan including the factors listed below. When combined with other data, these inputs estimate the cash flow the investor (owner) of your loan is likely to receive if the loan is modified and the investor's cash flow if the loan is not modified. Based on the NPV results the owner of your loan has not approved a modification.

Nationstar is a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose. However, if you are currently in bankruptcy or have received a discharge in bankruptcy, this communication is not an attempt to collect a debt from you personally to the extent that it is included in your bankruptcy or has been discharged, but is provided for informational purposes only.



If you believe that the "Property Value" input used in the NPV evaluation differs from the fair market value of your home, you must provide us with a recent estimate of the property value and a reasonable basis for that estimate at the same time that you provide evidence of any other disputed NPV value inputs. We will then perform a test NPV using your estimated value. If the test provides an NPV positive outcome, you have the right to request that we obtain an appraisal to confirm the value of your home and use that appraised value to conduct a new NPV evaluation.

The estimated cost of an appraisal in your community is $350.00. If you wish to exercise this option we must, within 30 calendar days of the date of this notice, receive a written request that includes your estimate of property value and a reasonable basis for that estimate, along with any other input values you wish to dispute, and a check for $200 as a deposit against the full cost of the appraisal. If the test NPV is negative we will notify you of that result. We will not order an appraisal and your deposit will applied to your account. If the test NPV is positive, we will order an appraisal and your account will be charged for the difference between your deposit and the actual cost of the appraisal whether or not any change in property value changes the NPV value.

If you were declined for HAMP or HAMP Tier II, you may request assistance from MHA Help at the telephone number set forth in this letter prior to contacting us to evaluate whether your disputed NPV inputs, including "Property Value," would change the NPV outcome from negative to positive. Using the dispute inputs you provide, MHA Help will conduct a preliminary NPV re-evaluation and will provide you with the printed NPV result. You should provide that result to us as part of your written evidence that one or more of the NPV input values is inaccurate within 30 calendar days from the date of this letter.

You may only request one NPV re-evaluation from MHA Help prior to contacting us. If the reevaluation performed by MHA Help or us using the disputed inputs returns a negative NPV result, you will not be eligible for additional appeals of other inputs.

**There are other possible alternatives that may be available to you if you are unable to make your regular loan payments.**

**Reinstatement** – if you are currently delinquent in your payments, you may be able to reinstate your loan. Please contact your Dedicated Loan Specialist for information on this option.

**Deed-in-lieu** – a borrower voluntarily transfers title to and possession of the property to Nationstar to satisfy the mortgage loan debt and avoid foreclosure.

**Pre-Foreclosure Sale/Short sale** – a property is listed for sale and proceeds of the sale are accepted in exchange for a release of the lien, even if those proceeds are less than the amount owed.

If you have any questions regarding the denial of your request or wish to pursue alternatives, your Dedicated Loan Specialist is Carlos Aniceto and can be reached at (888) 850-9398 EXT. 4670798, Monday-Friday, 8 a.m. to 7 p.m. (Central Time) and Saturday, 8 a.m. to 12 p.m. (Central Time) or via mail at the below listed mailing address, or email us at customerrelationsofficer@nationstarmail.com. Visit us on the web at www.MyNationstar.com for further clarification of possible alternatives.

Nationstar Mortgage LLC
P.O. Box 619097
Dallas, TX 75261

You have the right to appeal non-approval for a modification or to discuss loss mitigation options that may be available to you within 30 calendar days from the date of this notice. The appeal must be in writing and sent to the mailing address below. Please specify the basis for your dispute, and include any documentation you believe is relevant to the appeal, such as property valuation or proof of income.

Nationstar Mortgage LLC
Attn: Customer Relations
P.O. Box 619098
Dallas, TX 75261-9741

Sincerely,

Nationstar Mortgage LLC

Nationstar is a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose. However, if you are currently in bankruptcy or have received a discharge in bankruptcy, this communication is not an attempt to collect a debt from you personally to the extent that it is included in your bankruptcy or has been discharged, but is provided for informational purposes only.



2-692-71927-0000009-001-000-000-000-000

Please note the following:

**Automated valuation only (electronic, no printed document):**
An automated valuation was developed in connection with your application for loss mitigation. The property valuation provided to us electronically was $976,900.00. There is no available written documentation associated with this valuation.

**Additional Disclosures**

*If you have questions about the Home Affordable Modification Program other than questions regarding the reason(s) for denial set forth above, you can call the Homeowner's HOPE™ Hotline at 1-888-995-HOPE (4673). This Hotline can help with questions about the program and offers access to free HUD-certified counseling services in English and Spanish.*

**Notice: The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The federal agency that administers compliance with this law concerning this creditor is: Federal Trade Commission, Equal Credit Opportunity, Washington, DC 20580.**

### NPV INPUT DATA FIELDS AND VALUES

| Input Data Fields | | Explanation | Value used in NPV calculation to determine the HAMP eligibility of your mortgage |
|---|---|---|---|
| **I.  Borrower Information** | | | |
| 1. | **Monthly Gross Income** | This field identifies the monthly gross income of all borrowers on your loan before any payroll deductions or taxes. | $11,523.33 |
| **II.  Property Information** | | | |
| 2. | **Property Value** | This field identifies the estimated fair market value of the property for which you are applying for a HAMP modification that was used by us, your servicer for this analysis. | $976,900.00 |

Nationstar is a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose. However, if you are currently in bankruptcy or have received a discharge in bankruptcy, this communication is not an attempt to collect a debt from you personally to the extent that it is included in your bankruptcy or has been discharged, but is provided for informational purposes only.



**New York Residents:** New York City Department of Consumer Affairs License Number: 1392003

The State of New York requires us to provide you with the following information:  If a creditor or debt collector receives a money judgment against you in court, state and federal laws may prevent the following types of income from being taken to pay the debt:  supplemental security income, (SSI); social security; public assistance (welfare); spousal support, maintenance (alimony) or child support; unemployment benefits; disability benefits; workers' compensation benefits; public or private pensions; veterans' benefits; federal student loans, federal student grants, and federal work study funds; and ninety percent of your wages or salary earned in the last sixty days.

**If you believe the Loss Mitigation request has been wrongly denied, you may file a complaint with the New York State Department of Financial Services at 1-800-342-3736 or www.dfs.ny.gov.**

**North Carolina Residents:**  Nationstar Mortgage LLC is licensed by the North Carolina Commissioner of Banks, Mortgage Lender License L-103450. Nationstar Mortgage LLC is also licensed by the North Carolina Department of Insurance, Permit Number 105369.

**If you believe the Loss Mitigation request has been wrongly denied, you may file a complaint with the North Carolina Office of the Commissioner of Banks website www.nccob.gov.**

**Oregon Residents:** There are government agencies and nonprofit organizations that can give you information about foreclosure and help you decide what to do. For the name and telephone number of an organization near you, please call 211 or visit www.oregonhomeownersupport.gov. If you need help finding a lawyer, call the Oregon State Bar's Lawyer Referral Service online at www.oregonstatebar.org or by calling (503) 684-3763 (in the Portland metropolitan area) or toll-free elsewhere in Oregon at (800) 452-7636. Free legal assistance may be available if you are very low income. For more information and a directory of legal aid programs, go to www.oregonlawhelp.org.

**Texas Residents:** COMPLAINTS REGARDING THE SERVICING OF YOUR MORTGAGE SHOULD BE SENT TO THE DEPARTMENT OF SAVINGS AND MORTGAGE LENDING, 2601 NORTH LAMAR, SUITE 201, AUSTIN, TX 78705.  A TOLL-FREE CONSUMER HOTLINE IS AVAILABLE AT 877-276-5550. A complaint form and instructions may be downloaded and printed from the Department's website located at www.sml.texas.gov or obtained from the department upon request by mail at the address above, by telephone at its toll-free consumer hotline listed above, or by email at smlinfo@sml.texas.gov.

**Hawaii Residents: If you believe your loss mitigation option request has been wrongly denied, you may file a complaint with the state division of financial institutions at 808-586-2820 or http://cca.hawaii.gov/dfi/.**

**Notices of Error:**

If you believe an error has been made with respect to your mortgage loan, you should provide to us in writing the following information: Your name (and the name of the borrower, if you are an authorized third party), the loan account number, and the error you believe has occurred.  To submit a notice of error, you must send this information to the following address:

Nationstar Mortgage LLC
P. O. Box 619063
Dallas, TX 75261-9063

**Requests for Information:**

To request information regarding your account, you should provide to us in writing the following information: Your name (and the name of the borrower, if you are an authorized third party), the loan account number, and the information you are requesting with respect to your mortgage loan.  To submit a request for information, you must send this information to the following address:

Nationstar Mortgage LLC
P. O. Box 619063
Dallas, TX 75261-9063

692-3574-0115F

EXHIBIT M TO ADVERSARIAL COMPLAINT

**BUI KIMBERLY**
**937 18TH ST, SANTA MONICA 90403-**
**APN: 4277-010-054    LOS ANGELES COUNTY**

### Foreclosure Record

| | | | |
|---|---|---|---|
| Recording Date | 09/14/2016 | Document # | 16-1102104 BK-PG - |
| Document Type | Notice of Sale (aka Notice of Trustee's Sale) | | |
| Auction Location: | 400 CIVIC CENTER PLZ, POMONA | | |
| Auction Date/Time: | 10/19/2016 11:00 A.M. | | |
| Min. Bid Amount | $914,973 | | |

### Foreclosure Record

| | | | |
|---|---|---|---|
| Recording Date | 06/10/2016 | Document # | 16-0668348 BK-PG - |
| Document Type | Notice of Default | | |
| Beneficiary Name: | NATIONSTAR MORTGAGE LLC | | |
| Trustor Names: | BUI, KIMBERLY | | |
| Trustee Name: | BARRETT DAFFIN FRAPPIER TREDER & WEISS L | | |
| Mailing Address: | 4004 BELT LINE RD# 100, ADDISON, TX 75001-4320 | | |
| Trustee Phone #: | 866-795-1852 | | |
| TS# : | 00000004347795 | Loan Doc #: | 17-1175334 |
| Loan Date: | 05/15/2007 | Loan Amount | $650,000 |
| Contact Name: | NATIONSTAR MORTGAGE LLC | | |
| Attention: | BARRETT DAFFIN FRAPPIER TREDER & WEISS L | | |
| Mailing Address: | 4004 BELT LINE RD# 100, ADDISON, TX 75001-4320 | | |
| **Legal Description** | | | |

### Foreclosure Record

| | | | |
|---|---|---|---|
| Recording Date | 06/22/2015 | Document # | 15-0740379 BK-PG - |
| Document Type | Notice of Rescission | | |
| Original Foreclosure Document: | 14-0842288 | | |

### Foreclosure Record

| | | | |
|---|---|---|---|
| Recording Date | 08/13/2014 | Document # | 14-0842288 BK-PG - |
| Document Type | Notice of Default | | |
| Beneficiary Name: | NATIONSTAR MORTGAGE LLC | | |
| Trustor Names: | BUI, KIMBERLY | | |
| Trustee Name: | BARRETT DAFFIN FRAPPIER TREDER & WEISS L | | |
| Mailing Address: | 15000 SURVEYOR BLVD# 500, ADDISON, TX 75001-9013 | | |
| Trustee Phone #: | 855-286-5901 | | |
| TS# : | 00000004347795 | Loan Doc #: | 07-1175334 |
| Loan Date: | 05/15/2007 | Loan Amount | $650,000 |
| Contact Name: | NATIONSTAR MORTGAGE LLC | | |
| Attention: | BARRETT DAFFIN FRAPPIER TREDER & WEISS L | | |
| Mailing Address: | 15000 SURVEYOR BLVD# 500, ADDISON, TX 75001-9013 | | |
| **Legal Description** | | | |

## Foreclosure Record

| | | | |
|---|---|---|---|
| Recording Date | 12/31/2012 | Document # | 12-2025972 BK-PG - |
| Document Type | Notice of Sale (aka Notice of Trustee's Sale) | | |
| Auction Location: | 400 CIVIC CENTER PLZ, POMONA | | |
| Auction Date/Time: | 01/23/2013 09:00 A.M. | | |
| Min. Bid Amount | $797,888 | | |

## Foreclosure Record

| | | | |
|---|---|---|---|
| Recording Date | 05/21/2012 | Document # | 12-0753256 BK-PG - |
| Document Type | Notice of Default | | |
| Beneficiary Name: | AURORA BANK FSB | | |
| Trustor Names: | BUI, KIMBERLY | | |
| Trustee Name: | MILES BAUER BERGSTROM & WINTERS LLP | | |
| Mailing Address: | 2200 PASEO VERDE PKY# 250, HENDERSON, NV 89052- | | |
| Trustee Phone #: | 702-369-5960 | | |
| TS# : | 12-CA0144 | Loan Doc #: | 07-1175334 |
| Loan Date: | 05/15/2007 | Loan Amount | $650,000 |
| Contact Name: | AURORA BANK FSB | | |
| Attention: | MILES BAUER BERGSTROM & WINTERS LLP | | |
| Mailing Address: | 2200 PASEO VERDE PKY# 250, HENDERSON, NV 89052- | | |
| **Legal Description** | | | |

## Mortgage Record

| | | | |
|---|---|---|---|
| Recording Date | 05/15/2007 | Document # | 07-1175334 BK-PG - |
| Loan Amount | $650,000 | Loan Type | J |
| TD Due Date | 06/01/2037 | Type of Financing | ADJ |
| Interest Rate | 6.25% | | |
| Lender Name | GREENPOINT MORTGAGE FUNDING INC | | |
| Lender Type | Mortgage company | | |
| Borrowers Name | BUI,KIMBERLY | | |
| Vesting | | | |
| Fixed Step | | | |
| Adjustable Rate Index | 6 Month Libor | Change Index | 2.75% |
| Rate Change Frequency | Six months or Semi-annually | First Change Date | 06/01/2012 |
| Int Rate not < | 2.75% | Int Rate not > | 11.25% |
| Maximum Interest Rate | 11.25% | Interest Only Period | 10 years |
| Prepayment Penalty Rider | No | Prepayment Penalty Term | |
| **Legal Description** | | | |
| Lot: 1  Tract No: 24127 | | | |
| City/Muni/Twp: SANTA MONICA | | | |

## Mortgage Record

| | | | |
|---|---|---|---|
| Recording Date | 07/14/2006 | Document # | 06-1553600 BK-PG - |
| Loan Amount | $100,000 | Loan Type | Credit Line (Revolving) |
| TD Due Date | 07/09/2036 | Type of Financing | |
| Interest Rate | | | |
| Lender Name | WORLD SAVINGS BANK FSB | | |

Lender Type        Bank
Borrowers Name     BUI,KIMBERLY
Vesting
**Legal Description**
Lot: 1  Tract No: 24127
City/Muni/Twp: SANTA MONICA

## Mortgage Record

| | | | |
|---|---|---|---|
| Recording Date | 06/13/2005 | Document # | 05-1374168 BK-PG - |
| Loan Amount | $375,000 | Loan Type | Stand Alone First |
| TD Due Date | 07/01/2035 | Type of Financing | ADJ |
| Interest Rate | | | |
| Lender Name | WORLD SAVINGS BANK FSB | | |
| Lender Type | Bank | | |
| Borrowers Name | BUI,KIMBERLY | | |
| Vesting | | | |

**Legal Description**
Lot: 1  Tract No: 24127
Abbreviated Description: PORTION LOT1
City/Muni/Twp: LOS ANGELES

## Prior Transfer

| | | | |
|---|---|---|---|
| Recording Date | 09/16/1999 | Document # | 99-1760075 BK-PG - |
| Price | $299,000 | Document Type | Grant Deed |
| First TD | $224,250 | Type of Sale | Full-Computed from Transfer Tax |
| Mortgage Doc # | 99-1760076 | Interest Rate | 7.5% |
| Lender Name | WASHINGTON MUTUAL BANK FA | | |
| Buyer Name | BUI, KIMBERLY | | |
| Buyer Vesting | N/A | | |
| Seller Name | , RASTEGAR, AZIZ N; THE AZIZ N RASTEGAR INTERVIVOS TRUST, | | |
| Fixed Step | | | |
| Adjustable Rate Index | One Year T-Bill | Change Index | 2.87% |
| Rate Change Frequency | Annually | First Change Date | |
| Int Rate not < | | Int Rate not > | |
| Maximum Interest Rate | | Interest Only Period | |
| Prepayment Penalty Rider | No | Prepayment Penalty Term | |

**Legal Description**
Lot: 1
Abbreviated Description: TRACT NO 24127 CONDOMINIUM UNIT 7

EXHIBIT H TO ADVERSARIAL COMPLAINT

# CALIFORNIA ASSOCIATION OF REALTORS®

## CANCELLATION OF CONTRACT, RELEASE OF DEPOSIT AND JOINT ESCROW INSTRUCTIONS
### (C.A.R. Form CC, Revised 4/10)

In accordance with the terms and conditions of the: ☑ California Residential Purchase Agreement; or
☐ Other _____ ("Agreement"),
dated __5/17/2013_____, including all amendments and related documents, on property known
as __937 18th ST #7 SANTA MONICA CA 90403_____ ("Property"),
between _____THOMAS LEI_____ ("Buyer")
and _____KIMBERLY BU_____ ("Seller").

**Paragraphs 1 and 2 below constitute escrow instructions to Escrow Holder. Release of funds (pursuant to paragraph 2) requires mutually Signed release instructions from Buyer and Seller, judicial decision or arbitration award. A party may be subject to a civil penalty of up to $1,000 for refusal to sign such instructions if no good faith dispute exists as to who is entitled to the deposited funds (Civil Code §1057.3).**

**1. CANCELLATION OF CONTRACT:** ☐ Buyer or ☒ Seller or ☐ both Buyer and Seller cancel(s) the Agreement
   and ☐ (if applicable), escrow # _____ with _____ ,
   Escrow Holder, for the following reason:
   A. ☐ Seller has failed to take the following applicable contractual action as required by the Agreement: _____
   _____

OR B. ☐ Seller has failed to remove the applicable contingency after being given a Notice to Seller to Perform (C.A.R. Form NSP).

OR C. ☐ Buyer has failed to remove the applicable contingency after being given a Notice to Buyer to Perform (C.A.R. Form NBP).

OR D. ☐ Buyer has failed to take the applicable contractual action after being given a Notice to Buyer to Perform (C.A.R. Form NBP).

OR E. ☐ As otherwise permitted by paragraph _____ of the Agreement.

OR F. ☐ Per mutual agreement.

OR G. ☐ Other _____>_____

Buyer's or Seller's Signature (party cancelling the contract)    Date __8/1/2013__

Buyer's or Seller's Signature (party cancelling the contract)    Date _____

**2. RELEASE OF DEPOSIT**
   A. ☐ Seller authorizes release of Buyer's deposit, less Buyer's fees and costs, to Buyer.

OR B. ☐ Buyer authorizes release of Buyer's deposit, less Seller's fees and costs, to Seller. ( ☐ A liquidated damages clause was properly included as part of the Agreement, and the Property contains no more than four residential units, one of which the Buyer intended to occupy. Buyer's authorization of release of deposit to Seller is limited to no more than 3% of the purchase price. Any additional deposit shall be returned to Buyer.)

OR C. ☐ Both Buyer and Seller acknowledge mutual cancellation of the Agreement and authorize Escrow Holder to continue to hold the deposit until receiving subsequent mutual instructions, judicial decision or arbitration award.

OR D. ☐ Other: _____

**Unless otherwise specified above, Buyer and Seller (i) mutually release each other from all obligation to buy, sell or exchange the Property under the Agreement, and from all claims, actions and demands that each may have against the other(s) by reason of the Agreement; and (ii) intend that all rights and obligations arising out of the Agreement are null and void.**

Date _____    Date __8/1/2013__

Buyer _____    Seller _____

Buyer _____    Seller _____

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form by any means, including facsimile or computerized formats. Copyright © 2003-2010, CALIFORNIA ASSOCIATION OF REALTORS® Inc. All Rights Reserved.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020



| Reviewed by _____ Date _____ |
|---|

CC REVISED 4/10 (PAGE 1 OF 1)
**CANCELLATION OF CONTRACT, RELEASE OF DEPOSIT AND JOINT ESCROW INSTRUCTIONS (CC PAGE 1 OF 1)**